# United States Court of Appeals
## for the
## Seventh Circuit

PATRICE DANIELS, et al.,

*Plaintiffs/Appellants,*

v.

LATOYA HUGHES, et al.,

*Defendants/Appellees*

_____

On Appeal from the United States District Court
for the Central District of Illinois
in Civil Action No. 1:07-cv-01298-MMM, Hon. Michael M. Mihm, District Judge

## BRIEF FOR PLAINTIFFS/APPELLANTS

Amanda Antholt
Equip for Equality
20 North Michigan Avenue, Ste 300
Chicago, IL 60602
(312) 341-0022
amanda@equipforequality.org

Alan Mills
Nicole Schult
Uptown People's Law Office
4413 N. Sheridan
Chicago, IL 60640
(773) 769-1410
alan@uplcchicago.org
nicole@uplcchicago
*Attorneys for Plaintiffs/Appellants*

Harold C. Hirshman
Diane C. O'Connell
DENTONS US LLP
233 S. Wacker Drive, Ste 5900
Chicago, IL 60606
harold.hirshman@dentons.com
diane.oconnell@dentons.com

ORAL ARGUMENT REQUESTED

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-3388

Short Caption: Patrice Daniels, et. al. v. Latoya Hughes, et. al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

PATRICE DANIELS, GERRRODO FORREST, JOSEPH HERMAN, RASHEED McGEE, FREDERICKA LYLES,

HENRY HERSMAN, CLARA PLAIR

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Dentons US LLP., Uptown Peoples Law Center, Equip for Equality

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

n/a

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Diane O'Connell          Date: 12/26/23

Attorney's Printed Name:  Diane O'Connell

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     **Yes** ☐     **No** ☑

Address:  Dentons US LLP., 233 S. Wacker Dr. Ste. 5900, Chicago, IL 60606

Phone Number: 312-945-1203          Fax Number:

E-Mail Address: diane.oconnell@dentons.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 23-3388

Short Caption: Daniels, et. al. v. Hughes, et. al.

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Patrice Daniels, Gerrodo Forrest, Joseph Herman, Rasheed McGee, Fredericka Lyles, Henry Hersman, Clara Plair

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Dentons US LLP., Uptown Peoples Law Center, Equip for Equality

(3)　　If the party, amicus or intervenor is a corporation:

　　i)　　Identify all its parent corporations, if any; and

n/a

　　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

n/a

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

n/a

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

n/a

Attorney's Signature: /s/ Harold Hirshman　　　Date: 1/8/23

Attorney's Printed Name:  Harold Hirshman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　Yes ☑　No ☐

Address:  233 S. Wacker Dr. Ste. 5900

Chicago, IL 60606

Phone Number: 312-876-8000　　　Fax Number:  312-876-7934

E-Mail Address: harold.hirshman@dentons.com

rev. 12/19 AK

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-3388

Short Caption: Patrice Daniels et al v. Latoya Hughes, et al

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Patrice Daneils, Gerrodo Forrest, Joseph Herman, Henry Hersman, Rasheed McGee, Fredricka Lyles, Clara Plair

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    DENTONS, Uptown People's Law Center, Equip for Equality.

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        n/a

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    n/a

Attorney's Signature: /s/ Amanda Antholt    Date: 04/11/24

Attorney's Printed Name:  Amanda Antholt

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address:  Equip for Equality, 20 N. Michiagan Ave. Suite 300, Chicago IL 60602

Phone Number: 312-895-7330    Fax Number:

E-Mail Address: Amanda@equipforequality.org

rev. 12/19 AK

Save As    Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: <u>23-3110 and 23-3388</u> (consolidated)

Short Caption: <u>Daniels v Hughes</u>

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

<u>Ashoor Rasho, Patrice Daniels, Gerrodo Forrest, Keith Walker, Otis Arrington, Donald Collins, Joseph Herman,</u>

<u>Henry Hersman, Rasheed McGee, Fredericka Lyles, Clara Plair, Desiree Hollis, Crystal Stoneburner, Frederick Walker</u>

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

<u>Mayer Brown, Dentons US LLP, Equip for Equality, and Uptown People's Law Center</u>

(3)    If the party, amicus or intervenor is a corporation:

i)    Identify all its parent corporations, if any; and

<u>N/A</u>

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

<u>N/A</u>

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

<u>N/A</u>

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

<u>N/A</u>

Attorney's Signature: <u>s/Alan Mills</u>    Date: <u>4/11/2024</u>

Attorney's Printed Name:  <u>Alan Mills</u>

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [ ]    **No** [✔]

Address:  <u>4413 N. Sheridan Rd, Chicago, IL 60640</u>

Phone Number: <u>773-769-1411</u>    Fax Number: <u>773-769-2224</u>

E-Mail Address: <u>alan@uplcchicago.org</u>

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Save As   Clear Form

Appellate Court No: 23-3110

Short Caption: Patrice Daniel et al v. Latonya Hughes, et al

   To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervener or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

   The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IS ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
Patrice Daniels, Gerrodo Forrest, Otis Arrington, Joseph Herman, Henry Hersman,

Rasheed McGee, Frederick Lyles, Clara Plair, Frederick Walker

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
Dentons USC LLP, Equip for Equality, Uptown People's Law Center

(3)    If the party, amicus or intervener is a corporation:

i)    Identify all its parent corporations, if any; and
n/a

ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervener's stock:
n/a

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
n/a

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
n/a

Attorney's Signature:  s/ Nicole Schult    Date: November 6, 2023

Attorney's Printed Name:   Nicole Schult

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** [ ]  **No** [✓]

Address:   Uptown People's Law Center, 4413 N Sheridan, Chicago, IL 60640

Phone Number:  773-769-1411    Fax Number:  773-769-2224

E-Mail Address: nicole@uplcchicgo.org

rev. 12/19 AK

# TABLE OF CONTENTS

Jurisdictional Statement ................................................................................... 1

Issues Presented ............................................................................................... 1

Statement of the Case ...................................................................................... 1

Legal Standard ............................................................................................... 10

Summary of Argument .................................................................................. 10

Argument........................................................................................................ 12

I. The Errors in the District Court's Dismissal Order ......................... 12

    A. The District Court Miscalculated the End Date of the First
       Agreement. ................................................................................. 12

    B. The District Court Conflated Appellate Jurisdiction with Original
       Jurisdiction. ............................................................................... 14

    C. The District Court Conflated Jurisdiction Over the Consent
       Judgment with Jurisdiction Over the Case............................... 16

    D. The District Court Ignored that the Agreement Provided for
       a Return to the Trial Docket. ................................................... 18

    E. Jurisdiction was not Lost with this Court's Decision on the
       Enforcement Injunction............................................................ 18

    F. The District Court had Jurisdiction to Extend the Consent Judgment
       Under its Inherent Authority and the Terms of the Agreement .............. 20

II. The District Court Properly Allowed Plaintiffs to File a Supplemental or
    Amended Complaint under Rule 15 and/or to Grant Relief from the Consent
    Judgment under Rule 60(b), or to do Both. ................................... 23

    A. The District Court had Jurisdiction to Allow Plaintiffs to File a
       Supplemental Complaint. ......................................................... 25

    B. The District Court had Jurisdiction and Grounds for Granting Relief from
       Judgment under Rule 60(b). ..................................................... 33

III. The District Court's *Sua Sponte* Dismissal Deprived Plaintiffs of Due
     Process. ............................................................................................ 38

CONCLUSION..................................................................................................... 39

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Arbaugh v. Y & H Corp.,*
546 U.S. 500 (2006) ........................................................................... 16

*Benjamin v. Jacobson,*
172 F.3d 144 (2nd Cir. 1999) ............................................................ 38

*Berwanger v. Cottey,*
178 F.3d 834 (7th Cir. 1999) ........................................................ 21, 22

*Bogard v. Wright,*
159 F.3d 1060 (7th Cir. 1998) ...................................................... 20, 21

*Brian A. v. Bredesen,*
No. 3:00-0445, 2009 U.S. Dist. LEXIS 112890 (M.D. Tenn 2009) ....... 32

*Bromley v. Michigan Educ. Assoc.,*
178 F.R.D. 148 (E.D. Mich. 1998) ..................................................... 32

*Camp v. Gregory,*
67 F.3d 1286 (7th Cir. 1995) .................................................. 16, 24, 33

*Carroll v. Stryker Corp.,*
658 F.3d 675 (7th Cir. 2011) ............................................................. 10

*Chesapeake Ohio Ry. v. U.S. Steel Corp.,*
878 F.2d 686 (3d Cir. 1989) .............................................................. 32

*Corey H. v. Chicago Bd. of Educ.,*
528 F. App'x 666 (7th Cir 2013) ........................................................ 15

*Doe v. Cook County,*
798 F.3d 558 (7th Cir. 2015) ............................................................. 22

*In re Ferro. Corp. Derivative Litig.,*
511 F.3d 611 (6th Cir. 2008) ............................................................. 28

*Griffin v. County School Bd. of Prince Edward County,*
377 U.S. 218 (1968) ..................................................................... 26, 31

*Habitat Educ. Ctr. v. Kimbell,*
250 F.R.D. 397 (E.D. Wis. 2008) ..................... 16, 24, 25, 26, 27, 28, 30, 31

*Hadix v. Caruso,*
461 F. Supp. 2d 574 (W.D. Mich. 2006) ................................................ 37

*Keith v. Volpe,*
858 F.2d 467 (9th Cir. 1987) .............................................................. 33

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1994) ......................................................................... 24

*Landgraf v. UIS Film Products,*
511 U.S. 244 (1994) ......................................................................... 22

*Leisure Caviar, LLC. v. U.S. Fish and Wildlife Service,*
616 F.3d 612 (6th Cir. 2010) .............................................................. 28

*Miller v. French,*
530 U.S. 327 (2000) ......................................................................... 22

*Ne. Ohio Coal. for the Homeless v. Husted,*
No. 2:06-CV-00896, 2015 U.S. Dist. LEXIS 201635 (S.D. Ohio 2015) .... 26, 28, 29, 30, 33

*Paganis v. Blonstein,*
3 F.3d 1067 (7th Cir. 1993) (Cudahy, J., concurring) ........................... 34

*Plaut v. Spendthrift Farm, Inc.,*
514 U.S. 211 (1995) ......................................................................... 22

*Pointdexter v. Louisiana Fin. Assistance Comm'n,*
296 F.Supp. 686 (E.D. La. 1968) ......................................................... 32

*Pughsley v. 3750 Lake Shore Drive Cooperative Bldg.,*
463 F.2d 1055 (7th Cir. 1972) ............................................................ 19

*Rasho v. Jeffreys,*
22 F.4th 703 (7th Cir. 2022) ........................................................ 4, 6, 34

*Rufo v. Inmates of Suffolk County Jail,*
502 U.S. 367 (1992) .......................................................... 33, 35, 36, 37

*Ruiz v. United States,*
243 F.3d 941 (5th Cir. 2001) .............................................................. 22

*Simer v. Rios,*
661 F.2d 655 (7th Cir. 1981) .............................................................. 33

*Stewart v. Shelby Tissue,*
189 F.R.D. 357 (W.D. Tenn. 1999) .................................................. 25

*United States v. Fisher,*
864 F.2d 434 (7th Cir. 1988) ........................................................ 23

*United States v. Furando,*
40 F.4th 567 (7th Cir. 2022) ........................................................ 38

*United States v. Indiana,*
2009 U.S. Dist. LEXIS 86419 (N.D. Ind. 2009) ............................ 25, 26, 30, 31, 33

*United States v. Krilich,*
303 F.3d 784 (7th Cir. 2002) ...................................................... 35, 36

*United States v. Northlake,*
942 F.2d 1164 (7th Cir. 1991) ..................................................... 23

*Update Art v. Charnin,*
110 F.R.D. 26 (S.D.N.Y 1986) ..................................................... 19

*In re VMS Sec. Litig.,*
103 F. 3d 1317 (7th Cir. 1996) .................................................... 20

*Wells Fargo Bank, N.A. v. Moore,*
618 Fed. Appx. 857 (7th Cir. 2015) ............................................. 19

*Yancheng Shanda Yuanfeng Equity Inv. P'ship v. Wan,*
59 F.4th 262 (7th Cir. 2023) ........................................................ 10

## Statutes

28 U.S.C. § 1291 ...................................................................... 1, 14, 15

28 U.S.C § 1292(a)(1) ...................................................................... 6

28 U.S.C. § 1331 ...................................................................... 3, 14, 27

28 U.S.C. § 1343(a)(3) and (4) ........................................................ 3

42 U.S.C. § 1983 ........................................................................... 2

Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.* ............... 3, 8

Prison Litigation Reform Act, 18 U.S. Code §§ 3626(b) and 3636 ............ 17, 34

Rehabilitation Act, 29 U.S.C. § 794 ................................................. 3, 8

U.S. Code § 3626(b)(2) ............................................................ 16, 21

**Other Authorities**

6A Charles Alan Wright et al., *Federal Practice & Procedure* § 1504
    (2d. ed. 1990) .................................................................. 25

Fed. R. Civ. P. 59(e) ............................................. 1, 12, 13, 28, 38

Fed. R. Civ. P. 60(b) ...................... 10, 12, 15, 23, 24, 37, 25, 27, 28, 33, 34, 38

Fed. R. Civ. P. 65(d) ..................................................................... 5

Fed. R. Civ. Pro. 23(b)(2) ............................................................. 3

Fed. R. Civ. Pro. 65(a)(2) ........................................................... 19

Fed. R. Civ. Pro. 15 ................................ 10, 12, 16, 23, 24, 25, 28, 30, 38

Fed. R. Civ. Pro. 41(a)(1)(ii) ..................................................... 24

Illinois Auditor General, *State of Illinois Department of Corrections*
    *Compliance Examination for the Period Ending June 30, 2020*,
    https://www.auditor.illinois.gov/Audit-Reports/CORRECTIONS-
    DEPARTMENT.asp (last visited April 10, 2024) ............................... 32

U.S. Const. amend. VIII ........................................................... 3, 9

U.S. Const. amend. XIV ........................................................ 3, 8, 38

6 Wright, Miller, & Kane, *Federal Practice & Procedure, Civil 2d* §
    1488 (West 1990) ............................................................ 26

## Jurisdictional Statement

The Seventh Circuit Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because Plaintiffs-Appellants appeal a final decision of the Central District of Illinois dismissing this case for lack of jurisdiction. The final decision was issued on October 23, 2023, by the Honorable Michael M. Mihm, and the order denying Plaintiffs' timely Rule 59(e) motion was issued on November 30, 2023. Doc. 3745, 3755.

## Issues Presented

Whether the district court erred in dismissing the case *sua sponte* for lack of subject matter jurisdiction after it terminated a settlement agreement it held to be a consent decree, allowed Plaintiffs to file a supplemental complaint, denied a motion to dismiss that complaint, presided over a year and a half of subsequent proceedings, then determined that it had lost jurisdiction fifteen months earlier when it terminated the consent judgment.

## Statement of the Case

This class action challenges the State's treatment of the more than 12,000 people with mental illness incarcerated in Illinois prisons. The complex procedural history is set forth below and, in more detail, in Plaintiffs' prior appellate brief. 7th Cir. (19-1145), App.Doc. 55. It includes numerous periods of negotiations, independent expert oversight, agreed and injunctive orders for relief, and litigation. Most recently, the case returned to litigation in 2022 following the collapse of a 2016 consent judgment calling for widespread reform. The current pleadings allege that the State is failing to provide even

minimally adequate care to people in its custody who are experiencing acute mental illness. Doc. 3641. Although originally filed in 2007, the current pleadings allege existing delays in diagnosis and lapses in needed medications for psychiatric conditions *(Id.* at ¶¶15-16); lack of therapy or even responses to acute episodes when they occur resulting in a proliferation of self-harm, violence, overuse of restraints and other punitive responses to mental illness (¶¶21-24), among other problems.

The pleadings detail the tragic consequences of the failure to provide needed care for mental illness, including suicides, self-harm, and violence in the months leading to the filing. *Id.* at ¶¶ 37-39, 51, 55-56, 58-60. The complaint alleged that despite significant need for higher level-of-care treatment, a 200-bed psychiatric hospital constructed under the prior settlement sat in disuse with only 11 patients there as of the 2022 complaint. ¶ 26. In one example, the complaint details the decompensation of a class member's mental health that, although documented by the IDOC psychiatrist as needing hospitalization, was not met with needed treatment but more restriction. That class member's condition worsened without response and, within months, he d ied by suicide in February 2022. ¶ 37. Thus, while this case is longstanding, the most recent litigation—and the posture of the case at issue here—arose from a complaint alleging current and ongoing federal law violations.

### *Filing to Settlement (2007-2016)*

On November 7, 2007, Ashoor Rasho filed a pro-se complaint pursuant to 42 U.S.C. § 1983 challenging the inadequacy of mental health treatment in the

Illinois Department of Corrections ("IDOC"). The district court had jurisdiction over Mr. Rasho's complaint at the outset because it was filed as a civil action arising under the laws of the United States pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). Through counsel, Mr. Rasho filed an Amended Complaint on behalf of a class of Illinois prisoners with mental illness on May 4, 2009. Doc. 54. The case then proceeded with efforts to reach a consent decree, including with review of independent experts and interim agreed orders as is set forth in Plaintiffs' prior appellate brief. App.Doc. 55 at 2-4. While a consent decree was nearly finalized and filed on the court's docket, the negotiations broke down and the case proceeded to litigation. On August 14, 2015, the court certified the litigation class pursuant to Fed. R. Civ. Pro. 23(b)(2) to include all persons incarcerated in the IDOC who have been identified or should have been identified as being in need of mental health treatment. Doc. 252. On September 9, 2015, Plaintiffs filed a Third Amended Complaint, seeking injunctive relief for violations of the Eighth and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act, 42 U.S.C. § 12101, *et. seq.*, and the Rehabilitation Act, 29 U.S.C. § 794. Doc. 260.

On December 17, 2015, the parties informed the Court of a proposed resolution and provided a draft settlement agreement. Minute Entry dated 12/17/2015. Unlike the previously negotiated document from 2014, this resolution was seen by the parties and the court as a settlement and not a consent decree within the meaning of the PLRA. To that end, the drafted settlement did not provide for the enforcement allowed were it a consent

decree. It provided violations of the terms could not be met with contempt but instead that any relief ordered by the court must be with findings of federal law violations consistent with the PLRA, and, alternatively, allowed the case to return to the trial docket if the settlement did not achieve the intended results. Doc. 3047-2 at 23-4 (Sections XXIX(g) and (i)).

After a fairness hearing, the district court approved the First Agreement[1] on May 23, 2016, in an order stating:

> In the interests of comity the Court must respect the need to provide the Defendants with the time provided in the settlement to fulfill the obligations undertaken. Concomitantly in the interest of fairness to the class, the Court must continue to provide a forum to address issues of compliance and performance of the terms of the Settlement. Without the Court's participation, the settlement would not be fair and reasonable. *Consequently this matter will remain on the Court's docket until the terms of the Settlement Agreement are met.*

Doc. 709 (emphasis added). The district court thus made explicit its intention to retain jurisdiction over the case.

### The District Court Entered Injunctions and Extensions of the Agreement While Defendants Appealed Injunctions (2017-2022)

On May 25, 2018, the district court issued a preliminary injunction finding that the Defendants' violations of the Agreement in five areas were resulting in

---

[1] In *dicta*, this Court said in 2022 that the settlement agreement had attributes of a consent decree. *Rasho v. Jeffreys*, 22 F.4th 703, 707 n.2 (7th Cir. 2022). The district court then held the same. Doc. 3597 at 11. Because the pleadings and orders throughout the course of these proceedings variously refer to the agreements in this case as both "settlement agreements" and "consent decrees," Plaintiffs refer to the May 23, 2016 agreement as simply "the First Agreement" and the June 9, 2020 agreement as "the Second Agreement." In the sections of this brief discussing the legal implications of the Agreement(s) Plaintiffs also refer to the Agreements as "consent judgments" after they were entered as orders of the district court.

federal rights violations that required additional relief. Doc. 2070. The injunction did not cover the entirety of the case or the Agreement but was specific to the failure to provide adequate mental health evaluations, treatment planning and medication management, as well as subjecting plaintiffs in segregation and crisis watch to harmful conditions of confinement without needed mental health treatment. *See* App.Doc. 51 at 8-9 (describing proceedings). In granting the injunction, the district court found, among other things, that not only Plaintiffs' evidence but nearly all the medical testimony, including from Defendants' witnesses, demonstrated that the system was in a "state of emergency." *Id.* at 8 citing Doc. 2070.

On October 30, 2018, the court converted the preliminary injunction to a permanent injunction addressing Defendants' treatment of the class up to that point. Doc. 2460. In its permanent injunction order, the district court stated, "[T]he reality is, this case was limited to examining a limited area of the Settlement Agreement," and "this was not a 'full' trial on the merits on all of the claims; nor was it a situation where the Parties tore up the Settlement Agreement to have this Court decide the outcome on all matters." Doc. 2460.

On February 26, 2019, the district court entered a modified permanent injunction order, and on April 22, 2019, the court entered a new permanent injunction order that met the requirements of Fed. R. Civ. P. 65(d). On May 21, 2019, Defendants appealed the permanent injunction orders, asking this Court to "have each of these orders reversed, with this case remanded for entry of an order denying plaintiffs' motion for a permanent injunction." Doc. 2656 at 2.

5

Defendants invoked this Court's jurisdiction under 28 U.S.C §1292(a)(1), which provides courts of appeals with "jurisdiction of appeals from interlocutory orders of the district courts of the United States... granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." 7th Cir. (19-1145) App.Doc. 48 at 3-4.

While the interlocutory appeal was pending, the district court approved a Second Amended Settlement Agreement ("Second Agreement") and held that "[t]he jurisdiction of the Court over this Settlement Agreement shall continue to April 23, 2021." Doc. 3051 at 3. On March 8, 2021, per the parties' agreement, the district court terminated jurisdiction to enforce terms of the Second Agreement in areas where substantial compliance was reached, in large part policy and process requirements, and retained jurisdiction "to enforce the sections of the Settlement Agreement listed in Exhibit B until April 22, 2022, unless otherwise ordered by the Court." Doc 3263 at 2.

On January 12, 2022, this Court reversed and vacated the permanent injunction covering five areas of the First Agreement, finding that Defendants' actions were not deliberately indifferent as of October 2019 and that the scope of the permanent injunction exceeded the restraints of the PLRA. *Rasho v. Jeffreys*, 22 F.4th 703, 710-13 (7th Cir. 2022). This Court also noted *in dicta* that the first agreement was a consent decree, not a private settlement agreement as the parties had maintained, but that "the distinction is irrelevant" for the purposes of the injunction ruling. *Id.* at 707, n. 2.

***After this Court's Reversal, the District Court Entered Agreed***
***Orders Extending Jurisdiction Over the Consent Judgment and***
***Allowed Plaintiffs to File an Amended Complaint (2022)***

Following this Court's ruling, on February 11, 2022, the district court

entered an unopposed order extending its jurisdiction over the Second

Agreement until July 22, 2022. Doc. 3508. On June 1, 2022, the parties

submitted a joint Proposed Plan for Negotiations. The court adopted and

approved the plan in June 2, 2022. Text Order 6/2/2022. The plan provided:

> If the parties are unable to reach an agreement to resolve their
> disputes, the parties agree that this matter will be returned to the
> active trial docket, and propose, subject to the approval of the Court,
> that Plaintiffs would file an amended complaint by September 1,
> 2022, and that the parties would propose by September 15, 2022, a
> scheduling order to include discovery (including written discovery,
> expert discovery, and depositions), dispositive motions and, if
> necessary, trial.

Doc. 3580 at 2.

On July 21, 2022, one day before the unopposed order extending

jurisdiction was set to end, the district court denied Plaintiffs' Motion to Extend

Jurisdiction over the second agreement and returned the case to the active

docket, as the parties had agreed to in their joint proposed plan. Docs. 3597

and 3580. Two days later, on July 23, 2022, Defendants sent Plaintiffs a letter

providing "formal notice that the State is exercising its right under Illinois law

to terminate the Consent Decree at will, effective July 23, 2022." Doc. 3741-1.

Defendants further stated, "We believe class members would most benefit from

a collaborative model of dispute resolution in lieu of continued litigation, but

we will be prepared to pursue either course." *Id.*

On September 15, 2022, Plaintiffs moved for leave to file a Fourth Amended Complaint adding Governor J.B. Pritzker in his official capacity as a Defendant and claims under the Due Process and Equal Protection clauses of the Fourteenth Amendment to the U.S. Constitution. Doc. 3632. The court granted leave to file on September 30, 2022, stating, "Plaintiffs drafted the Fourth Amended Complaint pursuant to the parties' agreement and with the Court's permission." (Minute Entry 9/30/2022).

### *The District Court Oversaw Discovery, Denied a Motion to Dismiss the Fourth Amended Complaint, Set a Preliminary Injunction Hearing, then Concluded it Lost Jurisdiction Fifteen Months Earlier (2022-2023)*

On September 29, 2022, the parties filed a proposed discovery plan with deadlines for fact discovery in September 2023, expert discovery in March 2024, and dispositive motions in April 2024. Doc. 3640. In addition, the order included a stipulation that the court would decide whether the system as of the close of discovery was providing constitutionally adequate care and whether Defendants were deliberately indifferent as of that date. *Id.* at ¶ 8. The plan was adopted by the district court. Text Order 9/30/2022. The parties then engaged in extensive fact and expert discovery, including written discovery, thousands of pages of documents, depositions, and expert inspections of numerous facilities throughout the state.

 Defendants filed a partial motion to dismiss the Fourth Amended Complaint for failure to state a claim, which the district court denied as to the ADA and Rehabilitation Act claims and granted without prejudice "as to the claims against the Governor, the Equal Protection Claims, and the Due Process

Claims." Doc. 3681 at 17. Defendants did not move to dismiss the Eighth Amendment claims. Doc. 3655. Plaintiffs filed a Fifth Amended Complaint on May 26, 2023. Doc. 3702. Between May and September 2023, several motions were filed by the parties, including a motion for a preliminary injunction seeking emergency relief for class members urgently in need of a higher level of care who were instead being isolated in harmful conditions at a reception center. Docs. 3693, 3711, 3723. The court denied Defendants' motion to strike that preliminary injunction motion and set the matter for hearing on November 2, 2023. (Minute Entry 8/21/23).

As the parties worked to complete discovery on both the emergency motion and the case as a whole, on September 18, 2023, the district court issued a *sua sponte* order directing the parties to brief "whether it has jurisdiction over the underlying merits of these proceedings." Doc. 3739 at 7. Both parties filed memoranda addressing the court's jurisdiction on October 2, 2023. Docs. 3741, 3742. On October 23, 2023, the district court issued a final order dismissing the case for want of jurisdiction, concluding that it had lost jurisdiction fifteen months earlier, on July 21, 2022, when it terminated the consent judgment. Doc. 3745.

The district court's order dismissed "WITH PREJUDICE...the claims embodied in the consent decree and DISMISSED WITHOUT PREJUDICE...the newly added claims embodied in the Fifth Amended Complaint." Doc. 3745 at p. 17. The order said nothing of the pending preliminary injunction motion which had been set for an evidentiary hearing on what multiple experts had

found to be dangerous harm in need of urgent redress. On November 2, 2023, Plaintiffs filed a Motion to Vacate the Dismissal Order Pursuant to Rule 59(e) arguing that the district court's order made crucial factual and legal errors. Doc. 3750. On November 30, 2023, the district court denied the Plaintiffs' motion to vacate. Doc. 3755. The court acknowledged its factual error (elaborated on below) but did not vacate the dismissal. Doc. 3755 at p. 4-6. This appeal follows.

## Legal Standard

The district court's determination that it lost subject matter jurisdiction in this case is subject to *de novo* review, and this Court has an "independent obligation to satisfy" itself that the district court's jurisdiction is secure. *Yancheng Shanda Yuanfeng Equity Inv. P'ship v. Wan*, 59 F.4th 262, 268 (7th Cir. 2023) *citing Carroll v. Stryker Corp.*, 658 F.3d 675, 680 (7th Cir. 2011).

## Summary of Argument

The lower court never lost jurisdiction over the case for two principal reasons. First, a district court retains jurisdiction to grant relief from its own final judgments under Rule 60(b) and to grant leave to file supplemental and amended pleadings under Rule 15 even after final judgments. Second, once the district court allowed Plaintiffs to file their amended complaint (and denied the motion to dismiss that complaint), and a preliminary injunction motion (and denied the motion to strike that motion), the claims in those pleadings—which were separate from those resolved in the consent judgment—were properly

before the court. The court then had an independent basis for jurisdiction and duty to adjudicate those pleadings.

In its order dismissing the case for lack of jurisdiction, the court did not reason that the claims in the amended complaints were outside the court's federal question jurisdiction, or that there was a lack of personal jurisdiction over Defendants. Instead, it relied on a series of faulty premises that were not jurisdictional. The first is a factual error: a miscalculated date, which, once corrected, undercuts the remainder of the order's reasoning. The second is the court's citation to case law regarding appellate jurisdiction, not original jurisdiction. Third is the court's conflation of jurisdiction over the consent judgment with jurisdiction over the case as a whole, leading to the mistaken conclusion that the district court's subject matter jurisdiction over the case ended when it refused to extend the terms of the consent judgment beyond July 22, 2022, even though before that date the court had already entered an agreed order that Plaintiffs could file an amended complaint. Fourth, the court ignored that the language of the Agreement provided for a return to the trial call if Defendants did not comply. Fifth, the court erroneously concluded that because this Court entered a final order on the permanent injunction and did not remand the case, the district court lost jurisdiction even though this Court's order on the injunction was limited to enforcement of certain areas of the Agreement, not the Agreement as a whole. Finally, the district court asserted that the extensions of the Agreement were invalid despite being provided for in the Agreement and entered with consent of the parties. Once

these errors are explained and the case is framed in terms of well-trodden procedure under Rules 15 and 60(b), the lower court's finding of no jurisdiction must be reversed.

**ARGUMENT**

## I. The Errors in the District Court's Dismissal Order

### A. The District Court Miscalculated the End Date of the First Agreement.

The court's dismissal order of October 23, 2023, was grounded in an important factual mistake about the beginning and end dates of the First Agreement. Although Plaintiffs clarified the mistake in a timely Rule 59(e) motion, and the Defendants and court conceded the error, the court did not vacate its dismissal as a result.

The district court's dismissal order concluded that after Defendants appealed the permanent injunction order on May 21, 2019, but before the Second Agreement was entered on June 9, 2020, "the Court's jurisdiction had already terminated under the terms of the Consent Decree...on May 23, 2019." Doc. 3745 at 11. Thus, the court held that the Second Agreement, which was not entered on the docket as a consent judgment until June 9, 2020 "was entered after the Court's jurisdiction had lapsed." *Id.* at 12. Following this logic, the court held that this Court's reversal of the permanent injunction order "reversed the only areas of jurisdiction that survived past the expiration of the Consent Decree." *Id.* at 13.

The court's error in this regard was based on a simple factual miscalculation. The First Agreement states:

> e) The Court's jurisdiction shall terminate three (3) years after **the Approval Date *or the Budget Contingent Approval Date, whichever is later,*** with respect to any provisions of the Settlement Agreement for which there is no outstanding determination that Defendants are not in substantial compliance.

Doc. 711-1 at 29 (emphasis added).

The court later admitted the error, that its order had overlooked the phrase "or the Budget Contingent Approval Date, whichever is later" and instead calculated the end date of that First Agreement as three years from the date it was entered, on May 23, 2019, which would mean that jurisdiction over the case lapsed as the Second Agreement was not entered for another 13 months. As Defendants conceded, the Budget Continent date was June 7, 2017, meaning that the First Agreement did not end until July 7, 2020. Docs. 3750, 3751, 3755. The district court entered the Second Agreement as a consent judgment on June 9, 2020. Doc. 3047-2. There was no lapse. In denying Plaintiffs' Rule 59(e) motion, the district court conceded its error but did not reverse the dismissal, instead holding that the date was not determinative because May 23, 2019, was simply "an earlier juncture where the Court *may* have *also* lost jurisdiction." Doc. 3755 at 5 (emphasis in original).

But the mistaken date was the main reason underlying the district court's conclusion: if the agreement expired while the case was on appeal and the only areas of non-compliance that survived were those that were on appeal and then reversed, it arguably meant the end of the agreement. With that point clarified,

the district court had no basis to find that the consent judgment expired at any point before it was extended, or before the order on June 1, 2022 allowing for amended pleadings, or before July 21, 2022, when the court placed the case back on the active docket for scheduling. Thus, the areas of non-compliance that had existed continuously throughout the case had never expired while the case was on appeal, but remained actively in dispute in the district court before, during, and after the appeal. The district court never addressed the factual reality that the case was placed back on the trial call *before* the consent judgment ended.

### B. The District Court Conflated Appellate Jurisdiction with Original Jurisdiction.

The distinction between "original jurisdiction" conferred to district courts by 18 USC §1331 and jurisdiction "over final decisions of the district courts" conferred on courts of appeals pursuant to 18 USC §1291 is crucial to understanding the district court's error. Because the court conflated these concepts, it reached the erroneous conclusion that a district court loses jurisdiction over a final judgment whether it is appealed or not. The district court's observation that the consent judgment was a "final order" does not mean that the district court lost subject matter jurisdiction over the case. Doc. 3745 at 9.

Two cases relied on by the district court illustrate this point. First, the district court cited this Court's decision in *Carver v. Condie* for the proposition that its jurisdiction over the underlying case could not have continued past the termination of the Agreement because "[c]onsent decrees operate as a final

judgment, fully resolving the underlying matter." Doc. 3745 at 9 *citing* 169 F.3d 469, 472 (7th Cir. 1999). But the significance of this Court's holding in *Carver* was that the decree was a "final judgment" for the purpose of determining appellate jurisdiction, not whether there could be further proceedings in the district court below. *See id.* In fact, this Court in *Carver* made clear that proceedings in the district court could continue after the decree (an appealable final judgment), stating that if the third party intervenor was found liable and unable to pay the amount agreed to in the consent decree, "the plaintiffs would not be without a remedy...*they could always return to the court under Rule 60(b) and seek to withdraw their agreement and litigate their action.* The district court would, as always, have considerable discretion in considering such a motion." *Id.* at 474 (emphasis added). In other words, in *Carver*, this Court said that the lower court *retained jurisdiction to set aside the consent decree and return the case to trial,* precisely what the district court did in this case when it put the case back on the trial docket on July 21, 2022.

The district court also relied on *Corey H. v. Chicago Bd. of Educ.,* 528 F. App'x 666, 668–69 (7th Cir 2013), for the proposition that once the court "declined to extend its jurisdiction any further over the Consent Decree...the Court's subject matter jurisdiction unquestionably ended." Doc. 3745 at 13. But again, that case was about appellate jurisdiction. In *Corey H.*, this Court held that an appeal was moot because the relief sought was to vacate the consent decree, but the consent decree had already expired, so there was nothing for the appellate court to vacate. *Id.* at 668-9. At no point did this

Court say that the district court lost jurisdiction. Further, in contrast to *Corey H.*, the consent judgment in this case never expired or ended before the district court was asked to issue a ruling—its order placing the case back on the active docket came one day before the July 22, 2022, the extended jurisdictional term for the Agreement.

### C. The District Court Conflated Jurisdiction Over the Consent Judgment with Jurisdiction Over the Case.

The court's jurisdiction to enforce the consent judgment is not synonymous with its jurisdiction over the case as a whole. As occurs in countless cases, a court may dismiss a complaint without dismissing the case and allow a plaintiff to amend its pleading under Rule 15(a). *See e.g. Camp v. Gregory*, 67 F.3d 1286 (7th Cir. 1995). Similarly, as further discussed below, a court may resolve a complaint by a final judgment on the merits in the form of injunctive relief and allow supplemental pleadings where it is still exercising jurisdiction over the case. *Habitat Educ. Ctr. v. Kimbell*, 250 F.R.D. 397, 401-3 (E.D. Wis. 2008). The fact that the Third Amended Complaint was resolved by the consent judgment, and that it was terminated by the court, did not preclude the court from exercising jurisdiction over the case as a whole. Nor could it have, because as the district court itself noted in its dismissal order, a "court's subject matter jurisdiction cannot be forfeited or waived." Doc. 3745 at 16 *citing Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

Similarly, the section of the PLRA cited by the district court entitles parties to terminate prospective relief, not to terminate a case. Doc. 3745 at 12 *citing* 18 U.S. Code § 3626(b)(2)(In a civil case about prison conditions, a defendant is

"entitled to the immediate termination of any prospective relief...granted in the absence of a finding[s]...that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."). Unlike other provisions of the PLRA, which call for termination of the *case* if its provisions are not met (*see e.g.* § 1997e(c)(1)), a motion to terminate a consent judgment does not equate to a dismissal of the action as § 3626(b)(1) is specific to the termination of the relief order.

To the extent that the court's authority was in some way limited by the language of the Agreement, it spoke only about jurisdiction over its own terms, not over any claims that had not yet accrued when the Second Agreement was entered. The Agreement stated:

> The Court's *jurisdiction shall terminate* April 23, 2021 *with respect to any provisions of this Settlement Agreement* for which the court has found that Defendants are in substantial compliance. *The Court's jurisdiction over the Settlement Agreement* for which no such finding has been made may be extended by the court for periods of time not more than two years from any finding of violation with respect to any provisions of this Settlement Agreement for which the Court has determined that Defendants are not in substantial compliance. As to relief governed by the Court's permanent injunction order (Dkt. 2633), the relief shall terminate as provided in that order, unless otherwise altered by court order. *As to any other court ordered relief pursuant to sections XXIX(g)(i), the court's jurisdiction shall be governed by* the Prison Litigation Reform Act, 18 U.S. Code § 3626(b).

Doc. 3047-2 at 23-4 (emphasis added). The jurisdictional language in the Agreement explicitly applied to the "provision of this Settlement Agreement," not to the case as a whole. In addition, the Agreement did not provide for a

dismissal of the case, or even include language that Plaintiffs were releasing the claims in the Third Amendment Complaint.

### D. The District Court Ignored that the Agreement Provided for a Return to the Trial Docket.

Rather than limiting the court's jurisdiction over the case as a whole, the Agreement anticipated non-compliance and provided for further litigation if that occurred, stating "[t]he Court may apply equitable principles and may use any appropriate equitable or remedial power available to it" including "returning the case to the active docket and setting trial date." Doc. 3047-2 at 24 (Sect. XXIX(i)). On July 21, 2022, the court did just that and "returned [the case] to the active docket for scheduling." Doc. 3597 at 12. It is an inherent contradiction in the court's dismissal order that it both concluded its jurisdiction was limited by the terms of the Agreement and ignored the terms of the Agreement that provided for the procedural path the case actually took: toward a trial when the parties could not resolve disputes over non-compliance. The district court never addressed Plaintiffs' argument that it was applying the terms of the Agreement when it returned the case to the trial call.

### E. Jurisdiction was not Lost with this Court's Decision on the Enforcement Injunction.

Another error in the district court's dismissal order is the suggestion that its jurisdiction was somehow lost by the reversal of the permanent injunction by this Court. Although Defendants' appeal of the injunction was interlocutory, the district court concluded that this Court's reversal of the permanent injunction order was a "final order" resolving the case, noting that this Court

"*did not remand the case back to the Court for further proceedings.*" Doc. 3745 at 7 (emphasis in original). The fact that this Court did not remand the case is not relevant to determining whether the lower court had jurisdiction because "once the mandate ha[d] issued…the district court's authority resume[d]." *See Wells Fargo Bank, N.A. v. Moore*, 618 Fed. Appx. 857 (7th Cir. 2015). This Court's reversal of the permanent injunction was a final order reversing that injunction, which addressed five areas of the Agreement—it was not a final order on the entire consent judgment, which remained in effect, much less the whole case, especially after the district court allowed Plaintiffs to file a supplemental complaint.

As stated in the district court's order converting the preliminary injunction to a permanent injunction, "this case was limited to examining a limited area of the Settlement Agreement," and "this was not a 'full' trial on the merits on all of the claims; nor was it a situation where the Parties tore up the Settlement Agreement to have this Court decide the outcome on all matters." Doc. 2460 at 8. By acknowledging that the injunction hearing was not a full trial on the merits, the district court preserved the Plaintiffs' right to a trial on matters that had not been heard at the preliminary injunction hearing. *See* Fed. R. Civ. Pro. 65(a)(2). Under Rule 65(a)(2), a party is entitled to "clear and unambiguous notice" that their "final day in court has come" before a court may consolidate all claims with a hearing on a preliminary injunction. *Update Art v. Charnin*, 110 F.R.D. 26, 36 (S.D.N.Y 1986) *citing Pughsley v. 3750 Lake Shore Drive Cooperative Bldg.*, 463 F.2d 1055, 1057 (7th Cir. 1972). In this case, while

Plaintiffs agreed that the fact findings of the injunction hearing would be incorporated into the final trial record, it was understood by all parties and memorialized by the court that the hearing was not a full trial on the merits of all claims in the Third Amended Complaint, which is why the litigation over the consent judgment continued after this court's mandate issued. The final day in this case has never occurred.

### F. The District Court had Jurisdiction to Extend the Consent Judgment under its Inherent Authority and the Terms of the Agreement.

Upon entering both the First and Second Agreements as consent judgments, the court made clear its intent to retain jurisdiction. When it entered the First Agreement it stated, the "matter will remain on the Court's docket until the terms of the Settlement Agreement are met." Doc. 709. Even if the court had not used this language, this Court has held that a "district court need not use any magic form of words to retain jurisdiction." *See In re VMS Sec. Litig.*, 103 F. 3d 1317, 1321 (7th Cir. 1996) (internal citations omitted). Where judgments provide for prospective relief, "judicial power to modify a decree is inherent and so does not require express conferral." *Bogard v. Wright*, 159 F.3d 1060, 1064 (7th Cir. 1998). However, to the extent that the court's inherent authority needs additional justification, it is provided by the Agreement itself and, contrary to the district court's suggestion, not prohibited by the PLRA.

The terms of the Agreement provided for extension. Doc. 3597 at 5 *citing* Doc. 3047-2 at 25 ("requiring the parties to 'seek Court approval of the modification' proposed by Defendants, even if Plaintiffs agree to the

modification"); *see also* Doc. 3047-2 at 9 ("any necessary time extensions shall be negotiated by the parties. All such extensions shall require the written agreement of counsel for Plaintiffs."). Pursuant to these terms, the parties negotiated and agreed to each extension of the Agreement, and sought and received approval of those extensions, which were properly entered as orders of the district court and were provided for in the Agreement itself. The district court's power to extend the terms of the consent judgment by agreement of the parties required no additional authorization. *See Bogard*, 159 F. 3d at 1064 ("Had the defendants wanted to limit the judge's power [to extend a consent decree] they would have insisted on the appropriate language.")

The district court's conclusion that "any extension of jurisdiction beyond the Amended Consent Decree's April 23, 2021 expiration date was invalid because each extension of jurisdiction required findings of an ongoing violation of Federal rights under the PLRA" relied on its reference to 18 U.S.C. § 3626(b)(2). Doc. 3745 at 12. The statute provides for termination of any relief not supported by findings "that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." *Id.* The PLRA should not be read to invalidate agreed extensions of the Agreement. Although the Agreement was entered without needs-narrowness findings, the PLRA "does not require (or even authorize) the termination of injunctions." *See Berwanger v. Cottey*, 178 F.3d 834, 838 (7th Cir. 1999). Rather, it says that "'relief shall be terminable' on a party's motion, but 'shall be terminable' does

21

not mean 'the district court must terminate.'"[2] *Id.*; *see also Doe v. Cook County*, 798 F.3d 558, 566-67 (7th Cir. 2015) (declining to undermine the validity of settlement agreements held to be consent decrees but made without PLRA findings where no party moved to terminate.)

Every extension of the consent decree was made by agreement and pursuant to court order. Nothing in the PLRA prevents this. The only effect of not making PLRA findings was that Defendants could have moved to terminate; but they never did so. The day before the last extension of the consent decree, with ongoing negotiations having failed, the court set the case back on the trial docket and allowed an amended complaint. Nothing in the PLRA prevents that either; putting a case back on the trial docket and allowing an amended complaint is not "prospective relief."

---

[2] Relatedly, the court's dismissal order suggested that because the consent judgment itself was final, the court's jurisdiction ended. Doc. 3745 at 13. But in the PLRA context, the Supreme Court has explained that consent judgments are subject to alteration by district courts that retain jurisdiction over them. "A court has the authority to alter the prospective effect of an injunction to reflect a change in circumstances, whether of law or fact, that has occurred since the injunction was entered." *Miller v. French*, 530 U.S. 327, 347-8 (2000) (internal citation omitted). In *Miller*, the Court confronted a circuit split on the question of whether the PLRA violated separation of powers by automatically "suspending" final judgments of Article III courts. In finding that that the PLRA did not offend separation of powers principles, the court explained that "prospective relief under a continuing, executory decree remains subject to alteration due to changes in the underlying law." *Id.*at *341* citing *Landgraf v. UIS Film Products*, 511 U.S. 244, 273 (1994). Consequently, it found that although a "remedial injunction is the 'final judgment' for purposes of appeal, it is not 'the last word of the judicial department.'" *Id.* at 347 citing *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 227 (1995). In a similar analysis upholding the constitutionality of the termination provision of the PLRA, the Fifth Circuit said, "When a court enters prospective relief and retains jurisdiction over the case, the judgment is not final." *Ruiz v. United States*, 243 F.3d 941, 948 (5th Cir. 2001). Here, the court entered a consent judgment providing for prospective relief and retained jurisdiction over the case. Pointing out that the consent decree is a final judgment does not deprive the district court of jurisdiction under the PLRA or otherwise.

## II. The District Court Properly Allowed Plaintiffs to File a Supplemental or an Amended Complaint under Rule 15 and/or Granted Relief from the Consent Judgment under Rule 60(b).

The district court's determination that the consent judgment was a "final judgment" has nothing to do with jurisdiction and everything to do with procedure—i.e. *what* is the proper way to proceed after a consent judgment is entered, not *whether* a district court can exercise jurisdiction after a consent judgment ends. Whether a plaintiff must file a new lawsuit or continue with the pending suit to seek relief related to a final judgment is a question normally resolved on a motion under Rule 60(b) or Rule 15 (or both). This Circuit allows parties to seek relief either in the same court that entered a consent judgment under Rule 60(b) or Rule 15(a) or (d), or by filing a new complaint. In *United States v. Northlake*, 942 F.2d 1164, 1167-70 (7th Cir. 1991), plaintiffs sought "supplemental relief and discovery" after allegations that defendants had violated a consent decree involving discriminatory hiring practices. This Court found that the district court should have held a hearing for relief in the underlying case; the plaintiffs did not have to file a fresh lawsuit. *Id.* By contrast, in *United States v. Fisher*, 864 F.2d 434, 439 (7th Cir. 1988) where plaintiffs chose to file a new lawsuit after a consent judgment and defendant argued the plaintiff *had* to go back to the district court to seek modification of a consent decree under Rule 60(b) rather than file a fresh lawsuit, this Court disagreed.

In *Camp v. Gregory*, 67 F.3d 1286, 1290 (7th Cir. 1995), the plaintiff sought and was granted leave to file an amended complaint under Rule 15(a) after

dismissal of the complaint. This Court affirmed, explaining that a Rule 15(a) motion to amend a complaint could be construed as a motion for relief from judgment under Rule 60(b), but also that a Rule 60(b) motion was not necessarily required if the final judgment had not been entered on the case overall.[3] In a district court decision rejecting a defendant's argument that the court lacked jurisdiction to allow a supplemental complaint under Rule 15(d) after having previously entered a final injunction, the court stated, "what defendants characterize as a challenge to jurisdiction is actually an argument about procedure, mainly an argument that…plaintiffs must file new lawsuits." *Habitat Educ. Ctr. v. Kimbell*, 250 F.R.D. 397, 400 (E.D. Wis. 2008). In that case, the court held that plaintiffs could file a supplemental complaint under Rule 15(d) after denying defendants' 60(b) motion that also was also before it. *Id* at 401-3.

Here, although the district court's July 21, 2022 order does not cite any Federal Rule for its decision to have the case "returned to the active docket for scheduling," its decision comports with Federal Rules 15(a), 15(d), and 60(b).

---

[3] In *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 295-6 (1994), the Supreme Court emphasized two points that limited federal jurisdiction after a settlement, reasoning that 1) if a case had been dismissed under Rule 41(a)(1)(ii) and 2) the party sought "enforcement of the settlement agreement, not merely reopening of the dismissed suit by reason of breach of the agreement," it would be outside the federal court's limited jurisdiction. Neither of these factors are present here, since the case was not dismissed and Plaintiffs were not seeking enforcement of the agreement, but rather a trial on the supplemental claims. *Kokkonen* also recognized that "reopening of the dismissed case by reason of breach of the agreement" could be "obtained under Federal Rule of Civil Procedure 60(b)(6)" and that a court could make "the parties' compliance with the terms of the settlement contract (or the court's 'retention of jurisdiction' over the settlement contract)" part of the dismissal order "if the parties agree." *Id.* at 381-2.

Doc. 3597 at 12. At the time of the order, no party to the case questioned whether the court was explicitly granting relief from judgment under Rule 60(b) or granting a supplemental or amended pleading under Rule 15(a) or (d), or both. These procedural steps were all taken by agreement of the parties on their joint motion and were consistent with both the Federal Rules and caselaw where plaintiffs allege continuing violations of federal law after entry of a consent judgment.

### A. The District Court had Jurisdiction to Allow Plaintiffs to File a Supplemental Complaint.

Because the district court explicitly retained jurisdiction after its order approving the Agreement, the court was well within its power to allow Plaintiffs to file a supplemental complaint.[4] Rule 15(d) "plainly permits supplemental amendments to cover events happening after suit," and allows parties to "allege new claims based on distinct events in matters that have reached final

---

[4] The Fourth and Fifth Amended Complaints filed by Plaintiffs, despite being titled "amended" complaints are more accurately characterized as "supplemental" complaints under Rule 15(d) than amended complaints under Rule 15(a). While an amended pleading "relates to matters that occurred prior to the filing of the original pleading and entirely replaces such a pleading, a supplemental pleading addresses events occurring subsequent to the initial pleading and adds to such a pleading." *Kimbell*, 250 F.R.D. at 401 *citing* 6A Charles Alan Wright et al., Federal Practice & Procedure § 1504 at 177 (2d. ed. 1990). Here, the Fourth and Fifth Amended Complaints described the mental health care system in IDOC as it existed at the time of filing those complaints in 2022 and 2023. Docs. 3641 and 3702. While Plaintiffs arguably misnamed their pleadings, the "standards used by a district court in ruling on a motion to amend or a motion to supplement are nearly identical. In either situation, leave should be freely granted, and should be denied only where good reason exists." *United States v. Indiana*, 2009 U.S. Dist. LEXIS 86419 *7 (N.D. Ind. 2009)(internal citations omitted). Further, as with supplementation, amendment has been permitted by courts after judgment has been entered. *See Stewart v. Shelby Tissue*, 189 F.R.D. 357, 361 (W.D. Tenn. 1999) *citing* 6 Wright, Miller, & Kane, Federal Practice & Procedure, Civil 2d § 1488 (West 1990).

disposition." *See Indiana*, 2009 U.S. Dist. LEXIS 86419 at *8 *citing Griffin v. County School Bd. of Prince Edward County*, 377 U.S. 218, 226-7 (1968). "Such post-judgment events 'need not arise out of the same transaction or occurrence as the original claim, so long as they bear 'some relationship' to the original pleading.'" *Id.* at *9 *citing Kimball*, 250 F.R.D. at 402. In analogous cases, courts have allowed supplemental complaints where they are "intended to address related facts occurring after a consent decree or injunction's entry...which threaten to undermine the broader purposes of the consent decree or injunction." *Ne. Ohio Coal. for the Homeless v. Husted*, No. 2:06-CV-00896, 2015 U.S. Dist. LEXIS 201635 *24-5 (S.D. Ohio 2015) (listing cases where courts granted leave to file supplemental complaints after consent decrees and injunctions). In these cases, as here, the previous final judgment does not deprive the court of subject matter jurisdiction or procedurally bar plaintiffs from bringing supplemental claims.

The district court decision in *Habitat Educ. Ctr. v. Kimbell*, 250 F.R.D. 397 (E.D. Wis. 2008) is directly on point here. In *Kimbell*, the district court enjoined public officials of the Forestry Service and Department of Agriculture from beginning timber removal on the basis of non-compliant environmental impact statements ("SEISs"). *Id.* at 397-400. Several years later, defendants filed a Notice of Compliance with the prior order and moved under Rule 60(b) to lift the injunctions. *Id.* Plaintiffs moved for leave to file a supplemental complaint based on new facts, alleging that the new environmental impact statements "violated federal law in ways that the" previous ones did not. *Id.* at 401.

Defendants argued that the court did not have jurisdiction to hear the supplemental complaint because they had complied with the previous order. The court rejected that argument, stating that it had "subject matter jurisdiction over the present matters pursuant to 28 U.S.C. §1331 because the suits raise federal questions," and that, in entering the injunctions, it "expressly retained jurisdiction…'to enter such orders as may be necessary or appropriate to implement and/or enforce the provisions of the injunction." *Id.* at 400-02. Further, the *Kimbell* court rejected the defendants' argument that plaintiffs had to meet the standard for Rule 60(b) relief and move to set aside the previous judgment before filing a supplemental complaint, and distinguished between cases in this Circuit where the plaintiff sought to file an amended pleading after the case has been dismissed for failure to state a claim and cases where courts allowed plaintiffs to file supplemental complaints after injunctions and consent decrees. In the former, "the losing plaintiff…is in effect asking the court to set aside the final judgment, since if the court allows the amendment it will necessarily have to undo its prior dismissal of the action." *Id.* at 402. In the latter, plaintiffs "do not attempt an end run around an unfavorable judgment but rather seek relief consistent with a favorable judgment…In such cases, the courts do not require the plaintiff to move to set aside or vacate the original judgment before filing a supplemental complaint seeking additional relief." *Id.*

As in *Kimbell*, allowing supplementation under Rule 15(d) was proper here because 1) Plaintiffs had obtained a final judgment in the form of prospective

relief with continuing jurisdiction, 2) the consent judgment was not complied with and ongoing federal law violations were not remedied, and 3) Plaintiffs filed supplemental complaints alleging new and continued instances of unlawful conduct after the judgement was entered. The court had subject matter jurisdiction and Plaintiffs were not required to move to vacate the Agreement in order to amend or supplement their complaint because the court did not have to "undo its prior dismissal" of the action in order to grant relief— the action had never been dismissed. *See also Ne. Ohio Coal.*, 2015 U.S. Dist. LEXIS 201635 at *19 *citing Leisure Caviar, LLC. v. U.S. Fish and Wildlife Service*, 616 F.3d 612, 616-18 (6th Cir. 2010) (finding that when a party seeks to amend a complaint after an *adverse* judgment the claimant must meet with requirements of Rules 59 and 60 as well as Rule 15) *and In re Ferro. Corp. Derivative Litig.,* 511 F.3d 611, 624 (6th Cir. 2008) (same, and noting that entire case had already been dismissed).

In the prison context, a district court in the Sixth Circuit granted leave to file a supplemental complaint after the conditional dismissal of a case pursuant to a consent judgment. In *United States v. Ohio*, the plaintiffs brought an action against the Governor and other officials alleging constitutional violations at juvenile correction facilities for failure to provide adequate mental health care and other services. No. 08-CV-00475, 2014 U.S. Dist. LEXIS 42159 at *3 (S.D. Ohio 2014). As in this case, the procedural history and negotiations were long and complex. After a stipulated judgment resolving the claims, amendments to that stipulation, a conditional dismissal of some claims, a

motion by Defendants to terminate the judgment under the PLRA, and further negotiations, plaintiffs sought leave to file a supplemental complaint. Plaintiffs claimed the state was "excessively secluding youth with mental health needs" at facilities that had been subject to the conditional dismissal six years earlier. *Id.* at *6 and *9. Defendants claimed plaintiffs were procedurally barred from filing a supplemental complaint because the consent order "governs [the] case" and the previous conditional dismissal "operates as an adjudication on the merits." *Id.* at *11-12.

In granting the plaintiffs' motion to supplement the complaint, the court held, "the Amended Stipulation could not dismiss claims based on events which did not occur until 2013." *Id.* at *16. Thus, there was no procedural bar or loss of jurisdiction after the entry of a consent order that prevented plaintiffs from alleging new substantive conduct that formed part of the same pattern of unconstitutional mistreatment as alleged in the original complaint. As in *Ohio*, Plaintiffs here were granted leave to file supplemental complaints after discovery revealed new evidence of unconstitutional treatment that occurred after the consent judgment was entered. In contrast to *Ohio*, Plaintiffs claims here were never dismissed, but as the court in *Ohio* aptly noted, any dismissal *would not have applied to events that had not even occurred yet. Id.* Thus, the consent judgment in our case, even as an adjudication on the merits of the Third Amended Complaint, did not procedurally or otherwise preclude Plaintiffs from seeking to file new claims based on subsequent events.

While the standard for deciding a motion to supplement under Rule 15(d) was not in dispute, all the factors are met here.[5] The Fourth and Fifth Amended Complaints were "essentially a continuation" of the original action addressing the same issues but adding new legal theories and Defendants. *See Indiana*, 2009 U.S. Dist. LEXIS 86419 at *10 and *Ne. Ohio Coal.*, 2015 U.S. Dist. LEXIS 201635 at *21 ("Rule 15(d) contemplates that the supplemental factual allegations may give rise to new legal theories against new defendants.") Further, supplementation was proper here because the district court not only retained jurisdiction over the consent judgment, but expressed its intention to retain jurisdiction *over the case as a whole* until the terms of the judgment were met where it stated, "the matter will remain on the Court's docket until the terms of the Settlement Agreement are met." Doc. 709. Along the same lines, in *Kimbell*, the court found that by saying the "injunctions would remain in effect until defendants produce NEA compliant EISs" the court "obviously intended" that its order was necessary to terminate jurisdiction because "courts determine whether parties have complied with their orders, parties do

---

[5] Factors include 1) the extent to which the original or supplemental complaints are related; 2) whether the district court retained jurisdiction over the case; 3) whether any prior court orders or decrees imposed affirmative duties upon the parties; 4) whether there is evidence of delay, bad faith, or dilatory motive on behalf of the movant; 5) whether the supplement would impose undue prejudice upon an opposing party; and, overall, 6) whether allowing supplementation would serve the interests of judicial economy. *Indiana*, 2009 U.S. Dist. LEXIS *9. [6] Doc. 3484-1 is a list of forty-four areas where Defendants were non-compliant with the settlement agreement as of January 2022. This list was attached to an "Unopposed Order Extending Court Jurisdiction Over Settlement." This Court also noted Defendants had not complied with their obligations under the Agreement, stating "To be sure, IDOC's efforts fell short: the prison system has not yet provided the level of care prescribed by the settlement." *Rasho*, 22 F.4th at 711.

not." *Kimbell*, 250 F.R.D. 397 at 400. Here, by stating the "matter will remain" on its docket the court indicated that not only would its jurisdiction continue during the life of the document, but that the court would make a determination that the terms of the Agreement had been met before it would dismiss the case: since that had not occurred, it was proper to allow Plaintiffs to file a supplemental complaint.

Supplementation was also proper because the consent judgment "imposed affirmative duties upon the parties that the Court has retained jurisdiction to enforce," but Defendants never complied with their obligations under the consent judgment, and their provision of mental health services to the Plaintiff class had worsened in significant ways since the judgement was entered.[6] *Indiana*, 2009 U.S. Dist. LEXIS 86419 at *14 *citing Griffin*, 377 U.S. at 226-7 (further citations omitted). This case is thus procedurally similar to school desegregation cases, where after judgment was entered defendants took actions that exacerbated segregation without directly violating the court order, and courts allowed supplemental complaints years after final judgments to address ongoing discrimination. *See Griffin v. County School Board*, 377 U.S. at 226-7 (allowing supplemental complaint years after *Brown v. Board of Education* because county defunded public schools in effort to avoid desegregation) and

---

[6] Doc. 3484-1 is a list of forty-four areas where Defendants were non-compliant with the settlement agreement as of January 2022. This list was attached to an "Unopposed Order Extending Court Jurisdiction Over Settlement." This Court also noted Defendants had not complied with their obligations under the Agreement, stating "To be sure, IDOC's efforts fell short: the prison system has not yet provided the level of care prescribed by the settlement." *Rasho*, 22 F.4th at 711.

*Pointdexter v. Louisiana Fin. Assistance Comm'n*, 296 F.Supp. 686, 693 (E.D. La. 1968) (also dealing with discriminatory funding scheme after desegregation order). Relatedly, Defendants were on notice that the problems underlying the consent judgment had not improved and that they had never complied with the bulk of their obligations under the Agreements. "'Where the original pleading placed the defendant on notice that the disputed conduct was of a continuing nature," supplementation should be allowed because in such a case a defendant "is generally expected to defend against claims arising out of that conduct--whether accruing before or after the original pleading was filed." *Bromley v. Michigan Educ. Assoc.*, 178 F.R.D. 148, 154 (E.D. Mich. 1998) *citing Chesapeake Ohio Ry. v. U.S. Steel Corp.*, 878 F.2d 686, 690 (3d Cir. 1989). Defendants were on notice that the conduct underlying the original complaint was ongoing and, due to the monitoring process, that some problems had worsened, and serious new ones had arisen.[7] Thus, they were expecting to defend against those claims. *See also Brian A. v. Bredesen*, No. 3:00-0445, 2009 U.S. Dist. LEXIS 112890 *9 (M.D. Tenn 2009) (supplementation allowed because "Defendants clearly were on notice...as they are being continually

---

[7] In addition to the court-monitoring process, a report by the Auditor General found that IDOC had not complied with the Agreement, and had provided "misleading and incorrect" information to the court to "imply that the Department had exceeded court-ordered compliance requirements." Illinois Auditor General, *State of Illinois Department of Corrections Compliance Examination for the Period Ending June 30, 2020*, p. 58, https://www.auditor.illinois.gov/Audit-Reports/CORRECTIONS-DEPARTMENT.asp (last visited April 10, 2024)

monitored by the [expert committee] and the Court has retained continuing jurisdiction to enforce the terms of the Settlement Agreement.").

Finally, judicial economy is served by allowing supplementation in a case such as this, because a court that has presided over a consent judgment "is familiar with the long-standing dispute between the parties, with the terms of the Consent Decree, and with the matter as a whole." *Indiana* 2009 U.S. Dist. LEXIS at *14. In a case where supplementation is "necessary to avoid erosion of the protections won in the injunction or consent decree," the "weight of authority...permits the bringing of new claims in a supplemental complaint to promote the economical and speedy disposition of the controversy." *Ne. Ohio Coal.*, 2015 U.S. Dist. LEXIS at *27 and *22 *citing Keith v. Volpe*, 858 F.2d 467, 473 (9th Cir. 1987). The procedural setback to Plaintiffs here does nothing to resolve the dispute between the parties, and judicial economy is best served by allowing them to pick up where they left off—in a pre-trial status in the court below.

**B.      The District Court had Jurisdiction and Grounds for Granting Relief from Judgment under Rule 60(b).**

Where a consent judgment provides for institutional reform litigation, Rule 60(b) is flexible and contemplates significant changes during the life of the judgment.[8] *See Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367, 884

---

[8] While no party below moved for relief from judgment under Rule 60(b), case law states that a court may do so on its own motion. *See e.g. Simer v. Rios*, 661 F.2d 655, 664 n. 18 (7th Cir. 1981). In addition, this Circuit has recognized that a motion to file an amended pleading can be construed as a 60(b) motion. *Camp*, 67 F.3d 1286 at 1290 (district court correct to characterize plaintiff's Motion for Leave to File an Amended Complaint as a motion for relief under Rule 59(e) or 60(b)) and *Paganis v.*

(1992). The court's order granting the parties' joint motion to allow Plaintiffs to file an amended complaint and place the case back on the active docket provided ample reason to do so consistent with Rule 60(b) given 1) the change in circumstances due to the parties mutual misunderstanding of governing law, 2) the parties' agreement that filing an amended complaint and setting the case for trial was the proper course, and 3) the fact that the court was still actively exercising jurisdiction over the case and most of the objectives of the consent judgment had not yet been met.

The primary focus of the court's July 21, 2022, order was the district court's determination that what the parties had considered a private settlement agreement was really a "consent decree" under the PLRA. Under the PLRA, and this Court's decision, if a consent judgment "is judicially enforceable—that is, if a violation means anything other restarting the litigation on the merits—the agreement must be treated as a consent decree under 18 USC § 3636." Doc. 3597 at 5, *citing Rasho*, 22 F. 4th at 707 n. 2. The district court's order is almost entirely devoted to the factual and legal implications of this determination, pursuant to which the court denied Plaintiffs' motion to extend the consent judgment. First, the court begins by recognizing that at the time the consent judgment was entered, "the parties viewed the agreement as a private settlement agreement that did not qualify as a consent decree." Doc. 3597 at 3. However, due to the role of the court in supervising the Agreements,

<hr />

*Blonstein*, 3 F.3d 1067, 1074 (7th Cir. 1993) (Cudahy, J., concurring) (suggesting that "a requirement of two separate pieces of paper may serve only a formalistic end.")

the court held that "despite the apparent mutual mistake as to the legal effect of the agreement" it was a consent decree under the PLRA. *Id.* at 7. Based on this determination, the court held that "Even though the Settlement Agreement purports to authorize an extension of jurisdiction based solely on the alleged lack of substantial compliance, PLRA (sic) still limits the Court's authority to enter relief" and "with no PLRA Findings as to the terms of Settlement Agreement, the Court cannot extend its jurisdiction." *Id.* at 8.

Thus, the district court recognized that the parties' "mutual mistake" had unanticipated legal implications, and that while the Agreement would have provided the court with the power to extend the consent judgment for non-compliance, the change in circumstances prevented the court from doing so. This change warranted 60(b) relief under the standard in *Rufo*, pursuant to which the parties "mutual misunderstanding of governing law" has been recognized by this Court as a basis for 60(b) relief from a consent judgment if it "constitute[s] a change in circumstances." *See United States v. Krilich*, 303 F.3d 784, 790 (7th Cir. 2002) *citing Rufo*, 502 U.S. at 390. The legal impact of the new determination that the consent judgment was a "consent decree" under the PLRA led the court to determine that it could not extend the consent judgment as the Agreement anticipated, even though Defendants had never substantially complied with its terms. This was a "change of circumstances" under *Rufo* that had a direct impact on the trajectory of the case and justified the relief the district court granted: to set the case back on the active docket for discovery and trial. The lower court also took equitable considerations into

account, as called for by *Rufo*, where it recognized Plaintiffs' argument that "it is unfair to them for the Court to find that the agreement operates as a consent decree and deprive them of the ability to extend the agreement, while also refusing to find Defendants in contempt of that decree." Doc. 3597 at 11. The court went on, stating, "Plaintiffs' point is well-taken" but still determined it was compelled by the PLRA to end the decree. *Id.* The court subsequently denied Plaintiffs' pending motions for contempt and stated, "This case is returned to the active docket for scheduling." *Id.* at 12.

Thus, the court's July 21, 2022 order took the form of a 60(b) order granting relief from judgment where it recognized that the parties' (and indeed the court's) mutual misunderstanding of the law had changed the circumstances of the case and justified returning the case to the trial call, particularly in light of the unworkability of the agreement and the court's acknowledgment that there was no enforceable remedy for Defendants' non-compliance since they could not be held in contempt. *Id.* at 11. Indeed, the court later characterized his July 21, 2022 order as relief from judgment in its order denying Defendants' motion to dismiss the Fourth Amended Complaint: "The Court thus *operated as though there was no longer an agreement* and returned the case to the active docket for scheduling." Doc. 3681 at 3. (emphasis added).

At the time the Court made this determination in July 2022, the parties had already agreed, and memorialized in an order of the court, that Plaintiffs would file an amended complaint and the case would proceed to discovery and

trial if the parties were unable to reach an agreement as to a new consent decree. Doc. 3580. Not only is that relevant to why the court chose the path it chose, but it is a proper consideration under *Rufo*, wherein the court noted, "ordinarily, the parties should consent to modifying a decree." *Rufo,* 502 U.S. at n. 7. Here, Defendants were insistent that a return to trial was the proper course if a new settlement could not be reached, as they expressed in their letter to Plaintiffs the day after the court's order. Doc. 3741-1 ("We believe class members would most benefit from a collaborative model of dispute resolution in lieu of continued litigation, but we will be prepared to pursue either course."). Defendants' agreement was a proper consideration justifying 60(b) relief and the return to the trial docket.

Further, case law recognizes that "renewed unconstitutional conditions as to a terminated decree would warrant a 'new round of proceedings.'" *Hadix v. Caruso*, 461 F. Supp. 2d 574, 588 (W.D. Mich. 2006) *citing Inmates of Suffolk County Jail v. Rouse,* 129 F.3d 649, 662 (1st. Cir. 1987) As in the cases granting leave to file supplemental complaints, the question of whether that "'new round of proceedings should be initiated under Rule 60(b)(6) or by a separate action is a discretionary issue which presents itself both to the moving counsel and the district court saddled with such a motion." *Id.* The district court granted Plaintiffs leave to begin a new round of proceedings based on "renewed unconstitutional conditions" when the court entered the agreed order stating that Plaintiffs could file an amended complaint and that the parties would enter a discovery schedule. Doc. 3580. Once that complaint was filed,

the court could not rightly dismiss the case for lack of jurisdiction. Jurisdiction is not discretionary, and the court must be reversed because whether it was granting relief under Rule 60(b) or Rule 15 (or both), it clearly had jurisdiction to do so.

### III. The District Court's *Sua Sponte* Dismissal Deprived Plaintiffs of Due Process.

By *sua sponte* dismissing the case based on the termination of a judgment fifteen months earlier, the district court deprived Plaintiffs of their class certification and their right to be heard on the merits of the Amended Complaint at a trial which would focus on the system that existed in late 2023. *See United States v. Furando*, 40 F.4th 567, 579 (7th Cir. 2022) (stating this Circuit discourages *sua sponte* dismissals "without first providing the plaintiff notice and a hearing or an opportunity" to be heard). In October of 2023, it was too late for Plaintiffs to challenge the termination that occurred in July 2022, such as by moving for a PLRA hearing. *See e.g. Benjamin v. Jacobson*, 172 F.3d 144, 166 (2nd Cir. 1999) (holding that before termination under the PLRA "plaintiffs should have been given an opportunity to present evidence showing the need for continuation of prospective relief.") *Sua sponte* dismissals are not allowed unless the defect is incurable, which was not the case here. *See Furando* at 579.

Plaintiffs were also deprived of procedural advantages and protections under the Federal Rules—had they known the district court would dismiss the case if it terminated the consent judgment, Plaintiffs could have moved for 60(b) relief from the consent judgment itself or could have challenged the order

terminating the decree under Rule 59(e) within 28 days. Fed. R. Civ. P. 59(e), 60(b). If the district court denied those motions, Plaintiffs could have appealed in 2022 or filed a new complaint. Instead, the parties and the court agreed that the case would return to litigation, as the terms of the Agreement provided for if its terms were not met.

With a trial date in sight for a class which was being harmed, the district court did not have the power to disregard its jurisdiction under settled law to test whether the IDOC was providing constitutional care or abdicating its responsibility to provide that care. There was no "jurisdictional" basis for ending this case without addressing the merits.

## CONCLUSION

For the foregoing reasons, Plaintiff-Appellants ask this Court to reverse the district court's judgment dismissing the case and remand for further proceedings.

Dated April 15, 2024      RESPECTFULLY SUBMITTED,

/s/ Diane O'Connell
One of the attorneys for Plaintiffs

Amanda Antholt
Equip for Equality
20 North Michigan Avenue, Ste 300
Chicago, IL 60602
(312) 341-0022
amanda@equipforequality.org

Alan Mills
Nicole Schult
Uptown People's Law Office
4413 N. Sheridan
Chicago, IL 60640
(773) 769-1410

Harold C. Hirshman
Diane C. O'Connell
DENTONS US LLP
233 S. Wacker Drive, Ste 5900
Chicago, IL 60606
harold.hirshman@dentons.com
diane.oconnell@dentons.com

alan@uplcchicago.org
nicole@uplcchicago

*Attorneys for Plaintiffs/Appellants*

**CERTIFICATE OF COMPLIANCE WITH WORD LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

The undersigned, counsel of record for Plaintiffs-Appellants, certifies compliance with the length and type requirements of the Federal Rules of Appellate Procedure 32 and Circuit Rule 32:

This document conforms to the requirements of Fed. R. App. P. 32(a)(7)(b) and Circuit Rule 32 in that it contains 9,890 words, excluding parts of the document exempted by Fed. R. App. P. 32(f).

This document conforms to the type-style requirements of Fed. R. App. P. 32(a)(5) and (6) in that it was prepared in proportionally spaced typeface, Bookman Old Style font size 12, using Microsoft Word 365.

Dated April 15, 2024                    /s/ Diane O'Connell
                                        One of the Attorneys for Plaintiffs

**CERTIFICATE THAT THE SHORT APPENDIX COMPLIES WITH CIRCUIT RULE 30**

I certify that under Circuit Rule 30(a) the preceding short appendix includes the Order of Dismissal that Plaintiff's appeal from and that it complies with Circuit Rule 30(b)(7) in that the additional materials do not exceed 50 pages.

Dated April 15, 2024                    /s/ Diane O'Connell
                                        One of the Attorneys for Plaintiffs

**REQUIRED SHORT APPENDIX OF PLAINTIFFS-APPELLANTS**

1. Opinion and Order (Dismissal) (Doc. 3745).............................................A1

2. Order Approving Settlement (Doc. 710)....................................................A18

3. Unopposed Order Extending Court Jurisdiction (Doc. 710)....................A19

4. Parties Proposed Plan for Negotiations (Doc. 3580)................................A21

5. Text Order Adopting Proposed Plan for Negotiations (6/2/2022)..............A24

6. Opinion and Order of July 21, 2022 (Doc. 3597)....................................A25

7. Text Order Granting Leave to File Amended Complaint (9/30/2022)........A37

8. Opinion and Order Denying Plaintiffs' Motion to Vacate (Doc. 3755)....... A38

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| PATRICE DANIELS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 07-cv-1298 |
| | ) | |
| ROB JEFFREYS, Director of IDOC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

The Court regrets having to raise the issue of jurisdiction *sua sponte*, but clearly it is the Court's duty to do so.  For the reasons stated below, this case is DISMISSED WITH PREJUDICE with respect to the claims embodied in the Consent Decree and DISMISSED WITHOUT PREJUDICE with respect to the newly added claims embodied in the Fifth Amended Complaint for lack of subject matter jurisdiction.  The Clerk of Court is directed to enter judgment and close this case.

## I.    BACKGROUND

This litigation began in 2007 as a prisoner's right suit that challenged the adequacy of mental health services provided to mentally ill inmates in the physical custody and control of the Illinois Department of Corrections ("IDOC").  *See* ECF No. 1.  The litigation grew into a class action against IDOC officials seeking declaratory and injunctive relief for failing to provide constitutionally adequate mental healthcare.  The class was certified in August 2015, and consisted of:

> Persons now or in the future in the custody of the Illinois Department of Corrections ("IDOC") [who] are identified or should have been identified by the IDOC's mental health professionals as in need of mental health treatment as defined in the current edition of the Diagnostic and Statistical Manual of Mental Disorders of the

American Psychiatric Association. A diagnosis of alcoholism or drug addiction, developmental disorder, or any form of sexual disorder shall not, by itself, render an individual mentally ill for purposes of this class definition.

ECF No. 252 at 7.

In September 2015, Plaintiffs filed a Third Amended Complaint under 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments, the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794. ECF No. 260. Shortly thereafter, the Parties entered into a comprehensive agreement resolving all claims in the Third Amended Complaint, which they referred to as the "Settlement Agreement." (*See Min. Entry* on 12/17/2015). Despite the title and any belief to the contrary, the Seventh Circuit has clarified that because the agreement between the Parties was subject to judicial enforcement it was a consent decree under the PLRA:

> As such, the agreement is more accurately described as a consent decree rather than a private settlement. *See Doe v. Cook County*, 798 F.3d 558, 562–63 (7th Cir. 2015) (explaining that under 18 U.S.C. § 3626, "if an agreement is judicially enforceable—that is, if a violation means anything other than restarting the litigation on the merits—the agreement must be treated as a 'consent decree'"). That distinction is irrelevant for our purposes, so we use the terms "settlement" or "agreement" for consistency with the nomenclature adopted by the parties and the district court.

*Rasho, et al. v. Jefferys, et al.*, 22 F.4th 703, 707, n.2 (7th Cir. 2022). Following the Seventh Circuit's directive, this Court entered an order confirming the Parties' agreement was, by its terms, a consent decree. ECF No. 3597 at 5–7. Neither party has challenged that decision. Accordingly, for purposes of consistency and accuracy in this Order, going forward the settlement agreement approved on May 23, 2016, will be referred to as the "Consent Decree."

Significant to this Order, the Consent Decree included a jurisdictional limitation under the dispute resolution provision, which stated:

2

A 2

> The Court's jurisdiction shall terminate (3) three years after the Approval Date . . . with respect to any provisions of this Settlement Agreement for which there is no outstanding determination that Defendants are not in substantial compliance.  If the Court determines that Defendants are not in substantial compliance with any provisions of this Settlement Agreement at any time during the three (3) year period of the Settlement Agreement, the Court's jurisdiction with respect to such provisions shall continue for the remainder of the three (3) year period or for a period to be ordered by the Court for not more than two (2) years from the date of the Court's findings that Defendants are not in substantial compliance.

ECF No. 708-1 at 29–30 (§ XXIX(e)).  As applied, the Court's jurisdiction terminated over all provisions for which there was no outstanding determination that Defendants were not in substantial compliance on May 23, 2019, and could be extended, by court order, over provisions for which there was a finding of noncompliance from that date for no more than two years.  *Id.*

To oversee compliance, the Parties agreed to a Court appointed monitor, Dr. Pablo Stewart. *Id.* at 25.  In the event there was an issue with Defendants' compliance, the Consent Decree required the Parties to engage in informal dispute resolution; if that was unsuccessful, then Plaintiffs could seek relief from the Court.  Specifically, the Consent Decree provided:

> g) to permit enforcement of the terms of this Settlement Agreement in federal court, the parties agree that, should it become necessary to seek the Court's assistance as to violations of this agreement, <u>any order granting such relief must include a finding that the relief sought is narrowly drawn, extends no further than is necessary to correct the violation of the federal right, and is the least intrusive means for doing so</u>.

*Id.* at 30 (§ XXIX(g)).[1]

In June 2017, Dr. Stewart issued an annual report outlining substantial improvements Defendants had made in some areas, and gross deficiencies in others. ECF No. 1373.  These inadequacies were again emphasized in Dr. Stewart's midyear report dated November 22, 2017.

---

[1] Section XXIX(g) of the Consent Decree mirrored the PLRA's requirements for approval of prospective relief under a consent decree set forth in 18 U.S.C. § 3626(a) ("The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.").

A 3

ECF No. 1646.  On October 10, 2017, Plaintiffs moved the Court to enter a preliminary injunction on the grounds that Defendants were not in substantial compliance with the following areas: (1) Treatment Plans; (2) Evaluations; (3) Medications; (4) Segregation; and (5) Crisis Treatment and Transitions.  ECF No. 1559.  After being fully briefed, evidentiary hearings were held on December 18 and 19, 2017, and February 27 through March 2, 2018.  Following the hearing, the parties submitted findings of fact and conclusions of law, and on May 22, 2018, the Court held a hearing to discuss the forms of preliminary relief.  On May 25, 2018, the Court granted Plaintiffs' request for a preliminary injunction (the "Preliminary Injunction Order").  ECF No. 2070.  The Preliminary Injunction Order contained findings traditionally required for the issuance of a preliminary injunction and made additional findings that the PLRA's requirements were satisfied. *Id.*  The Preliminary Injunction Order further stated that it would expire ninety days after its entry, *see* § 3626(a)(2), unless the Court entered a final order on prospective relief before.  *Id.*

On June 6, 2018, Plaintiffs filed a motion asking the Court to hear the merits of its claims and convert the preliminary injunction into a permanent injunction.  ECF No. 2112.  Additional discovery was conducted, and updated briefs were submitted.  The Parties agreed that all the evidence presented at the preliminary injunction hearing would be incorporated into the trial record, and between August 27, 2018 and September 7, 2018, additional evidence and arguments were heard in support of each Parties' respective positions on Plaintiffs' motion for a permanent injunction.  The Parties were also given an opportunity to submit post-hearing briefs and provide written submissions addressing the status of Defendants' compliance in the five areas at issue.  On October 30, 2018, the Court issued a detailed order granting Plaintiffs' request for a permanent injunction (the "October 30, 2018 Order").  ECF No. 2460.  The order set forth the substantive considerations informing the Court's finding that Defendants had been "deliberately indifferent to

A 4

the medical needs of the Plaintiffs in medication management, mental health treatment in segregation, mental health treatment in crisis watch, mental health evaluations, and mental health treatment plans within the meaning of the Eighth Amendment." *Id.*

The October 30, 2018 Order deferred entering specific injunctive relief and allowed Defendants an opportunity to submit a proposed remedy order addressing their constitutional deficiencies. After the issue of proposed injunctive relief was briefed, the Court entered an "addendum order" on December 20, 2018 (the "December 2018 Order"), which summarized and incorporated the Court's earlier findings in the October 30, 2018 Order and made additional findings that the granted relief met the PLRA's requirement. *See* ECF No. 2516. Following the December 2018 Order, Defendants filed a motion for reconsideration and a Notice of Appeal. *See* ECF Nos. 2540, 2544. Defendants' motion for reconsideration was denied, and Defendants appealed that as well. ECF Nos. 2579, 2583.

On April 15, 2019, the Seventh Circuit remanded the appeal for the limited purpose of permitting this Court to modify the injunction order to conform with Federal Rule of Civil Procedure 65. *Rasho, et al. v. Jefferys, et al.*, No. 19-1145 (7th Cir. Apr. 15, 2019) (ECF No. 2628). The remand order expressly stated that the Seventh Circuit was retaining jurisdiction over the matter. *Id.* On April 22, 2019, the Court entered a final permanent injunction order (the "Permanent Injunction Order"), where the Court memorialized its prior injunction and post-judgment orders into a single order under Rule 65(d). ECF No. 2633. On May 21, 2019, Defendants filed a Notice of Appeal challenging the final Permanent Injunction Order. ECF No. 2656. The Seventh Circuit consolidated the appeals, and the case remained pending on appeal for nearly two and a half years until the Seventh Circuit's Mandate was issued on May 3, 2022. ECF No. 3560.

A 5

While that appeal was pending, the Parties filed a motion for leave to file an amended settlement agreement, which the Court approved on June 9, 2020 (hereinafter, "Amended Consent Decree"). *See* ECF No. 3051. The Amended Consent Decree contained several changes, one of which was a modification to the jurisdictional provisions, which stated:

> The Court's jurisdiction shall terminate April 23, 2021 with respect to any provisions of this Settlement Agreement for which the court has found that Defendants are in substantial compliance. The Court's jurisdiction over the Settlement Agreement for which no such finding has been made may be extended by the court for periods of time not more than two years from any finding of violation with respect to any provisions of this Settlement Agreement for which the Court has determined that Defendants are not in substantial compliance. As to relief governed by the Court's permanent injunction order (Dkt. 2633), the relief shall terminate as provided in that order, unless otherwise altered by court order. As to any other court ordered relief pursuant to sections XXIX(g)-(i), the court's jurisdiction shall be governed by the termination provisions of the Prison Litigation Reform Act, 18 U.S. Code § 3626(b).

ECF No. 3051 at 29–30 (§ XXIX(e)). While the Amended Consent Decree specifically referenced the PLRA, the required findings under 18 U.S.C. § 3626(a) needed to amend a consent decree were not made. *See* 18 U.S.C. § 3626(c)(1). Furthermore, the issue of what, if any, jurisdiction this Court had to enter an Amended Consent Decree was not addressed. Specifically, the parties did not address whether this Court retained jurisdiction over the case following the issuance of permanent injunction that covered all areas of substantial noncompliance and violations of Plaintiff's Federal rights prior to the Court's jurisdiction terminating under the terms of the original Consent Decree, and whether Defendants' appeal challenging the Permanent Injunction Order deprived this Court of jurisdiction.

The Parties subsequently filed two unopposed motion to extend jurisdiction under the Amended Consent Decree, which ultimately extended the Court's jurisdiction to July 22, 2022. ECF No. 3508. In the orders extending jurisdiction, the parties identified areas which they claimed were still subject to the Court's continued enforcement based on no finding of substantial

6

A 6

compliance; these areas overlapped with areas in the Permanent Injunction Order pending on appeal before the Seventh Circuit. *See* ECF Nos. 3266, 3508. Again, the above issues pertaining to this Court's jurisdiction were not raised, and no PLRA findings under § 3626(a) were made. *See* ECF Nos. 3266, 3508.

On May 3, 2022, the Seventh Circuit issued its mandate vacating the Permanent Injunction Order and reversing this Court's findings of Eighth Amendment violations. *Rasho*, 22 F.4th 703 (ECF No. 3560). On the merits, the Seventh Circuit found that because the Defendants were not violating Plaintiffs' Eighth Amendment rights in respect to the areas for which there had been a finding of substantial noncompliance and constitutional violations—staffing, crisis care, segregation, medication, and evaluation and treatment plans—judicial enforcement of prospective relief was prohibited. *Id.* at 710–12. The Seventh Circuit also pointed out that because this Court retained jurisdiction to oversee compliance of the Parties' agreement, it was, by its terms, a consent decree under the PLRA. *Id.* at 707, n.2. As a result, the Seventh Circuit issued a Final Judgment Order, which reversed this Court's order, vacated the Permanent Injunction Order, and *did not remand the case back to the Court for further proceedings*. ECF No. 3560-3 (emphasis added).

Following the issuance of the Seventh Circuit's Mandate, the Court issued an order denying Plaintiffs' third motion to extend jurisdiction over the Amended Consent Decree. ECF No. 3597. Consistent with the Seventh Circuit's ruling, the Court confirmed that the Parties' settlement agreement was a consent decree. *Id.* at 5–7. The Court also noted that the Seventh Circuit did not invalidate the Consent Decree, and that no motion to terminate or otherwise nullify the Consent Decree had been filed. *Id.* at 12. The Court next reasoned that as a Consent Decree, any additional extension of jurisdiction required specific PLRA findings, which had not been made. *Id.* at 7–9 (noting that the monitor reports did not reflect a constitutional violation, and further, that the

Seventh Circuit had already ruled that the substantive requirements of the Consent Decree transgress the limitations on prospective relief under the PLRA).  Finally, the Court found that the Consent Decree's terms did not require the Court to extend its jurisdiction—particularly following the Seventh Circuit's findings that there were no constitutional violations and absent a new showing of ongoing violations under the PLRA—and therefore, the Court's jurisdiction was set to expire by its terms.  *Id.* at 9.

Since that ruling, Plaintiffs have proceeded to file amended complaints containing the same claims from the Third Amended Complaint, while also adding new claims for violations of the Equal Protection Clause and Due Process Clause under the Fourteenth Amendment and adding Illinois Governor J.B. Pritzker as a Defendant.  *See* ECF Nos. 3632, 3703.  Defendants have moved to dismiss these pleadings but have not raised the issue of subject matter jurisdiction, or otherwise sought to officially close the case.  *See* ECF No. 3717.  As a result, after carefully reexamining the record, this Court *sua sponte* entered a jurisdictional order staying the case and directed the parties to submit briefs addressing the Court's jurisdictional concerns.  *See* ECF No. 3739.  This matter has been fully briefed, and the Parties' arguments were heard on October 12, 2023.   At the conclusion of that hearing, the Court ruled that it no longer had subject matter jurisdiction over the case, and that its ruling would be final upon issuance of this written order.

## II.    LEGAL FRAMEWORK

Federal Rule of Civil Procedure 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  Fed. R. Civ. P. 12(h)(3).  District courts have a continuous duty investigate the existence of jurisdiction *sua sponte* when the parties fail to raise it.  *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 593 (2004); *see also Whitney v. Riccordino Realty, Inc.*, 106 F.3d 404 (7th Cir. 1997) ("[A] district

court 'has a duty to resolve apparent jurisdictional questions even where the parties do not raise them.'") (citing *Yasuda Fire & Marine Ins. v. Cont'l Gas Co.*, 37 F.3d 345 (7th Cir. 1994); *Grabianski v. Bally Total Fitness Holding Corp.*, No. 12 C 284, 2013 WL 676334, at *2 (N.D. Ill. Feb. 21, 2013) ("Of course, were I to conclude, independently of [the parties'] arguments, that I lacked subject matter jurisdiction over this case, I would be required to dismiss it *sua sponte*."). A district court's subject matter jurisdiction "can never be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citing *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

## III.   DISCUSSION

A "final order" is a common legal term meaning "[a]n order that is dispositive of the entire case." *Final Order*, Black's Law Dictionary 1123 (7th ed. 1999). As discussed above, and in previous orders issued by this Court and the Seventh Circuit, the Parties' agreement resolving all claims in the Third Amended Complaint was by its terms a consent decree, rather than a private settlement agreement. Consent decrees operate as a final judgment, fully resolving the underlying matter. *See Carver v. Condie*, 169 F.3d 469, 472 (7th Cir. 1999) (providing that "the date on which the consent decree was entered . . . is the date when all claims against all parties were resolved"). The Seventh Circuit has held that consent decrees under the PLRA are also considered final decisions of the district court. *Jones-El v. Berge*, 374 F.3d 541, 543 (7th Cir. 2004) ("The consent decree itself was a final decision for purposes of § 1291, even though, as a complex equitable decree, it lacks the trappings of a readily-identifiable-as-final money judgment."). As a result, any enforcement orders issued by a district court would be considered postjudgment orders and are treated as freestanding lawsuits. *Id.* at 541.

Under the terms of the Consent Decree entered on May 23, 2016, the Court's jurisdiction terminated three years after its approval date on May 23, 2019, for any provisions for which there

9

A 9

was no outstanding determination that the Defendants were not in substantial compliance.   ECF

No. 708-1, at 29–30 (§ XXIX(e)).   During those three years, Plaintiffs filed a motion asking the

Court to enter a preliminary injunction to enforce five areas of the Consent Decree that challenged

Defendants' substantial compliance under the terms of the Consent Decree and the U.S.

Constitution.   *See* ECF No. 1559.   These five areas included: (1) Mental Health Evaluations;

(2) Treatment Planning; (3) Medication Management; (4) Mental Health Treatment in Restricted

Housing/Segregation; and (5) Mental Health Treatment on Crisis Watch.   *Id.*   Plaintiffs'

enforcement proceedings resulted in the Court entering a preliminary injunction on May 25, 2018,

which Plaintiffs sought to convert to a permanent injunction less than a month later.   *See* ECF Nos.

2070, 2112.   The discovery, briefing, and evidence presented to the Court on those issues was

extensive, as set forth in the record, and the merits of Plaintiffs' claims were fully litigated before

the Court entered the Permanent Injunction Order.

The issuance of a permanent injunction involves a bench trial on the merits, followed by

findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(1), and the

entry of a final order granting or denying the requested relief.   *See Permanent Injunction*, Black's

Law Dictionary 788 (defining "permanent injunction" as "[a]n injunction after a final hearing on

the merits").   In contrast, preliminary injunctions are interlocutory orders entered when the plaintiff

faces a great danger of irreparable injury before a permanent injunction can be issued on the merits.

*See Preliminary Injunction*, Black's Law Dictionary 1123.

Here, following a bench trial on the merits, the Court entered the Permanent Injunction

Order, which incorporated the findings of noncompliance the Court made in issuing the

preliminary injunction, and resolved the five areas of noncompliance and ongoing violation of

Plaintiffs' constitutional rights on a final basis.   *See* ECF No. 2633.   The Court also made the

A 10

appropriate findings for relief under the PLRA. *Id.* A month later, on May 23, 2019, the Court's jurisdiction terminated with respect to all other provisions of the Consent Decree because there was "no outstanding determination that Defendants [were] not in substantial compliance." *See* ECF No. 708-1 at 29–30 (§ XXIX(e)). Furthermore, the Court did not enter an order extending its jurisdiction beyond the May 23, 2019 date, as required under § XXIX(e) of the Consent Decree. *Id.* (providing that the Court's jurisdiction may be extended "for a period *to be ordered by the Court* for not more than two (2) years from the date of the Court's findings that Defendants are not in substantial compliance") (emphasis added).

While the Permanent Injunction Order was pending on appeal, the parties entered into the Amended Consent Decree on June 9, 2020. *See* ECF No. 3051. The Amended Consent Decree expired by its terms on April 23, 2021, over provisions for which the Court found the Defendants were in substantial compliance, and could be extended for two years over provisions for which no such findings had been made. *Id.* The Amended Consent Decree, however, was problematic for two reasons.

First, it appears that the Court's jurisdiction had already terminated under the terms of the Consent Decree over a year earlier, on May 23, 2019. *See Hallett v. Morgan*, 296 F.3d 732 (9th Cir. 2002) (9th Cir. 2002) (finding the district court properly limited the scope of a consent decree to its terms)). Furthermore, even if this Court's jurisdiction had extended over the five areas that were the subject of the Permanent Injunction Order, those areas were on appeal, divesting this Court of jurisdiction. *See Kusay v. United States*, 62 F.3d 192, 193 (7th Cir. 1995) (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, (1982)) ("[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously. The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the

11

A 11

court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.").

In addition to these jurisdictional issues, the PLRA requirements under § 3626(a) to amend a Consent Decree were not made. *See* ECF No. 3057; *see also* 18 U.S.C. § 3626(b)(2) (providing that in a civil action, with respect to prison conditions, a defendant is entitled to the "immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right"). Thus, because the Court's jurisdiction under the Consent Decree expired on May 23, 2019, no order extending the Consent Decree was issued, and the Amended Consent Decree was entered after the Court's jurisdiction had lapsed (and without proper PLRA findings), the Court's jurisdiction terminated at this time following the Seventh Circuit's reversal of its noncompliance findings.

Furthermore, assuming *arguendo* that the Court had jurisdiction to enter the Amended Consent Decree, and that it complied with the PLRA, any extension of jurisdiction beyond the Amended Consent Decree's April 23, 2021 expiration date was invalid because each extension of jurisdiction required findings of an ongoing violation of Federal rights under the PLRA. Section 3626(b) of the PLRA provides that a party may modify relief under the PLRA, which includes a consent decree, "to the extent that modification or termination would otherwise be legally permissible." 18 U.S.C. § 3626(b)(4). The PLRA's prospective relief provisions require that the relief must extend no further than necessary to correct a violation of a Federal right. 18 U.S.C. § 3626(a). Importantly, these provisions apply to a motion to extend jurisdiction over a consent

A 12

decree.  *Hallett v. Morgan*, 296 F.3d at 743 (holding that "the district court properly applied the PLRA's prospective-relief provisions apply to Plaintiffs' a motion to extend jurisdiction").

Here, each extension relied solely on alleged noncompliance lifted from the monitor reports and did not include the relevant PLRA findings.  Additionally, shortly after the Court granted extensions of its jurisdiction over the Amended Consent Decree, the Seventh Circuit reversed the Court's findings of noncompliance based on constitutional violations of the Eighth Amendment. The Seventh Circuit's ruling, therefore, reversed the Court's determinations of noncompliance and violations of Federal rights, and accordingly, reversed the only areas of jurisdiction that survived past the expiration of the Consent Decree.  At bottom, this left the Parties with no live case or controversy because no outstanding violation of a Federal right remained pending.  *See United States v. Texas*, 143 S. Ct. 1964, 1969 (2023) (noting that to establish that a case or controversy exists, a plaintiff must show an injury that was in fact caused by defendant and redressable by a court order).  As a result, Plaintiffs no longer had standing to pursue these claims in federal court. *See* U.S. Const., art. III, § 2, cl. 1; *see also Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012) (holding a plaintiff has standing to bring a claim in federal court only if he can demonstrate that he has suffered an injury in fact caused by defendants, and the remedy he seeks is likely to be address the injury).

Ultimately, on July 21, 2022, the Court recognized the lack of an ongoing violation and declined to extend its jurisdiction any further over the Consent Decree.  *See* ECF No. 3597 at 7–9 (noting that Plaintiff submitted only monitor reports alleging noncompliance and no party submitted PLRA findings).  At this time, the Court's subject matter jurisdiction unquestionably ended.  *See Corey H. v. Chicago Bd. of Educ.*, 528 F. App'x 666, 668–69 (7th Cir. 2013) (holding that because the consent decree expired, there was no controversy, and the case was moot); *see*

*also Ass'n for Disabled Am., Inc. v. Publix Super Mkt., Inc.*, No. 98-CV-00917, 2023 WL 3741102, at *4 (S.D. Fla. May 3, 2023) (providing that following expiration of consent decree, the case should be dismissed with prejudice).

Despite it being clear that the Court no longer has subject matter jurisdiction, Plaintiff argues the Court has jurisdiction because the appeal was taken on an interlocutory basis, the Consent Decree was potentially invalid when enforced, the parties agreed upon a return to the active docket, and without jurisdiction, the Plaintiffs are unable to fully adjudicate their claims. Each of these arguments is unpersuasive.

***First***, Plaintiffs argue that the Consent Decree cannot be understood as a final judgment because their appeal of the Permanent Injunction Order was taken on an interlocutory basis. *See* ECF No. 3741, at 5. As discussed above, however, a consent decree acts as a final judgment, despite bearing attributes of a contract. *Loc. No. 93, Int'l Ass'n of Firefighters, AFL-CIO C.L.C. v. City of Cleveland*, 478 U.S. 501, 519 (1986) ("The question is not whether we can label a consent decree as a 'contract' or a 'judgment,' for we can do both."); *Carver*, 169 F.3d at 472 (7th Cir. 1999). Further, a permanent injunction involves entry of a final order, and relief taken after consent decrees is generally described as postjudgment. *See Rufo*, 502 U.S. at 378; *Carver*, 169 F.3d at 472.

Additionally, the Seventh Circuit did not describe the appeal as interlocutory in their mandate, or otherwise treat the appeal as interlocutory. *See* ECF Nos. 3560-1, 3650-3. Instead, the Seventh Circuit noted that they "consolidated the appeals and focused on the April 22, 2019 *final order*," and further, noted that this Court "issued a slightly modified order in response to IDOC's *postjudgment* motion and a *final order*" under Fed. R. Civ. P. 65(d). *Rasho*, 22 F.4th at

708 n.4 (emphasis added).   Furthermore, the Seventh Circuit has previously addressed this

argument, stating:

> It is true that the consent decree, though in a sense interlocutory because it
> contemplated continued proceedings in the district court to effect compliance with
> the regulatory terms of the decree, was a final decision for purposes of section 1291.
> It wound up the suit, and the fact that it was a complex equitable decree rather than
> a simple money judgment, and that it was entered by consent, did not take it out of
> the class of final judgments.

*Shakman v. Clerk of Cook Cnty.*, 994 F.3d 832, 839–40 (7th Cir. 2021).  Therefore, this Court had

only postjudgment jurisdiction to enforce the Consent Decree for as long as it remained in effect.

**Second**, Plaintiffs' arguments that the Court retained jurisdiction in the event that the

Consent Decree was unenforceable is similarly unpersuasive.  ECF No. 3741 at 11.  The Seventh

Circuit did not invalidate the Consent Decree itself in its reversal order, and courts have held that

an order vacating prospective relief (*e.g.*, the injunctive relief and compliance), does not vacate or

otherwise terminate the underlying consent decree.  *See Jones-El v. Berge*, 374 F.3d at 545; *see

also Gilmore v. People of the State of California*, 220 F.3d 987, 1000–02 (9th Cir. 2000) ("Reading

the statute as such, the [PLRA] termination provisions do not require the termination of consent

decrees or any other final judgments of Article III courts.  The provisions apply exclusively to

prospective relief, limiting the scope of federal jurisdiction to enforce the prospective aspect of

final judgments in prison conditions cases.").

**Third**, even if the Consent Decree was unenforceable as a matter of law, Plaintiffs could

have sought postjudgment relief to modify or terminate the Consent Decree prior to the Court

expressly declining to extend its jurisdiction over the Consent Decree in its July 21, 2022 order.

*See, e.g.*, *Ass'n for Disabled Am., Inc.*, 2023 WL 3741102, at *4 ("Federal Rule of Civil Procedure

60 permits a litigant to petition the Court to modify or terminate a consent decree."); *James v.

Lash*, 965 F. Supp. 1190, 1196–97 (N.D. Ind. 1997) (same).  Plaintiffs argue that they did not do

so because they had entered into a proposed negotiation plan with the Defendants at that time. *See* ECF No. 3580. Yet, Plaintiffs simultaneously sought to enforce the provisions of the Consent Decree through an extension of this Court's jurisdiction. Additionally, the Seventh Circuit did not claim that the underlying Consent Decree was invalid, and the Court provided for prospective relief entered in the form of the injunctions that complied with the restrictions under the PLRA.

**Fourth**, Plaintiffs contend that the Court was free to continue to exercise jurisdiction and return the case to the active docket because the parties agreed to terminate the Consent Decree a day after the Court issued its order declining to extend its jurisdiction. *See* ECF No. 3741, at 8–10. Yet, the Consent Decree had expired before the parties agreed to its termination. *See* ECF No. 3597. Any right to return the matter to the trial docket survived only as long as the Consent Decree did. *See Ass'n for Disabled Am., Inc.*, 2023 WL 3741102, at *4 ("The Court has no jurisdiction to extend (or revive) a consent decree that has already expired."). Additionally, a court's subject matter jurisdiction cannot be forfeited or waived upon agreement of the parties. *See Arbaugh*, 546 U.S. at 514; *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) (providing that the parties cannot confer subject matter jurisdiction upon a federal court).

**Finally**, Plaintiffs argue that the dismissal for lack of jurisdiction deprives them of their opportunity to litigate their claims. ECF No. 3741 at 11–13. Consent decrees, however, expire by their own terms and parties who enter into consent decrees waive the right to litigate certain issues. *United States v. Armour & Co.*, 402 U.S. 673, 682 (1971). ("Consent decrees are entered into by parties to a case after careful negotiation has produced agreement on their precise terms. The parties waive their right to litigate the issues involved in the case and thus save themselves the time, expense, and inevitable risk of litigation."). Further, the Court's findings do not limit the

Plaintiffs' ability to seek relief for the newly added claims in the Fifth Amended Complaint. *See Magnus Elec. v. La Republica Argentina*, 830 F.2d 1396, 1400 (7th Cir. 1987) ("A judgment dismissing a suit for lack of jurisdiction does not preclude a party from litigating the same cause of action in a court of competent jurisdiction . . . however, it does preclude relitigation of the issue of whether the first tribunal had jurisdiction.") (internal citations omitted). Thus, Plaintiffs' claims for new and ongoing violations may be the subject of a new suit, regardless of this Court's loss of subject matter jurisdiction.

## CONCLUSION

The Court assumes ultimate responsibility for the erroneous developments in this case and apologizes for those errors. At the time, all parties, counsel, and the Court were making a good faith effort to resolve serious issues concerning the treatment of severely mentally ill inmates within IDOC. However, for the reasons stated above, the Court must ORDER that this action be DISMISSED WITH PREJUDICE with respect to the claims embodied in the Consent Decree and DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction with respect to the newly added claims embodied in the Fifth Amended Complaint, with each party to bear its own costs. The Clerk is directed to close the case.

ENTERED this 23rd day of October, 2023.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge

A 17

E-FILED
Monday, 23 May, 2016  11:58:21 AM
Clerk, U.S. District Court, ILCD

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| ASHOOR RASHO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:07-CV-1298-MMM-JEH |
| | ) | |
| v. | ) | Judge Michael M. Mihm |
| | ) | |
| DIRECTOR JOHN R. BALDWIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

<u>**ORDER**</u>

The Court, having set a hearing for May 13, 2016 and conducted a lengthy hearing as to whether the proposed settlement is fair, reasonable, and adequate, makes the following findings.  The Settlement Agreement, filed with this Court on May 10, 2016 as amended by the parties, is a fair, reasonable, and adequate resolution of the claims. In the interests of comity the Court must respect the need to provide the Defendants with the time provided in the settlement to fulfill the obligations undertaken.  Concomitantly in the interest of fairness to the class, the Court must continue to provide a forum to address issues of compliance and performance of the terms of the Settlement.  Without the Court's participation, the settlement would not be fair and reasonable.  Consequently this matter will remain on the Court's docket until the terms of the Settlement Agreement are met.  At that time, this matter will be dismissed with prejudice.

Entered this ____ day of May, 2016
       `23rd`

/s/ Michael M. Mihm
_____
MICHAEL M. MIHM
UNITED STATES DISTRICT JUDGE

A 18

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| ASHOOR RASHO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:07-CV-1298-MMM-JEH |
| | ) | |
| v. | ) | Judge Michael M. Mihm |
| | ) | |
| ROB JEFFREYS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**UNOPPOSED ORDER EXTENDING
COURT JURISDICTION OVER SETTLEMENT AGREEMENT**

On January 13, 2022, Plaintiffs filed a motion asking the Court to extend its jurisdiction to enforce certain terms of the parties' Corrected Second Amended Settlement Agreement or schedule a hearing to determine Defendants' substantial compliance with those terms. ECF 3484; *see also* ECF 3266, 3263, and ECF 3263-2.

Defendants do not oppose a three-month extension of the Court's jurisdiction pursuant to § XXIX(e) of the Settlement Agreement, up to and including July 22, 2022, over the settlement terms listed in the attached Exhibit 1, without prejudice to their right at any time to seek to terminate the Court's jurisdiction or seek other relief.

Plaintiffs are amenable to a three-month extension with the understanding that their requested hearing on Defendants' compliance will be rescheduled and held prior to July 22, 2022, without need for further motion.

Having been fully advised, the Court ORDERS as follows:

1.     Pursuant to § XXIX(e) of the Settlement Agreement, the Court will continue to maintain its jurisdiction over the sections of the Settlement Agreement listed in Exhibit 1 until July 22, 2022, unless otherwise ordered by the Court.

A 19

2.     The Court finds the Defendants are in substantial compliance with Section XII(c)(iv) of the Settlement Agreement and terminates its jurisdiction over that subsection.

3.     A hearing on Plaintiffs' motion to extend, ECF No. 3484, will be scheduled before July 22, 2022 at a time convenient to the parties and the Court.

4.     The Court recognizes and acknowledges that Plaintiffs have reserved any rights they may have to seek further extension of the Court's jurisdiction, and Defendants have reserved any rights they may have to move to terminate the Court's jurisdiction or seek other relief.

Entered: February 11, 2022

   /s/ Michael M. Mihm   

Michael M. Mihm

United States District Judge

A 20

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS,
PEORIA DIVISION**

| | | |
|---|---|---|
| ASHOOR RASHO, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | No. 1:07-CV-1298-MMM-JEH |
| | ) | |
| v. | ) | Judge Michael M. Mihm |
| | ) | |
| ROB JEFFREYS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>PARTIES' PROPOSED PLAN FOR NEGOTIATIONS</u>

The parties have agreed to enter a period of negotiations lasting until July 22, 2022 (the "Negotiation Period") in order to chart an agreed path forward in the above-captioned action and resolve ongoing disputes regarding Plaintiffs' allegations that Defendants are not in substantial compliance with the Corrected Second Amended Settlement Agreement, ECF 3047-2 (the "Settlement Agreement") and/or federal law. During the Negotiation Period, the parties will convene a series of meetings on the different topics at issue, with the goal of resolving these issues through a new consent decree and/or private settlement agreement consistent with the requirements of the Prison Litigation Reform Act, 18 U.S.C. § 3626. The parties agree to discuss which aspects of the Settlement Agreement would continue past July 22, 2022, as part of a new consent decree and/or private settlement agreement.

The first meeting has been scheduled for June 16, 2022, with subsequent meetings occurring approximately weekly thereafter. The parties agree that these meetings will not initially be mediated by a third party. However, if the parties believe that third-party mediation would be of assistance in future meetings, the parties will consent to mediation between either an agreed-upon neutral or Magistrate Judge Hawley. The parties have also agreed that the Settlement

A 21

Agreement monitor, Dr. Pablo Stewart, may participate in certain negotiation sessions as needed and agreed by the parties to provide subject matter expertise.

During the Negotiation Period, all aspects of the current Settlement Agreement, including the Court's jurisdiction and the ability of the Monitor and Plaintiffs' counsel to access IDOC facilities, records and data as necessary to monitor compliance with the Settlement Agreement, will continue as currently scheduled. Plaintiffs agree not to move for any ruling enforcing the Settlement Agreement or for contempt during the Negotiation Period, and Defendants agree not to seek to terminate the Settlement Agreement prior to July 22, 2022.

The parties propose that the stay on the Court's issuance of the Order and Opinion on Plaintiff's pending Motion For Preliminary Injunction, ECF 3417, relating to the RTUs at Dixon and Pontiac, be lifted and the Court's written opinion be issued at the Court's convenience. The parties further propose that the Court withhold its ruling on Plaintiffs' pending Motion To Extend, ECF 3484, during the Negotiation Period.

No later than July 22, 2022, the parties will inform the Court of whether the parties (a) have reached agreement as to a new consent decree and/or private settlement agreement, (b) agreed to extend the Negotiation Period to allow further negotiation, or (c) are unable to reach an agreement to resolve their disputes. If the parties are unable to reach an agreement to resolve their disputes, the parties agree that this matter will be returned to the active trial docket, and propose, subject to the approval of the Court, that Plaintiffs would file an amended complaint by September 1, 2022, and that the parties would propose by September 15, 2022, a scheduling order to include discovery (including written discovery, expert discovery, and depositions), dispositive motions and, if necessary, trial.

A 22

RESPECTFULLY SUBMITTED,

_/s/ _Samantha R Reed_____

June 1, 2022

*Counsel for Plaintiffs*

| | |
|---|---|
| Harold C. Hirshman | Amanda Antholt |
| Samantha R. Reed | Equip for Equality |
| DENTONS US LLP | 200 N. Michigan Ave, #300 |
| 233 S. Wacker Drive, Suite 5900 | Chicago, IL 60602 |
| Chicago, IL 60606 | (312) 341-0022 (phone) |
| Telephone: (312) 876-8000 | (312) 541-7544 (fax) |
| harold.hirshman@dentons.com | amanda@equipforequality.org |
| samantha@equipforequality.org | |

Alan Mills
Nicole Schult
Uptown People's Law Center
4413 N Sheridan
Chicago, IL 60640
(773) 769-1410 (phone)
alan@uplcchicago.org
nicole@uplcchicago.org

June 1, 2022

Defendants ROB JEFFREYS and MELVIN HINTON

By: KWAME RAOUL,
      Illinois Attorney General

Laura K. Bautista
Office of the Attorney General
500 South Second Street
Springfield, IL 62701
Tel.: (217) 782-9075
*laura.bautista@ilag.gov*

Isaac Freilich Jones
Office of the Illinois Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
Tel.: 312-814-3000
*isaac.freilichjones@ilag.gov*

*/s/ R. Douglas Rees*, #6201825
Deputy Attorney General, Civil Litigation
Office of the Illinois Attorney General
100 West Randolph Street, 12th Floor
Chicago, Illinois 60601
Tel.: 312-814-3000
*richard.rees@ilag.gov*

A 23

| 06/02/2022 | | TEXT ONLY ORDER ADOPTING 3580 . The parties filed a proposed Plan for Negotiations that the parties discussed at the June 2, 2022 status conference. The Court adopts and approves the Plan, and it is further ORDERED that no later than July 22, 2022 the parties shall inform the Court about the outcome of their negotiations as further outlined on page 2 of the Proposed Negotiation. Entered by Judge Michael M. Mihm on 6/2/2022. (VH) (Entered: 06/02/2022) |

E-FILED
Thursday, 21 July, 2022  11:02:14 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| ASHOOR RASHO, *et al.*, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **No. 07-1298** |
| | ) | |
| ROGER E. WALKER, *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>OPINION AND ORDER</u>

This case is a class action brought under 42 U.S.C § 1983 alleging violations of the Eighth

Amendment of the United States Constitution, the Americans with Disabilities Act, 42 U.S.C. §

12101, *et seq*., and the Rehabilitation Act, 29 U.S.C. § 794. Plaintiffs challenge the adequacy of

the delivery of mental health services to mentally ill prisoners in the physical custody and control

of the Illinois Department of Corrections ("IDOC" or "Department"). The parties had entered into

a Settlement Agreement in 2015 that purported to allow the Court to retain jurisdiction to enforce

the Agreement in limited circumstances.

Plaintiffs have now filed a Motion to Extend Jurisdiction over that Settlement Agreement,

arguing that the Court should extend jurisdiction pursuant to the terms of the Agreement because

Defendants are not in substantial compliance with the Agreement. ECF No. 3484.

Defendants argue that the Agreement is actually a consent decree under the Prison

Litigation Reform Act, 18 U.S.C. § 3626 ("PLRA"). Accordingly, Defendants argue that before

the Court can enter the requested relief, it must first make a finding that the terms of the settlement

are narrowly drawn and extend no further than necessary to correct the violation of a federal right

and are "the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626 (a)(1)(A).

This case has turned into a legal mess, caused in part by this Court's lack of due diligence to ensure that what the parties agreed to in the Settlement Agreement of 2015 was indeed a private settlement agreement, and not a consent decree. At that point in time, the Court believes everyone was acting in good faith and committed to the goal of resolving the litigation in a way which would be most beneficial to the critical needs of the seriously mentally inmates of the IDOC. At the time of the Settlement Agreement, the Plaintiffs had been pushing for a consent decree, but defense counsel made it abundantly and painfully clear that the defense could not agree to a consent decree because of the position of the political leaders who would have to agree to same. So, the Settlement Agreement was negotiated by the parties and approved by the Court. The details surrounding the negotiation and the legal history following the approval of the 2015 Settlement Agreement are described in detail below. The Court also explains why the terms of the Agreement compel the Court to find that it is a consent decree, and Plaintiffs' Motion to Extend Jurisdiction must therefore be denied.

## BACKGROUND

This case has been ongoing since 2007 but facts most relevant to the present motion began on December 17, 2015 when the parties announced they entered into the above-cited Settlement Agreement. *See* Text Order dated 12/172015; ECF No. 711-1. This agreement was the result of years of negotiations. Notice of the Settlement Agreement was given to the class and the Court held a fairness hearing on May 13, 2016. Minute Entry dated 5/13/2016. The Court found the Settlement Agreement to be fair, reasonable, and adequate over the objections filed by class members. *Id.* The Settlement Agreement was subsequently replaced by a Corrected Second

2

A 26

Amended Settlement Agreement. ECF No. 3051. No party asked the Court to enter, and the Court did not enter any PLRA Findings that the terms of the Settlement Agreement are narrowly drawn and the least intrusive means necessary to correct an ongoing violation of federal rights. *See* ECF Nos. 696, 711-1, 3051. At the time, the parties viewed the agreement as a private settlement agreement that did not qualify as a consent decree. ECF No. 2729 at 12; 35–36; 84.

On October 10, 2017, Plaintiffs filed a Motion to Enforce the Settlement Agreement, alleging the Defendants were not in substantial compliance with several sections of the Settlement Agreement. ECF No. 1559. After lengthy hearings, the Court entered a permanent injunction on December 20, 2018 (ECF No. 2516) which it later amended on April 23, 2019. ECF 2633. The Court found the Department was not in substantial compliance with certain sections of the Settlement Agreement, which amounted to deliberate indifference in violation of the Eighth Amendment. ECF 2633. The Court entered an injunction outlining certain staffing and other measurable standards that Defendants needed to meet. *See* ECF No. 2633. Defendants filed an appeal, and on January 12, 2022, the Seventh Circuit reversed and vacated the permanent injunction, holding that Defendants had made reasonable efforts to mitigate the harm and thus, could not be found deliberately indifferent to the risk of harm associated with inadequate mental health care. *Rasho v. Jeffreys*, 22 F.4th 703, 706 (7th Cir. 2022) *reh'g en banc denied* 2022 U.S. App. LEXIS 11169 (7th Cir. Apr. 25, 2022). The Seventh Circuit also observed that the Settlement Agreement is most accurately described as "a consent decree" for the purposes of the PLRA. *Id.* at 707, n.2.[1] Until that moment, defense counsel had always taken the position before this Court that the Agreement was a private settlement agreement.

---

[1] The Seventh Circuit stated that the "distinction is irrelevant for our purposes," confirming that the observation is dicta. *Rasho*, 22 F. 4th at 707, n.2. Dicta is not binding on a subsequent court. *Ricci v. Salzman*, 976 F.3d 768, 773 (7th Cir. 2020) (citing *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998)). However, the legal standard for determining whether an agreement is a consent decree is found in *Doe v. Cook County*, 798 F.3d 558, 562–63 (7th

A 27

On January 13, 2022, Plaintiffs filed their motion to extend the Court's jurisdiction over the remaining provisions[2] of the Settlement Agreement based on the monitor's findings that the Department had not yet achieved substantial compliance with those provisions. ECF No. 3484 (the "Motion"). In support of their Motion, Plaintiffs rely on § XXIX(e) of the Settlement Agreement, which states that the Court may extend its jurisdiction over the Settlement Agreement based on a lack of substantial compliance. ECF No. 3047-2 at 24. Plaintiffs ask the Court to grant their extension motion as to the remaining terms of the Settlement Agreement for up to two years because according to the settlement monitor, Defendants have "failed to substantially comply" with those terms. ECF No. 3484 at 2. Plaintiffs contend the monitor's findings "should be dispositive." *Id*. at 3. Defendants filed a response opposing the Motion, arguing that the Settlement Agreement legally operates as a PLRA consent decree and that the Court cannot extend its jurisdiction without finding that any term subject to extension "is narrowly drawn, extends no further than necessary to correct the violation of [a] Federal right, and is the least intrusive means necessary to correct the violation of [that] Federal right." ECF No. 3537.

The Court held oral argument on May 4, 2022, where the Court ruled that "the Settlement Agreement is a Consent Decree." Minute Entry dated 5/4/2022. The Court ordered the parties to submit Findings of Fact and Conclusions of Law, which the parties submitted on May 18, 2022. However, on June 2, 2022, the parties requested that the Court withhold ruling on the motion while they attempted to renegotiate their agreement. ECF No. 3580. After approximately six weeks of negotiations, Defendants requested the Court enter an opinion. Accordingly, this opinion follows.

---

Cir. 2015), which is cited later in this opinion. While the Seventh Circuit observation helps to inform this decision, it does not serve as the primary legal guidance, as the law in this area is already settled in the Seventh Circuit.

    [2] Pursuant to the parties' agreement, at different times, the Court has found the Department in substantial compliance with certain sections of the Settlement Agreement and therefore terminated its jurisdiction as to those terms. ECF Nos. 3266; 3263-1; 3263-2. 3508.

## DISCUSSION

### A.  The Parties' Settlement Agreement Operates as a Consent Decree

Under the PLRA, a settlement agreement can operate as either a "private settlement agreement" or a "consent decree," but not both. *See* 18 U.S.C. § 3626(c)(1), (g)(1), (g)(6). The Seventh Circuit has explained that if the settlement agreement providing for reforms to prison conditions "is judicially enforceable—that is, if a violation means anything other than restarting the litigation on the merits—the agreement must be treated as a consent decree" under 18 U.S.C. § 3626. *Rasho*, 22 F.4th at 707 n.2 (citing *Doe v. Cook County*, 798 F.3d 558, 562–63 (7th Cir. 2015)). In other words, if a court reserves "jurisdiction to enforce the settlement's terms," then the settlement is "a 'consent decree' as defined in § 3626(g)(1), as opposed to a 'private settlement agreement' under § 3626(g)(6)." *Doe*, 798 F.3d at 565. For a settlement to qualify as a "private settlement agreement" the terms of the settlement may not be "subject to court enforcement other than the reinstatement of the civil proceeding that the agreement settled," except "in State court [under] any remedy available under State law." 18 U.S.C. § 3626(c)(2).

Pursuant to the Settlement Agreement, the Court retained jurisdiction to enforce the terms of the Agreement in several ways other than restarting the litigation on the merits. The Settlement Agreement authorizes the Court to modify the terms of the Settlement Agreement on the motion of a party, even over another party's objection. ECF No. 3047-2 at 25 ("If mediation is not successful, then appropriate relief may be sought from the Court in the form of a motion for modification."). The Settlement Agreement further authorizes the Court to reject proposed modifications agreed to by both parties. *Id.* (requiring the parties to "seek Court approval of the modification" proposed by the Defendants, even if Plaintiffs agree to that modification). The Settlement Agreement also grants the Court authority to approve or deny requests to dismiss the

5

A 29

monitor, whether such requests are made by a single party, or jointly by both parties. *Id*. at 22. The Settlement Agreement gives the Court authority to approve or deny certain motions Plaintiffs may file to "abrogate" the Settlement Agreement, except for the provisions of the Settlement Agreement that bar the Court from entering orders of contempt to enforce the terms of the Settlement Agreement (which may never be abrogated). *Id*. at 24. The Court is authorized to resolve disputes between the parties relating to the invocation of the contract defense of *force majeure*. *Id*. at 24–25. All of these provisions provide Plaintiffs with avenues to relief in federal court without requiring them to seek relief in state court or restart the litigation on the merits. Accordingly, this demonstrates how the Settlement Agreement operates as a consent decree as defined in § 3626(g)(1) rather than as a "private settlement agreement" under § 3626(g)(6).

Since the Settlement Agreement was signed, the Court has exercised ongoing authority over settlement terms at Plaintiffs' request in several ways. The Court entered preliminary and permanent injunctions enforcing settlement terms after concluding that the violation of those terms also resulted in a violation of federal rights. *See, e.g.*, ECF 2070, 2633. The Court entered an order granting Plaintiffs' motion to require Defendants to compensate the monitor for time spent preparing for the hearing on Plaintiffs' motion for a preliminary injunction. Text Order dated 01/25/2022. The Court resolved a dispute between the parties relating to the invocation of *force majeure* by Defendants. Minute Entry dated 3/1/2021. These examples did not involve the reinstatement of proceedings, further supporting Defendants' argument that the Settlement Agreement has operated as a consent decree for the purposes of the PLRA.

Despite the parties' apparent intention to enter a private settlement agreement, the Settlement Agreement provides the Court with more authority to enforce and manage the agreement than the PLRA standard that the only remedies for a violation of a private settlement

A 30

agreement is reinstatement of civil proceedings or for the party to seek relief under state law in state court. 18 U.S.C. § 3626(c)(2). If the parties were able to simply contract around the PLRA requirements, this statutory scheme would be effectively gutted. The Seventh Circuit has observed that part of the "overarching objectives" of the PLRA is to "limit judicial intervention in the management of state and federal prisons." *Smith v. Zachary*, 225 F.3d 446, 449 (7th Cir. 2001) (quoted in *McCoy v. Gilbert*, 270 F.3d 503, 509 (7th Cir. 2001)). Despite the apparent mutual mistake as to the legal effect of the agreement, the Court simply cannot ignore the PLRA and enforce the terms of the settlement as written. *See Doe*, 798 F.3d at 563 ("what a court cannot do by final order in a contested case it also cannot do by the parties' consent").

### B. Plaintiffs' Extension Motion Cannot Be Granted Absent PLRA Findings

The PLRA defines prospective relief as "all relief other than compensatory damages." 18 USC § 3626(g)(7). In a "civil action with respect to prison conditions" the court "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C.A. § 3626(a)(1)(A). Moreover, "[i]f prospective relief under an existing injunction does not satisfy these standards, a defendant or intervenor is entitled to "'immediate termination' of that relief." *Miller v. French*, 530 U.S. 327, 331 (2000) (citing 18 U.S.C. § 3626(b)(2)). Accordingly, the Court cannot extend any form of prospective relief without the necessary PLRA findings.

Plaintiffs do not directly dispute Defendants' assertion that the Settlement Agreement is a form of "prospective relief" under PLRA. Indeed, the definition that prospective relief includes all relief other than compensatory damages, leaves little room for such an argument. The Settlement Agreement requires that Defendants take many actions in regard to prison administrative and

A 31

therefore, the Settlement Agreement is a form of "prospective relief." The obligations imposed under the Agreement thus, can "extend no further" than the Court can justify through the entry of valid PLRA Findings as required by 18 U.S.C. § 3626(a)(1)(A).

Even though the Settlement Agreement purports to authorize an extension of jurisdiction based solely on an alleged lack of substantial compliance, PLRA still limits the Court's authority to enter relief. In *Doe*, the Seventh Circuit made clear that an order to enforce a prison conditions settlement must include new PLRA Findings if the underlying settlement agreement being enforced does not already contain proper PLRA Findings. *Doe*, 798 F.3d at 562–63. If the agreement being enforced lacks proper PLRA Findings, new findings are necessary for "enforcement" to proceed. *Id.* (rejecting notion that "enforcement" did not require new PLRA Findings because the "judge did not . . . make any of the findings that § 3626 requires" with respect to the underlying settlement agreement). Here, with no PLRA Findings as to the terms of the Settlement Agreement, the Court cannot extend its jurisdiction under the guise of a motion to enforce those terms. Indeed, the Seventh Circuit (which observed that the Settlement Agreement operates as a consent decree) has already ruled in this case that both the PLRA and the terms of the Settlement Agreement require that any Court enforcement of the Settlement Agreement must be supported by a new round of valid PLRA Findings. *E.g., Rasho*, 22 F.4th at 707 (recognizing that the Settlement Agreement "effectively prohibits judicial enforcement unless IDOC's noncompliance causes an Eighth Amendment violation.").

Plaintiffs' Motion does not address the PLRA standard. Instead, Plaintiffs base their Motion on their allegation that the Department is not in substantial compliance with certain terms of the Settlement Agreement. ECF No. 3484 at 2–3. Plaintiffs rely solely on "the Monitor's findings," but as the monitor testified, the Settlement Agreement is the basis of his report. ECF

A 32

No. 3509 at 105. Accordingly, the monitor's reports do not necessarily reflect whether the Department is violating the Eighth Amendment or if the PLRA findings are satisfied. Moreover, even if Plaintiffs did file a motion addressing the PLRA standard, the Seventh Circuit has already ruled that the substantive requirements of the Settlement Agreement go beyond the constitutional minimum, and therefore transgress the limitations on prospective relief under the PLRA. *Rasho*, 22 F.4th at 713 (ruling that "benchmarks lifted from the settlement" exceed the limits on remedial relief required by the PLRA). Accordingly, the Court is compelled to deny Plaintiffs' Motion as they do nothing to persuade the Court that the PLRA findings are met, particularly in light of the recent Seventh Circuit case. *See id*.

**C. The Court is Otherwise Persuaded that Extending Jurisdiction is not Appropriate**

The parties' Agreement also does not require that the Court extend its jurisdiction due to a finding that Defendants are not in compliance with certain portions of the Agreement. ECF No. 3051 at 30. Instead, it states that the Court's jurisdiction "shall terminate" with respect to any provisions for which the Court has found Defendants are in substantial compliance. *Id*. The Court's jurisdiction "may be extended by the court for periods of time not more than two years from any finding of violation" for those provisions where the Court has not made a finding of substantial compliance. *Id*. The language of the Agreement is clear that the Court extending jurisdiction is optional. Given the recent Seventh Circuit opinion and the Court's agreement with Defendants that the Agreement must be construed as a consent decree, the Court would otherwise exercise its discretion to decline to extend jurisdiction over this agreement.

**D. Plaintiffs' Motions for Contempt are Moot**

Plaintiffs previously filed several motions requesting that the Court hold Defendants in contempt for violating the Injunction that the Court entered in April 2019. Plaintiffs particularly

A 33

focused on Defendants' failure to meet certain staffing requirements and other benchmarks. Plaintiffs filed their first Motion for contempt November 15, 2019, (ECF No. 2790), they filed a Renewed Motion July 10, 2020 (ECF No. 3078) and filed a second renewed motion on October 23, 2020. (ECF No. 3176).

The Court stayed ruling on these motions until after the Seventh Circuit had the opportunity to review the case. As mentioned above, the Seventh Circuit ultimately reversed this Court's order and vacated the injunction, finding IDOC officials took reasonable steps to cure the deficiencies identified by the plaintiffs,' which undermined a finding of deliberate indifference. *Rasho*, 22 F.4th at 706. Since the Seventh Circuit's decision, Plaintiffs have suggested at various hearings that the Court could still grant those motion. They suggest that the Court's finding that the agreement is a consent decree would allow the Court to enter a contempt order for any violations and thus, the motions should be granted on that basis.

Plaintiffs filed the contempt motions related to an injunction that the Seventh Circuit clearly vacated. Plaintiffs' offer no authority for their argument that the Court can now still grant those motions for contempt for violating an Injunction that the Seventh Circuit vacated. Plaintiffs have also not formally moved the Court to otherwise construe the motions, and the Court has explained that while this agreement qualifies as a consent decree, it cannot be enforced against Defendants because the Court did not make the necessary PLRA findings. Accordingly, the Court is persuaded that it is time to deny these motions as moot following the Seventh Circuit vacating the Court's injunction.

### E.  The Court Appropriately Considered Plaintiffs' Motion for Preliminary Injunction

The Court also recently entered an order denying Plaintiffs' Motion for Preliminary Injunction. ECF No. 3581. On October 19, 2021, Plaintiffs filed a Motion for Preliminary

A 34

Injunction due to Defendants' continued failure to provide adequate out of cell time to class members. ECF No. 3417. Between February 1, 2022, and February 4, 2022, the parties presented testimony and evidence regarding the Motion for Preliminary Injunction and the Court heard Closing Arguments on February 23, 2022. On March 3, 2022, after the Seventh Circuit ordered Defendants to respond to Plaintiffs request that the Seventh Circuit rehear the *Rasho v. Jeffreys* case *en banc*, Plaintiffs requested the Court reserve ruling until after the Seventh Circuit decided whether to rehear the case, which the Court granted. Minute Entry dated 03/14/2022. The Seventh Circuit denied that request on April 25, 2022. After Defendants raised the issue of the Agreement qualifying as a consent decree, Plaintiffs argued that if the Court found that the Agreement was a consent decree, it should decide the motion for preliminary injunction as though it were a motion for contempt where a violation of the consent decree alone is sufficient to support a finding of contempt. ECF No. 3562 at 59.

While the Court is compelled to find that the Agreement operates as a consent decree, the Court does not agree with Plaintiffs that it is therefore appropriate to find Defendants in contempt of that Agreement. As explained above, the Court never made the findings that the PLRA statute requires before entering prospective relief. Moreover, Defendants are entitled to ask for the agreement to terminate a consent decree immediately if the Court did not make the appropriate findings. *See* 18 U.S.C. § 3626(b)(2)). Plaintiffs argue that it unfair to them for the Court to find that the agreement operates as a consent decree and deprive them of the ability to extend the agreement, while also refusing to find Defendants in contempt of that decree. Plaintiffs' point is well-taken but part of PLRA's purpose is to thwart plaintiffs' ability to seek a federal court's intervention in the operation of state prisons. *See e.g. Smith*, 225 F.3d at 449. The Court is limited by the text of the statute despite Plaintiffs' complaints of unfairness.

A 35

Since the parties agreed to temporarily extend the Court's jurisdiction (ECF No. 3508), the Court found it was still appropriate to resolve the Plaintiffs' Motion for Preliminary Injunction pursuant to the standards found in the agreement that was in place. Moreover, the Seventh Circuit resolved the parties' dispute regarding the appropriateness of this Court's injunction order despite its observation that the agreement was a consent decree. *See*, *Rasho*, 22 F. 4th at 707. The Seventh Circuit did not attempt to invalidate the agreement or otherwise suggest that it was improper for it to consider whether the injunction was properly entered despite this Court not making any PLRA findings before the entry of the consent decree. Defendants also did not raise the issue that the Agreement is a consent decree at the time of the hearing on the Motion for Preliminary Injunction and participated in the hearing as though the Agreement functioned as a private settlement agreement. Defendants have also not asked the Court to immediately terminate the agreement.

## CONCLUSION

As explained above, it is ORDERED that Plaintiffs' Motion to Extend Jurisdiction of Settlement Agreement [3484] is DENIED.

It is further ORDERED that Plaintiffs' Motions for Contempt [2790]; [3078] and [3176] are DENIED as moot. Defendants' Motion to Strike Plaintiffs' Second Renewed Motion for Contempt [3194] is also DENIED as moot.

This case is returned to the active docket for scheduling.

ENTERED this _21st day of July, 2022.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge

A 36

| 09/30/2022 | | Text only order GRANTING 3632 . Pending before the Court is Plaintiffs' Motion for Leave to File an Amended Complaint. Plaintiffs drafted the Fourth Amended Complaint pursuant to the parties' agreement and with the Court's permission. Plaintiffs specifically request permission to add Governor Pritzker in his official capacity as a defendant. Defendants have not objected. Plaintiffs' Motion is GRANTED for good cause shown, and the Clerk is DIRECTED to enter ECF No. 3632-1 as Plaintiffs Fourth Amended Complaint. Entered by Judge Michael M. Mihm on 9/30/2022. (VH) (Entered: 09/30/2022) |

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | | |
|---|---|---|
| **PATRICE DANIELS,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 07-cv-1298** |
| | ) | |
| **ROB JEFFREYS, Director of IDOC,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Pending before the Court is Plaintiffs' Motion to Vacate Judgment pursuant to Rule 59(e) (the "Motion to Vacate"). ECF No. 3750. For the reasons stated below, Plaintiffs' Motion to Vacate is DENIED.

## I.    BACKGROUND

The Court provided an extensive background of these proceedings in its recent orders, which are incorporated herein for reference.[1] *See* ECF Nos. 3739, 3745. On September 18, 2023, the Court issued an order (the "Jurisdictional Order"), where it *sua sponte* raised concerns regarding jurisdiction over this case. ECF No. 3739. Specifically, the Court detailed the procedural history of the case, and its concerns regarding expiration of the Consent Decree following the Seventh Circuit's mandate and this Court's order declining to extend its jurisdiction over the Consent Decree. The Court stayed all pending matters and directed the parties to submit jurisdictional memoranda. *Id.* at 7. After reviewing the parties' jurisdictional memoranda, the

---

[1] Terms used in this Order but not defined have the meanings given to them in the Court's orders at Docket Nos. 3739, 3745.

A 38

Court held oral argument on October 11, 2023, on the issue of subject matter jurisdiction.  *See Min Entry* on 10/11/2023.

On October 23, 2023, the Court issued an order dismissing the case for lack of subject matter jurisdiction (the "Dismissal Order").  ECF No. 3745.  There, the Court held that the Consent Decree had the effect of a final judgment that had expired by its terms following the Court's July 21, 2022, order declining to extend jurisdiction, which left the parties with no remaining case or controversy.  The Court ultimately dismissed the claims embodied in the Consent Decree with prejudice and dismissed the newly added claims in the Plaintiffs' Fifth Amended Complaint without prejudice for lack of jurisdiction.  *Id.* at 17.  Judgment was entered on October 24, 2023.  *See* ECF No. 3746.

On November 1, 2023, Defendants filed a Notice of Appeal requesting reversal of the Court's prior fee order, which denied in part their request for repayment of $1.9 million in fees.  ECF No. 3747; *see also* ECF No. 3629 (fee order).  On November 2, 2023, Plaintiffs filed this Motion to Vacate requesting the Court vacate its judgment pursuant to Federal Rule of Civil Procedure 59(e) on the grounds that it made mistakes of fact and law.  ECF No. 3750.  On November 9, 2023, Defendants filed an Opposition to Plaintiffs' Motion to Vacate arguing that even if Plaintiffs' assertions are correct, they are immaterial, and a different conclusion is not warranted.  ECF No. 3751.  On November 16, 2023, Plaintiffs filed a Reply to Defendant's Opposition.  ECF Nos. 3753, 3754.  The matter is now fully briefed, and this Order follows.

## II.    LEGAL FRAMEWORK

Rule 59(e) of the Federal Rules of Civil Procedure provides that a party may file a motion to alter or amend a judgment "no later than twenty-eight days after the entry of the judgment."  A Rule 59(e) motion requires that the moving party must "clearly establish either a manifest error of

2

A 39

law or fact or must present newly discovered evidence." *FDIC v. Meyer*, 781 F.2d 1260, 1268 (7th Cir. 1986). Rule 59(e) "is not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment . . . or to present evidence that was available earlier." *LB Credit Corp. v. Resolution Tr. Corp.*, 49 F.3d 1263, 1267 (7th Cir. 1995). The decision to grant or deny a motion to amend a judgment is within the discretion of the district court. *Id.*

### III.    DISCUSSION

Plaintiffs' Motion to Vacate raises the following two arguments: (1) that the Court made a mistake of fact in its discussion of the termination date for the original Consent Decree; and (2) that the Court made a mistake of law under Seventh Circuit precedent when it found that it could not have extended jurisdiction over the Consent Decree by agreement of the parties. ECF No. 3750 at 2–3. Plaintiffs also ask the Court to issue a statement pursuant to Federal Rule of Appellate Procedure 12.1 ("FRAP 12.1") that it will grant the Motion to Vacate or that the Motion to Vacate raises a substantial issue for remand of appellate jurisdiction to this Court. *Id.* at 7.

### 1.   Termination of the Original Consent Decree

*First*, Plaintiffs argue that the Court made a mistake of fact in concluding that the original Consent Decree expired on May 23, 2019. *Id.* at 2. Plaintiffs argue that the original Consent Decree instead expired on July 7, 2020, because the terms of the Consent Decree allowed the Court to use the *later of* three years after the date of approval (which occurred on May 23, 2016) or the budget contingent date (which Plaintiffs submit occurred on July 7, 2017). *Id.* at 2–3. As a result,

A 40

Plaintiffs argue that the Court made a mistake of fact in stating that it appeared to lack jurisdiction when it amended the original Consent Decree.  *Id.*

Defendants do not contest Plaintiffs' assertion that the budget contingent approval date occurred on July 7, 2017, and that the original Consent Decree was set to expire on July 7, 2020. Rather, Defendants claim that even if the Court made an oversight, "the Order remains correct notwithstanding this Court's discussion of the initial termination date, because regardless, 'the Court's subject matter jurisdiction unquestionably ended' after the Court 'declined to extend its jurisdiction any further over the Consent Decree' on July 21, 2022."  ECF No. 3751 at 6 (citing ECF No. 3745 at 13).

Plaintiffs correctly note that the Court made a factual error when it stated that the original Consent Decree appeared to expire on May 23, 2019.  As Plaintiffs highlight, the terms of the original Consent Decree provided that "[t]he Court's jurisdiction shall terminate (3) three years after the Approval Date *or the Budget Contingent Approval Date, whichever is later*, with respect to any provisions of this Settlement Agreement for which there is no outstanding determination that Defendants are not in substantial compliance."  ECF No. 711-1 at 29–30 (emphasis added). The original Consent Decree was approved on May 23, 2016, and so, the Court believed that it expired three years later on May 23, 2019.  Yet Plaintiffs submit that the "Budget Contingent Approval Date" occurred at a later date than the approval date.  Specifically, Plaintiffs cite to a Midyear Report of Dr. Pablo Stewart, which stated that "[a] number of deadlines on critical issues were contingent upon, and calculated from*, the state budget approval date of July 6, 2017*."  *See* ECF No. 3750 at 2 (citing to ECF No. 1646 at 5) (emphasis added).  The budget approval date in July 2017 therefore means that the original Consent Decree expired in July of 2020, not May of

2019, and the Court still maintained jurisdiction when it entered the Amended Consent Decree on June 9, 2020.  *See* ECF No. 3051.

Plaintiffs' factual correction, however, does not change the Court's ultimate conclusion in its Dismissal Order.  The Court's discussion of the possible expiration of the original Consent Decree was simply to highlight an earlier juncture where the Court *may* have *also* lost jurisdiction prior to entry of the Amended Consent Decree.  Specifically, the Court stated that "it appears that the Court's jurisdiction had already terminated" but nevertheless the Court "assum[ed] *arguendo*" that it had jurisdiction to enter the Amended Consent Decree and proceeded to analyze when its jurisdiction ended after the June 2020 amendment.  ECF No. 3745 at 11, 12.

As Defendants' note in their Opposition, the Court ultimately concluded that it lacked jurisdiction because the Amended Consent Decree expired by its terms when the Court issued its July 21, 2022 Order declining to further extend its jurisdiction over the Amended Consent Decree.  *See* ECF No. 3745 at 14.  The Amended Consent Decree expressly provided that the Court's jurisdiction shall terminate April 23, 2021, but may be continued as to any terms for which the Court finds the Defendants are not in compliance for periods of not more than two years.  ECF No. 3051, at 3, 24.  The Court granted several extensions beyond the April 23, 2021, expiration of the Amended Consent Decree, exercising its discretion under the terms of the Amended Consent Decree to extend jurisdiction through July 22, 2022.  *See* ECF Nos. 3266, 3508.  On July 21, 2022, however, the Court declined to further extend its jurisdiction finding that such extension was optional under the terms of the Consent Decree, that Plaintiffs did not present the requisite PLRA findings demonstrating an ongoing violation necessary for extension, and that such extension was

A 42

not appropriate in light of the Seventh Circuit's mandate reversing the Court's findings of noncompliance.  *See* ECF No. 3597 at 8–9.

The Court's Dismissal Order, therefore, reasoned that the case should have been dismissed at that point subject to the terms of the Amended Consent Decree.  *See* ECF No. 3745 at 13–14 (citing *Corey H. v. Chicago Bd. of Educ.*, 528 F. App'x 666, 668–69 (7th Cir. 2013) (holding that because the consent decree expired, there was not controversy, and the case was moot); *Ass'n for Disabled Am., Inc. v. Publix Super Mtk., Inc.*, No. 98-cv-00917, 2023 WL 3741102, at *4 (S.D. Fla. May 3, 2023) (providing that following expiration of the consent decree, the case should be dismissed with prejudice).  Therefore, regardless of when jurisdiction expired under the terms of the original Consent Decree, the Court's holding ultimately turned on the fact that the Amended Consent Decree subsumed all claims in the operative complaint, the Seventh Circuit's mandate reversed findings of constitutional violations and noncompliance, and the Amended Consent Decree expired by its terms following the Court's order declining to extend its jurisdiction beyond July 22, 2022.  Additionally, as the Court noted in its earlier Dismissal Order, the right to adjudicate matters embodied in the Amended Consent Decree on the active docket as part of the decree's dispute resolution terms survived only as long as the Amended Consent Decree did, and therefore, expired by its terms absent an extension of jurisdiction or a motion to terminate under Rule 60(b).

### 2.   Validity of Consent Decree Under *Doe*

***Second***, Plaintiffs argue that the Court erred in finding that it could not have extended jurisdiction over the Amended Consent Decree under Seventh Circuit precedent.  ECF No. 3750 at 3.  Specifically, Plaintiffs argue that "in dismissing the consent decree on its own motion, the Court ignores the *Doe* decision which acknowledges the continuing vitality of settlements that

proceed through subsequent litigation following consent decrees without PLRA findings." *Id.* Plaintiff states that in *Doe*, "the Seventh Circuit specifically allowed for ongoing jurisdiction over the case as a whole and underlying consent decree even after invalidating the challenged enforcement orders." *Id.* (citing *Doe v. Cook Cty., Ill.*, 798 F.3d 558, 566–67 (7th Cir. 2015) ("Nothing in this opinion should be read to undermine the original settlement in 2002 or the follow-up settlements in 2006.")).  Defendants argue that even if Plaintiffs' analysis of *Doe* is correct, it again does not "affect the Court's determination that jurisdiction ended after the Court declined to extend jurisdiction on July 21, 2022."  ECF No. 3751 at 7 (citing ECF No. 3745 at 13–14). Additionally, Defendants submit that while a return to the active docket was possible—as Plaintiffs suggest was the appropriate measure—the parties never agreed to modify or extend the Consent Decree which was set to on July 22, 2022 absent extension from the Court.  *Id.*

The Court is not persuaded that it made a clear mistake of law under *Doe* or any Seventh Circuit precedent.  As an initial matter, the Court did not "dismiss the consent decree on its own motion" or otherwise terminate the Consent Decree.  Instead, the Court recognized that the Amended Consent Decree had expired, and with it, so too did the Court's jurisdiction.

Additionally, the Court did not ignore *Doe's* principles or other Seventh Circuit precedent. The Dismissal Order cited the Seventh Circuit's *Jones-El v. Berg* decision in rejecting Plaintiffs' arguments that the Amended Consent Decree must have been unenforceable if it was not rooted in the proper PLRA findings.  *See* ECF No. 3745 at 15 ("The Seventh Circuit did not invalidate the Consent Decree itself in its reversal order, and courts have held that an order vacating prospective relief (*e.g.*, the injunctive relief and compliance), does not vacate or otherwise terminate the underlying consent decree.") (citing *Jones-El v. Berge*, 374 F.3d 541, 545 (7th Cir. 2004)).  Similar to Plaintiff's discussion of *Doe*, this Court reasoned that even if the prospective relief under the

A 44

Amended Consent Decree was invalid—or that each extension was invalid for lack of PLRA findings—the Amended Consent Decree itself remained intact as a final judgment, with this Court only retaining jurisdiction pursuant to its terms.  *Id.* at 15 (noting that even if unenforceable, the Consent Decree was not terminated).  For this reason, the Court noted Plaintiffs were free to properly modify the Amended Consent Decree to provide appropriate prospective relief under the PLRA, or terminate it prior to the Court's jurisdiction expiring.  However, they declined to do so. Therefore, the Court does not find that *Doe* warrants a different result.

**3.   Statement Under FRAP 12.1**

*Lastly*, in their conclusion, Plaintiffs request that the Court provide a statement, pursuant to FRAP 12.1 that the Court will grant the Motion to Vacate or that it otherwise raises a substantial issue so that Plaintiffs may promptly notify the clerk of the Seventh Circuit.  ECF No. 3750 at 5– 6.

FRAP 12.1 first provides that "[i]f a timely motion is made in the district court for relief *that it lacks authority to grant because of an appeal* that has been docketed and is pending, the movant must promptly notify the circuit clerk if the district court states either that it would grant the motion or that the motion raises a substantial issue."  Fed. R. App. P. 12.1(a) (emphasis added). It further provides that "[i]f the district court states that it would grant the motion or that the motion raises a substantial issue, the court of appeals may remand for further proceedings but retains jurisdiction unless it expressly dismisses the appeal."  *Id.* at 12.1(b).  FRAP 12.1 effectively allows the court of appeals to remand proceedings to the district court if the district court says it would grant a motion that is otherwise barred by a pending appeal.  *In re Cent. Illinois Energy Coop.*,

847 F.3d 873, 874 (7th Cir. 2017) (noting that the rule "allow[s] for coordination of proceedings between a district court and a court of appeals").

Here, FRAP 12.1 is inapplicable because the Court does not "lack authority" to grant Plaintiffs' Motion to Vacate.  The Seventh Circuit has held that "[a] timely post-judgment motion in the district court suspends the judgment's finality and thus defers the time for appeal until the district judge has acted on the motion."  *York Grp., Inc. v. Wuxi Taihu Tractor Co.*, 632 F.3d 399, 401 (7th Cir. 2011).  If a Rule 59(e) motion is filed after a defendant has filed a notice of appeal, the district court may still grant or deny the motion notwithstanding the pending appeal because a timely postjudgment motion under Rule 59 suspends finality.  *W. Indus., Inc. v. Newcor Canada Ltd.*, 709 F.2d 16, 17 (7th Cir. 1983) (noting that the Rule 59(e) motion was filed after a notice of appeal yet reasoning that "[t]he immediate filing of a notice of appeal cannot be allowed to defeat the appellee's rights under Rule 59(e)").

Here, Plaintiff timely filed the Motion to Vacate within twenty-eight days of the Dismissal Order.  Therefore, notwithstanding the Notice of Appeal filed one day earlier, the Court may grant or deny the Motion to Vacate without a remand as contemplated in FRAP 12.1.

## CONCLUSION

For the reasons stated above, the Motion to Vacate [3750] is DENIED.

ENTERED this 30th day of November, 2023.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge

A 46

**CERTIFICATE OF SERVICE**

The undersigned, counsel for the Plaintiffs-Appellants hereby certifies that on April 15, 2024, the Brief of Plaintiffs-Appellants was filed electronically with the Clerk of the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system. I certify that all participants in this case are registered CM/ECF users served electronically.


Dated April 15, 2024                    /s/ Diane O'Connell
                                        Attorney for Plaintiffs-Appellants