No. 23-3388 & 23-3110 (consol.)

IN THE
UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

| | |
|---|---|
| PATRICE DANIELS, GERRODO FORREST, JOSEPH HERMAN, HENRY HERSMAN, RASHEED McGEE, FREDERICKA LYLES, and CLARA PLAIR, <br><br> Plaintiffs-Appellants/Cross Appellees, <br><br> v. <br><br> LATOYA HUGHES, Acting Director of the Illinois Department of Corrections; DR. MELVIN HINTON, Chief of Mental Health; DR. WILLIAM PUGA, Chief of Psychiatry; and J.B. PRITZKER, Governor of the State of Illinois, in their official capacities, <br><br> Defendants-Appellees/Cross Appellants. | Appeal from the United States District Court for the Central District of Illinois, Peoria Division <br><br><br><br><br><br><br><br><br><br> No. 1:07-cv-01298-MMM <br><br><br><br><br><br><br><br><br> The Honorable MICHAEL M. MIHM, Judge Presiding. |

**BRIEF AND SHORT APPENDIX
OF DEFENDANTS-APPELLEES/CROSS-APPELLANTS**

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

**CHRISTINA T. HANSEN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-6569 (office)
(872) 272-0819 (cell)
Christina.Hansen@ilag.gov

115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-3300

Attorneys for Defendants-
Appellees/Cross Appellants

# TABLE OF CONTENTS

TABLE OF AUTHORITIES...................................................................................iii

JURISDICTIONAL STATEMENT..................................................................... 1

ISSUES PRESENTED FOR REVIEW .......................................................... 5

STATEMENT OF THE CASE ......................................................................... 6

Introduction ...................................................................................................... 6

The Terms of the Consent Decree.................................................................. 7

The District Court's Preliminary Injunction and Plaintiffs' Request for Attorney
    Fees. ............................................................................................................ 9

The Permanent Injunction Order and Motions Regarding Attorney Fees. ................ 10

The District Court Extended its Jurisdiction Over the Consent Decree ..................... 13

The Permanent Injunction was Vacated and the District Court Declined to
    Further Extend Its Jurisdiction under the Consent Decree............................ 14

Defendants' Request for a Refund of the Deferred Fee Award ................................... 17

The District Court's Orders Addressing its Jurisdiction ............................................. 18

SUMMARY OF ARGUMENT ........................................................................ 23

ARGUMENT ................................................................................................... 24

I.    This court reviews the district court's dismissal of the action *de novo*. ............ 24

II.   The district court's jurisdiction over this lawsuit terminated when its
      enforcement authority under the consent decree expired. ................................ 24

    A.    The consent decree was a final judgment of plaintiffs' claims. .............. 25

    B.    The consent decree limited the scope and duration of the district
         court's jurisdiction to remedy alleged violations. .................................... 27

    C.    Once the consent decree expired by its own terms, the case
         terminated and the district court lost jurisdiction. ................................. 29

        1.    The parties' post-judgment negotiation plan did not expand
            the district court's jurisdiction over this action. .......................... 29

2.      This case terminated upon the expiration of the district court's enforcement authority, no matter whether the district court would have federal-question jurisdiction over the claims in the fifth amended complaint. ........................................................... 32

3.      The consent decree disposed of all of the claims asserted in this action. ..................................................................... 34

4.      Plaintiffs incorrectly assert that the consent decree called for the return of their claims to the active docket. ............................ 35

5.      Plaintiffs erroneously contend that they were entitled to a trial on the merits regarding any matters not heard at the preliminary injunction hearing. ...................................................... 36

6.      Plaintiffs erroneously contend that placement of the case on the active docket extended the court's jurisdiction. ..................... 37

III.    Because the consent decree was a final judgment that was not set aside under Fed. R. Civ. P. 60(b) while in force, the court could not extend its jurisdiction over the fifth amended complaint. ..................................................... 38

A.      With no ongoing enforcement jurisdiction, the district court lacked jurisdiction to permit the amended pleading. ......................................... 39

B.      The district court did not set aside the consent judgment under Fed. R. Civ. P. 60(b). ......................................................................... 42

C.      The district court did not violate plaintiffs' due process rights by raising its subject matter jurisdiction *sua sponte*. ................................... 43

IV.     The district court erred by denying defendants' motion to recover the deferred fee award. ................................................................. 44

A.      The unambiguous terms of the consent decree required defendants to pay the deferred fee award only if there was a valid compliance order. ........................................................................ 45

B.      Defendants did not contractually forfeit their entitlement to recoup the deferred fee award. .............................................................. 46

C.      Defendants did not forfeit their argument to recoup the fee award by not raising it in their prior appeal. .......................................... 49

CONCLUSION ...................................................................... 51

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Alliance to End Repression v. City of Chi.*,
356 F.3d 767 (7th Cir. 2004)................................................................27

*AngioDynamics, Inc. v. Biolitec AG*,
823 F.3d 1 (1st Cir. 2016) ..................................................................38

*Arbaugh v. Y&H Corp.*,
546 U.S. 500 (2006) ...........................................................................43

*Balark v. City of Chi.*,
81 F.3d 658 (7th Cir. 1996).................................................................28

*Benjamin v. Jacobson*,
172 F.3d 144 (2d Cir. 1999) ..........................................................45, 46

*Bogard v. Wright*,
159 F.3d 1060 (7th Cir. 1984)..............................................................27

*Bryan v. BellSouth Cmmc'ns., Inc.*,
492 F.3d 231 (4th Cir. 2007)...............................................................45

*Camp v. Gregory*,
67 F.3d 1286 (7th Cir. 1995)..........................................................34, 42

*Carver v. Condie*,
169 F.3d 469 (7th Cir. 1992)........................................25, 26, 32, 33

*Commodity Futures Trading Comm'n v. Schor*,
478 U.S. 833 (1986) .......................................................................31, 32

*Cooper v. Fed. Res. Bank of Richmond*,
467 U.S. 867 (1984) .......................................................................26, 27

*Corey H. v. Bd. of Educ.*,
No. 92 C 3409, 2013 WL 5567556 (N.D. Ill. Oct. 9, 2013)..................33

*Corey H. v. Chi. Bd. of Educ.*,
528 F. App'x 666 (7th Cir. 2013).....................................32, 33, 34, 37

*Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*,
282 F.3d 984 (7th Cir. 2002)...............................................................49

*Doe v. Cook Cnty.*,
  798 F.3d 558 (7th Cir. 2015)..................................................15, 25

*Doe v. Holcomb*,
  883 F.3d 971 (7th Cir. 2018)..........................................................24

*Dougan v. Singletary*,
  129 F.3d 1424 (11th Cir. 1997).....................................................26

*E.E.O.C. v. Loc. 40, Intern. Ass'n of Bridge, Structural &*
  *Ornamental Iron Workers*,
  76 F.3d 76 (2d Cir. 1996) ........................................................28, 38

*Farmer v. Litscher*,
  303 F.3d 840 (7th Cir. 2002)..........................................................31

*Foster v. DeLuca*,
  545 F.3d 582 (7th Cir. 2008)..........................................................41

*Frew ex rel. Frew v. Hawkins*,
  540 U.S. 431 (2004) ........................................................................25

*Gallagher v. Lenart*,
  226 Ill.2d 208 (2007) ......................................................................47

*Gates v. Shinn*,
  98 F.3d 463 (9th Cir. 1996)............................................................26

*Habitat Educ. Ctr., Inc. v. Kimbell*,
  250 F.R.D. 397 (E.D. Wis. 2008)...................................34, 35, 40, 41

*Jones-El v. Berge*,
  374 F.3d 541 (7th Cir. 2004).....................................................25, 27

*Kaczmarek v. Rednour*,
  627 F.3d 586 (7th Cir 2010)...........................................................49

*Leuvano v. Wal-Mart*,
  772 F.3d 1014 (7th Cir. 2013).........................................................43

*Love v. Vanihel*,
  73 F.4th 439 (7th Cir. 2023) .....................................................39, 43

*McCoy v. Chi. Heights Election Comm'n*,
  880 F.3d 411 (7th Cir. 2018)..........................................................24

iv

*Nix v. Billington,*
448 F.3d 411 (D.C. Cir. 2006) .............................................................. 38

*Paganis v. Blonstein,*
3 F.3d 1067 (7th Cir. 1993) .................................................................. 34

*Palmer v. Chicago,*
806 F.2d 1316 (7th Cir. 1986) ........................................................ 46, 50

*Pardo v. Hosier,*
946 F.2d 1278 (7th Cir. 1991) .............................................................. 46

*Pedigo v. P.A.M. Transp.,*
98 F.3d 396 (8th Cir. 1996) .................................................................. 46

*Pottgen v. Mo. State High Sch. Activities Ass'n,*
103 F.3d 720 (8th Cir. 1997) ................................................................ 46

*Rasho v. Jeffrey,*
22 F.4th 703 (7th Cir. 2022) .............................. 3, 14, 24, 25, 30, 39, 45

*Richardson v. Penfold,*
900 F.2d 116 (7th Cir. 1990) ................................................................ 50

*Roman Catholic Archdioceses of San Juan v. Acevedo Feleciano,*
589 U.S. 57 (2022) ......................................................................... 39, 41

*Rufo v. Inmates of Suffolk Cnty. Jail,*
502 U.S. 367 (1992) ....................................................................... 26, 27

*Sanders v. Shell Oil Co.,*
678 F.2d 614 (5th Cir. 1982) ................................................................ 28

*Satsky v. Paramount Commc'ns, Inc.,*
7 F.3d 1464 (10th Cir. 1993) ........................................................... 26, 27

*South v. Rowe,*
759 F.2d 610 (7th Cir. 1985) ....................................................... 25, 26, 27

*Transamerica Ins. Co. v. South,*
975 F.2d 321 (7th Cir. 1992) ................................................................ 39

*U.S. v. Martin,*
378 F.3d 353 (4th Cir. 2004) ................................................................ 45

*United States v. Alshabkhoun,*
277 F.3d 930 (7th Cir. 2002) ................................................................ 25

*United States v. Amodeo,*
    916 F.3d 967 (11th Cir. 2019) ............................................................ 45

*United States v. Armour & Co.,*
    402 U.S. 673 (1971) ......................................................... 25, 27, 36

*United States v. Northlake,*
    942 F.2d 1164 (7th Cir. 1991) .......................................................... 40

*United States v. Ohio,*
    No. 08-cv-00475, 2014 U.S. Dist. Lexis 42159 (S.D. Ohio Mar, 28, 2014) ........ 40

**Statutes**

18 U.S.C. § 1291 ..................................................................... 32

18 U.S.C. § 3626(a)(1)(A) ....................................................... 8, 15, 16

18 U.S.C. § 3626(g) .................................................................. 25

28 U.S.C. § 1331 ................................................................... 1, 32

29 U.S.C. § 794 ...................................................................... 1

42 U.S.C. § 12101 .................................................................... 1

42 U.S.C. § 1988 ..................................................................... 2

42 U.S.C. § 1983 ................................................................... 1, 6

**Rules**

Fed. R. Civ. P. 12(h)(3) ...................................................... 23, 24, 32, 43

Fed. R. Civ. P 15 ................................................................ 34, 40

Fed. R. Civ. P. 59(e) .......................................................... 21, 22, 34, 42

Fed. R. Civ. P. 60(b) ...................................................... 22, 27, 29, 34, 39, 42

# JURISDICTIONAL STATEMENT

Plaintiffs-Appellants/Cross-Appellees filed a putative class action on behalf of mentally ill prisoners under the supervision of the Illinois Department of Corrections ("Department") against various Department officials, in their official capacities, pursuant to 42 U.S.C. § 1983, alleging violations of the Eighth and Fourteenth Amendments to the United States Constitution, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 794.  Doc. 54.[1]  The district court certified a class under Fed. R. Civ. P. 23(b)(2) consisting of all persons then or in the future in the Department's custody who were or should have been identified as requiring mental health treatment.  Doc. 252.  Plaintiffs later filed a third amended complaint for declaratory and injunctive relief, asserting a systemic failure to comply with federal law.  Doc. 260.  The district court had subject matter jurisdiction under 28 U.S.C. § 1331 because plaintiffs' claims raised federal questions.

On May 23, 2016, the district court approved a comprehensive settlement agreement between plaintiffs and Defendants-Appellants John Baldwin, the Department's then-Acting Director, and Dr. Melvin Hinton, the Department's Chief of Mental Health Services, which was later determined to be a consent decree.  Doc. 710 (A18) (approval), 711-1 (consent decree).[2]  The court stated that the matter

---

[1]  The district court's docket is cited as "Doc. __ at __," this court's docket is cited as "7th Cir. Doc. __," plaintiff's opening brief and short appendix are cited as "AT Br. __" and "A__," respectively.  The short appendix to this brief is cited as "SA__."

[2]  Latoya Hughes, the Department's current Acting Director, replaced Baldwin as a defendant.  See Fed. R. Civ. P. 25(d).

would remain on its docket "to address issues of compliance and performance." Doc. 710 (A18). In February 2017, the court approved the parties' agreement on plaintiffs' pending attorney fee petition ("2017 fee agreement"). Docs. 1091 (fee agreement), 1211 (approval).

In October 2017, plaintiffs moved to enforce the consent decree, alleging that defendants were not complying with parts of the decree and that the asserted noncompliance also violated the Eighth Amendment and the ADA. Doc. 1559. In June 2018, plaintiffs moved for a permanent injunction, asserting the same alleged violations of the decree and Eighth Amendment. Doc. 2112. Plaintiffs also sought an order requiring defendants to pay deferred attorney fees pursuant to the 2017 fee agreement. Doc. 2233. The district court found that defendants had violated the consent decree and acted with deliberate indifference to plaintiffs' serious mental health needs in violation of the Eighth Amendment, Doc. 2460, and entered a permanent injunction requiring defendants to make various alterations to their mental health programs and staffing levels and directing them to pay the deferred fees under the 2017 fee agreement, Doc. 2516. On January 10, 2019, plaintiffs petitioned under 42 U.S.C. § 1988 for additional fees and costs incurred to enforce the consent decree. Doc. 2532. In a post-judgment motion, the court granted in part and denied in part plaintiffs' fee petition. Doc. 2579.

Defendants appealed the permanent injunction order and the post-judgment order modifying the injunction and awarding fees and costs. Doc. 2583. On appeal, this court reversed the district court's judgment and vacated the permanent

injunction.  *See Rasho v. Jeffrey*, 22 F.4th 703 (7th Cir. 2022).  This court's mandate was issued on May 3, 2022.  Doc. 3560.  On September 13, 2022, the district court issued an order granting in part and denying in part defendants' motion seeking repayment of the attorney fees and expenses that they had been ordered to pay in connection with the vacated permanent injunction order.  Doc. 3629 (SA1-9).

In the meantime, the district court entered an agreed order to extend the duration of its jurisdiction to enforce the consent decree through July 22, 2022.  Doc. 3508 (A19-20).  On July 21, 2022, the district court denied plaintiffs' motion to extend the decree, allowing it to expire by its own terms, Doc. 3597 at 7-9 (A31-33), and after further proceedings, the court *sua sponte* asked the parties to address whether it had subject matter jurisdiction over the action, Doc. 3739 at 7.  On October 23, 2023, the district court issued a final order dismissing this action with prejudice as to all claims that were embodied in the consent decree and without prejudice as to any new claims asserted in the fifth amended complaint, which had been filed after the expiration of the decree.  Doc. 3745 (A1-17).  A separate judgment order was entered on the district court's docket pursuant to Fed. R. Civ. P. 58 the next day.  Doc. 3746.  On November 1, 2023, defendants filed a notice of appeal from the final judgment order, seeking review of the district court's September 13, 2022 order denying in part its request for the return of attorney fees.  Doc. 3747.  The notice of appeal was timely under Fed. R. App. P. 4(a)(1)(A) because it was filed within 30 days of the judgment order.

On November 2, 2023, plaintiff filed a motion for reconsideration under Fed. R. Civ. P. 59(e), Doc. 3750, which was timely under Fed. R. Civ. P. 59(b) because it was filed within 28 days of the final judgment. The district court denied plaintiffs' motion on November 30, 2023. Doc. 3755 (A38-46). On December 19, 2023, plaintiffs filed a notice of cross-appeal challenging the district court judgment and its November 30 post-judgment order, Doc. 3759, which was timely because it was filed within 30 days of the post-judgment order, *see* 28 U.S.C. § 2107(a); Fed. R. App. P. 4(a)(4)(A)(iv). Additionally, defendants' notice of appeal became effective upon the entry of the district court's post-judgment order. *See* Fed. R. App. P. 4(a)(4)(B). This court consolidated the appeals for briefing and disposition, 7th Cir. No. 23-3388, 7th Cir. Doc. 6, and has jurisdiction over the consolidated appeals under 28 U.S.C. § 1291.

## ISSUES PRESENTED FOR REVIEW

1.      Whether the district court correctly dismissed plaintiffs' action for lack of subject matter jurisdiction because the litigation terminated once the court's authority to enforce the consent decree expired under the express terms of the decree, and a case or controversy no longer existed between the parties.

2.      Whether the district court erroneously concluded that defendants agreed to relinquish the $1.9 million deferred fee award, which was based solely on the district court's since-vacated permanent injunction order, when the parties had merely agreed that the funds could be disbursed while the fee dispute was pending.

## STATEMENT OF THE CASE

**Introduction**

Over 16 years ago, plaintiffs commenced this action under 42 U.S.C. § 1983, asserting that the mental health services provided to individuals in Department custody violated the Eighth and Fourteenth Amendments, the ADA, and the Rehabilitation Act. *See* Doc. 1; Doc. 260 at 23-25. The district court certified a class consisting of all current and future adult inmates under the Department's supervision who were or should have been identified as in need of mental health treatment. Doc. 252. In May 2016, the district court approved a comprehensive settlement agreement, later determined to be a consent decree, that resolved all claims asserted in the operative complaint, Doc. 711-1, and ordered that the case would remain on its docket until "the terms of the settlement agreement [were] met," at which time, the matter would be "dismissed with prejudice," Doc. 710 (A18).

In late 2017, plaintiffs moved to enforce the consent decree, asserting that defendants had failed to comply with five areas of relief. The district court granted plaintiffs' motion and issued a permanent injunction, finding that defendants acted with deliberate indifference to a risk of serious harm in violation of the Eighth Amendment. The district court also concluded that its order triggered defendants' obligation under the decree to pay a deferred fee award.

This court reversed the district court's permanent injunction order on appeal. After clarifying that the parties' settlement agreement was a consent decree, this court determined that the district court's finding of deliberate indifference was clearly erroneous, and its permanent injunction order exceeded the Prison Litigation

Reform Act's ("PLRA") permissible scope of relief. After the mandate was issued, the district court denied plaintiffs' remaining requests for further relief under the consent decree, placed the case on its active docket, and allowed the decree to expire under its own terms. The court also denied in part and granted in part defendants' request for a refund of the attorney fee award it had paid based on the now-vacated injunction. After allowing plaintiffs to amend their complaint, the district court, on its own motion, concluded that it lost subject matter jurisdiction over the case when its authority to enforce the consent decree expired. These consolidated appeals followed.

**The Terms of the Consent Decree**

The consent decree provided for extensive reforms to the Department's mental health delivery system. *See* Docs. 711-1, 3051. The parties agreed they had engaged in arms-length settlement negotiations to resolve "all claims raised in this action as set forth in Plaintiffs' Third Amended Complaint," and that the decree was "fair, reasonable, and adequate to protect the interests of all parties." Doc. 711-1 at 2; Doc. 3051 at 8. The consent decree set detailed requirements for numerous aspects of mental health care in the prison system, Doc. 711-1 at 6-25; Doc. 3051 at 11-26, and provided for the hiring of a monitor to assess the Department's compliance with the decree's requirements and prepare annual reports and status updates, Doc. 711-1 at 25-28; Doc. 3051 at 26-28.

Relevant here, section XXIX of the consent decree contained a dispute resolution procedure, under which the parties first had to confer informally regarding

any allegations of noncompliance and the appropriate response. Doc. 711-1 at 29; Doc. 3051 at 29. If those efforts proved unsuccessful, either party could seek relief from the district court. Doc. 711-1 at 29 (section XXIX(d)); Doc. 3051 at 29 (same). If the court found that defendants were "not in substantial compliance" with a provision of the consent decree, the court could enter an order, "but not an order of contempt, that [was] designed to achieve compliance." Doc. 711-1 at 30 (section XXIX(f)); Doc. 3051 at 30 (same). But under section XXIX(g) of the decree, any order granting relief had to include a finding that the ordered relief was "narrowly drawn, extends no further than is necessary to correct the violation of the federal right, and is the least intrusive means for doing so." Doc. 711-1 at 30; Doc. 3051 at 30; *see* 18 U.S.C. § 3626(a)(1)(A) (limiting authority to issue prospective relief as to prison conditions). The court could then remedy a failure to comply with such an order by exercising its equitable or remedial powers or return the case to its active docket. Doc. 711-1 at 30 (section XXIX(i)); Doc. 3051 at 30.

The consent decree also limited the duration of the district court's jurisdiction over compliance. Doc. 711-1 at 29-30 (section XXIX(e)); Doc. 3051 at 29-30 (same). Under section XXIX(e), the consent decree was set to terminate three years after the later of the "approval date" (May 23, 2016) or the "budget contingent approval date" (July 6, 2017) for any provision for which there was "no outstanding determination that Defendants are not in substantial compliance." Doc. 711-1 at 29-30. Regarding any provision for which the court had made a finding of no substantial compliance,

the court could extend its jurisdiction to enforce that provision for up to two additional years after the no-substantial-compliance finding. *Id.*

The consent decree also provided that defendants would pay attorney fees to plaintiffs as though plaintiffs were the prevailing party in the action. Doc. 711-1 at 32 (section XXXIII). Under the decree, the district court would determine the amount of fees and costs, but not to exceed $6 million. *Id.* One-half of that fee amount was due within 120 days of the approval date, while the remaining one-half would become due only "if the court enter[ed] an order" to enforce a provision of the consent decree upon a finding that relief was necessary, narrowly tailored, and the least intrusive means of correcting a federal law violation. *Id.* at 30, 32. Ultimately, the parties agreed in the 2017 fee agreement to an attorney fee award of $3.8 million — with $1.9 million immediately due and the remaining $1.9 million ("deferred fee award") due only if a remedial order was entered under section XXIX(g) of the decree. Doc. 1091 at 2-3. The court approved the 2017 fee agreement. Doc. 1211.

**The District Court's Preliminary Injunction and Plaintiffs' Request for Attorney Fees.**

Meanwhile, in October 2017, plaintiffs sought a preliminary injunction to enforce the consent decree, arguing that defendants had failed to substantially comply with five areas of concern. *See* Doc. 1559 at 11-30. Following an evidentiary hearing, the district court found that defendants had failed to comply with the five parts of the decree, resulting in unconstitutional care for the class, Doc. 2070 at 21-32, and entered a preliminary injunction, *id.* at 39-42.

In July 2018, after the district court entered the preliminary injunction, plaintiffs moved for an order requiring defendants to pay the deferred fee award under the 2017 fee agreement, arguing that the preliminary injunction was an "order" under section XXIX(g) of the consent decree. Doc. 2233 at 2. Defendants responded that the request for fees was premature because the court had not found a violation of any federal right, but only a "likelihood of success" in showing such a violation. Doc. 2276 at 1-2.

**The Permanent Injunction Order and Motions Regarding Attorney Fees.**

Plaintiffs then moved to convert the preliminary injunction into a permanent injunction. Doc. 2112. In October 2018, the court granted the motion and entered a permanent injunction. Doc. 2460. Regarding it jurisdiction, the court concluded that under sections XXIX(f) and (g) of the consent decree, it had authority to enter remedial orders, including a permanent injunction order, while leaving the consent decree "intact." *Id.* at 8-9. On the merits, it determined that plaintiffs had met their burden of showing an ongoing Eighth Amendment violation and that the injunction's terms satisfied the needs-narrowness-intrusiveness requirement of section XXIX(g) of the decree. *Id.* at 9-10, 45. Regarding attorney fees, the court concluded that the deferred fee award became due when it issued the permanent injunction. *Id.* at 49.

A month later, plaintiffs moved for an order requiring payment of the deferred fee award. Doc. 2487. Defendants again opposed the motion, arguing among other things, that such an order would be premature because the district court had not yet issued a final, appealable order. Doc. 2501 at 2-6.

In December 2018, the court issued an addendum order summarizing its findings that defendants had been deliberately indifferent to the class's serious medical needs and that the injunctive relief was necessary, narrowly tailored, and the least intrusive means of correcting the constitutional violation, as required by section XXIX(g) of the consent decree. Doc. 2516. The court also concluded that the consent decree, by its terms, remained in effect because "the Parties agreed to litigate certain portions of their dispute if compliance with the agreement did not occur — and only those portions were litigated." *Id.* at 16. As to those provisions, the court ordered that the permanent injunction would remain in effect "for a period of two years from the date of this Order." *Id.* at 14. Lastly, the court ordered defendants to pay the deferred fee award, concluding that "all conditions ha[d] been met for the award of fees" and there was "no reason to defer the entry of the fees" pending an appeal. Doc. 2516 at 18.

After seeking reconsideration or modification of the October and December 2018 orders under Fed. R. Civ. P. 52 and 59, Doc. 2540, defendants appealed the district court's judgment, Doc. 2544, and moved for a stay of the payment order, Doc. 2543. The court denied their motion for reconsideration in part, denied the stay motion, and awarded plaintiffs an additional $873,002 in attorney fees and expenses as the prevailing party on their motions to enforce the agreement and for injunctive relief. Doc. 2579. Defendants filed a notice of appeal from that order, Doc. 2583, and sought a stay of the attorney fee award pending appeal. Doc. 2591. The district court

denied the motion, reasoning that plaintiffs had represented that the funds would be held in escrow pending resolution of the appeals, Doc. 2616; *see* Doc. 2610 at 2.

On appeal, this court issued a limited remand allowing the district court to enter the permanent injunction as a separate document, as required by Fed. R. Civ. P. 65. On April 22, 2019, the district court entered the final permanent injunction order memorializing its prior injunction and post-judgment order. Doc. 2633. The permanent injunction order stated that it would remain in effect for a two-year period "from the date of this Order," until April 22, 2021. *Id.* at 61. Defendants appealed that order as well, Doc. 2656, and this court consolidated the appeals, 7th Cir. No. 19-1145 Doc. 31.

In January 2020, while the appeal was pending, the parties executed an "agreement concerning Rasho fee payments," ("2020 fee agreement") which provided that defendants would pay the deferred fee award to Dentons US LLP, who would hold the funds in trust, without making any distribution of funds among the three sets of attorneys serving as plaintiffs' attorneys, until either (a) the parties had "enter[ed] a written agreement that resolve[d] their dispute about the $1.9 million payment"; or (b) the appeal was resolved in plaintiffs' favor and the decision had become final. Doc. 3601-1 at 2. The 2020 fee agreement further provided that "[i]n the event of an order that determines that plaintiffs are not presently entitled to the $1.9 million, Dentons will return the $1.9 million to the State within 14 days after termination of any additional appellate review." *Id.* In February 2020, defendants' counsel sent a letter to plaintiffs' counsel confirming that defendants had reached an

agreement with plaintiffs "resolv[ing] their dispute about the $1.9 million payment under the parties' settlement agreement" and confirmed that "the $1.9 million may be released from the Dentons US LLP trust account and distributed among plaintiffs' counsel." Doc. 3601-2. Defendants' counsel did not alter the part of the fee agreement requiring Dentons to return the $1.9 million in the event of an order determining that plaintiffs were not entitled to that payment. *See id.*

**The District Court Extended its Jurisdiction Over the Consent Decree**

In June 2020, while defendants' appeal was pending, the court approved an amended consent decree. *See* Doc. 3051. In the amended decree, the parties agreed, among other things, to revise section XXIX(e) governing the court's jurisdiction. *Id.* at 3-4, 29-30. Specifically, the amended consent decree provided that the court's jurisdiction over any provision for which the district court found defendants to be in "substantial compliance" would end on April 23, 2021. *Id.* at 29. But the court could, in its discretion, extend its jurisdiction for up to two years over any provision for which it found that defendants had not achieved substantial compliance. *Id.* at 3-4, 30. And for any provision that was already the subject of a judicial enforcement order, the court's jurisdiction would terminate in accordance with the permanent injunction order (if applicable) or with the termination provisions of the PLRA. *Id.* at 30.

In January 2021, plaintiffs moved to extend the district court's jurisdiction over the amended consent decree, arguing that defendants' invocation of the force majeure clause upon the onset of the Covid-19 pandemic delayed defendants'

compliance efforts and thus warranted a corresponding extension of enforcement jurisdiction. Doc. 3239 at 1-2. The parties ultimately agreed to a one-year extension of the court's jurisdiction. *See* Doc. 3263 at 2. Pursuant to that agreement, the district court entered an agreed order (1) terminating the court's jurisdiction with respect to 71 provisions for which the parties agreed that defendants had achieved substantial compliance, Doc. 3266 at 2-6, and (2) extending the court's jurisdiction over 45 provisions until April 22, 2022, *id.* at 2, 7-9; *see* Doc. 3739 at 4. For 41 of those 45 provisions, the parties disputed whether defendants had achieved substantial compliance, and the remaining 4 provisions were extended to facilitate continued monitoring. Doc. 3266 at 2, 7-9. Separately, over defendants' objection, Doc. 3279, the court extended the duration of the permanent injunction order, which by its terms was also set to expire on April 23, 2021, until the resolution of defendants' appeal, Doc. 3284 at 3, 8-9.

## The Permanent Injunction was Vacated and the District Court Declined to Further Extend Its Jurisdiction under the Consent Decree

In January 2022, this court issued a decision reversing the district court's permanent injunction order and vacating the injunctive relief. *Rasho*, 22 F.4th at 705. This court determined that the evidence did not support a finding of deliberate indifference, but instead established that the Department had "made reasonable efforts to cure the deficiencies in the five areas identified in the plaintiffs' claim," even if their efforts had fallen short of substantial compliance with the consent decree. *Id.* at 710. As an independent basis for reversal, this court also concluded that the permanent injunction exceeded the limits on remedial relief permitted by the

PLRA. *Id.* at 711-12. Specifically, the permanent injunction order "imposed specific benchmarks lifted from the [consent decree] without evidence that those plans matched the constitutional floor" of mental health care. *Id.* at 713. This court also clarified that the parties had entered into a consent decree, not a private settlement agreement, under the PLRA because their agreement called for judicial enforcement of its terms, instead of requiring the parties to address any violations solely by "restarting the litigation on the merits." *Id.* at 707 n.2 (citing *Doe v. Cook Cnty.*, 798 F.3d 558, 562-63 (7th Cir. 2015)).

The next day, plaintiffs moved in the district court for a finding of no substantial compliance on 40 provisions of the consent decree and to extend its jurisdiction over those provisions for an additional two years pursuant to section XXIX(e) of the decree. Doc. 3484 at 2-3. The parties agreed to a brief extension of jurisdiction, and the district court entered an unopposed order extending its jurisdiction to enforce the 40 disputed provisions through July 22, 2022. Doc. 3508 (A19-20). Defendants, however, opposed any further extensions, arguing that because the agreement was a consent decree, the court could not modify its terms under 18 U.S.C. § 3626(a)(1)(A), without making PLRA findings, Doc. 3537 at 5-8, and thus could not extend its jurisdiction based solely on the monitor's findings, *id.* at 10-12. Instead, under the PLRA, plaintiffs had to show that defendants were violating their federal rights. *Id.* Defendants added that because most of the 40 provisions at issue involved the same areas of concern that were addressed in *Rasho*, this court's decision conclusively established that the requirements plaintiffs sought

to enforce exceeded the scope of relief permitted under section 3626(a)(1)(A). *Id.* at 11-13. Plaintiffs moved to strike defendants' response, arguing that the agreement was not a consent decree and that judicial estoppel precluded defendants from asserting that it was. *See* Doc. 3539 at 3-8.

While plaintiffs' motions to extend jurisdiction and to strike defendants' response was pending, the parties agreed to a negotiation plan, pursuant to which they agreed to attempt to resolve plaintiffs' allegations of noncompliance "through a new consent decree and/or private settlement agreement consistent with the requirements of the [PLRA]." Doc. 3580 at 1 (A21). Under their plan, the parties also agreed that if they did not reach an agreement by July 22, 2022, the "matter will be returned to the active trial docket." *Id.* at 2 (A22). The parties did not reach an agreement.

On July 21, 2022, the district court denied plaintiffs' motion to extend its jurisdiction over the consent decree. Doc. 3597 at 12 (A36). The court reiterated its prior conclusion that the parties had entered into a consent decree under the PLRA, which meant that the court could not modify the decree by extending its jurisdiction without first making PLRA findings under 18 U.S.C. §3626(a)(1)(A). *Id.* at 5-9 (A29-33). And, the court determined, plaintiffs had not argued, let alone shown, that defendants' alleged lack of substantial compliance with any provision of the decree constituted a federal law violation. *Id.* at 8-9 (A32-33). Alternatively, the court determined that it would decline to exercise its discretionary power to extend its jurisdiction because this court had already determined that defendants have not been

deliberately indifferent to the class's serious mental health needs. *Id.* at 9 (A33). In its order, the district court stated that the case would be placed on the court's active docket. Doc. 3681 at 3.

**Defendants' Request for a Refund of the Deferred Fee Award**

In the meantime, upon the expiration of the deadline to file a certiorari petition from this court's decision in *Rasho*, defendants moved the district court for an order requiring plaintiffs to refund the $2.773 million in attorney fees and expenses that the court had ordered them to pay. Doc. 3601. Regarding the deferred fee award, they argued that under the plain terms of the consent decree, the deferred fee award became due only upon the issuance of a court order under section XXIX(g). *Id.* at 2. And, when this court reversed the district court's judgment and vacated the permanent injunction order, it rendered the district court's only section XXIX(g) order, as well as any orders that were based on it, void. *Id.* at 6-7; Doc. 3616 at 1-2. Defendants further argued that repayment of the $1.9 deferred fee award also was consistent with the January 2020 agreement, which addressed the timing for distributing those funds, but reflected the parties' understanding that the funds would have to be returned if defendants obtained an order "that determines that plaintiffs are not presently entitled to the $1.9 million." Doc. 3601-1 at 2; Doc. 3616 at 3-6.

Plaintiffs countered that the parties' February 2020 agreement permitting Dentons to disburse the funds demonstrated defendants' agreement that the funds would not need to be repaid. Doc. 3610 at 1. Additionally, plaintiffs argued that

because the consent decree made the deferred fee award due "immediately" after the court entered "an order pursuant to Section XXIX(g)," it reflected the parties' agreement that the fees would become due upon a district court order entered under that provision, even if the order was later overturned. Doc. 3610 at 2-3. Plaintiffs also asserted that defendants waived any protest to the fees by not challenging the fee award in the prior appeal. *Id*. at 7-8.

The district court issued an order allowing plaintiffs to retain the deferred fee award but requiring them to return the section 1988 fees. Doc. 3629 (SA1-9). Relevant here, the court interpreted defendants' February 2020 letter as reflecting defendants' agreement that the funds would be distributed with no expectation of repayment. *Id*. at 5 (SA5). The court also reasoned that the January 2020 agreement required plaintiffs to return the funds only upon an "order that determines that plaintiffs are not presently entitled to the $1.9 million," which defendants did not obtain on appeal of the permanent injunction order. *Id*. at 5-6 (SA5-6). Alternatively, the court concluded that the consent decree's only requirement for plaintiffs to obtain the deferred fee award was to initially succeed at the district court level. *Id*. at 6 (SA6).

Defendants appealed the attorney fee order. Doc. 3649.

**The District Court's Orders Addressing its Jurisdiction**

In September 2022, after the case was returned to the active docket, plaintiffs filed a fourth amended complaint, adding the Governor as a defendant and asserting new claims, including a race-based equal protection claim and a due process claim

under the Fourteenth Amendment. Doc. 3641. On defendants' motion, the district court dismissed the Governor as an improper party for purposes of prospective injunctive relief and dismissed without prejudice plaintiffs' Fourteenth Amendment claims. Doc. 3681. Plaintiffs then filed a fifth amended complaint, Doc. 3703, and defendants again filed a partial motion to dismiss, Doc. 3617, and an answer, Doc. 3616.

While defendants' motion was pending, the district court *sua sponte* issued an order that raised "concerns relating to jurisdiction and standing" regarding the action. Doc. 3739 at 1. First, the court explained that the consent decree was a final, conclusive judgment on all claims in the litigation that left the court with jurisdiction to address only matters of enforcement for a limited term. *Id.* at 6. And although the court had extended its jurisdiction over the provisions addressed in the permanent injunction order, this court then vacated the order finding an Eighth Amendment violation and did not remand the matter for further proceedings, which terminated the court's jurisdiction over those provisions. Doc. 3739 at 7. The court stayed the case and asked the parties to brief the issue. *Id.* at 7-8.

The parties filed simultaneous jurisdictional memoranda. *See* Doc. 3741 (plaintiffs); Doc. 3742 (defendants). Plaintiffs argued that the district court retained jurisdiction to hear its amended complaint for four reasons: First, they contended that defendants' interlocutory appeal of the permanent injunction order, which they claimed was "an enforcement order and not a decision on the underlying case," did not affect the court's jurisdiction over the consent decree. Doc. 3741 at 5-7. Second,

they argued that the consent decree did not resolve their claims against defendants, but instead only "provided a mechanism to resolve the claims." *Id.* at 7-8. Third, they asserted that the court returned the case to its active docket on July 21, 2022, when, according to plaintiffs, the consent decree remained in effect. *Id.* at 8-11. Fourth, they maintained that the consent decree either was void because it did not comply with the PLRA, in which case it did not resolve their claims, or it should be considered "a failed private settlement that was both rejected by the Court after disputes over non-compliance and terminated by the parties in anticipation of litigation." *Id.* at 11-13.

Defendants argued that the district court lost subject matter jurisdiction over the case on July 22, 2022, when the consent decree expired, for three reasons. Doc. 3742. First, the consent decree was a final judgment disposing of all claims, leaving only matters of enforcement to the court. *Id.* at 5-6. Second, after the vacatur of the permanent injunction order and the district court's July 2022 decision not to extend its jurisdiction to enforce the consent decree, the court's enforcement jurisdiction also terminated, which ended the case. *Id.* at 7-8. Third, the consent decree ended according to its terms on July 22, 2022, when the court declined to extend its jurisdiction, leaving nothing for the court to enforce. *Id.* at 8-9. Defendants thus argued that no case or controversy remained for the court to address. *Id.* at 2.

After a hearing, the district court dismissed the case with prejudice as to all claims embodied in the consent decree and without prejudice as to any new claims asserted in the fifth amended complaint. Doc. 3745 (A1). Consistent with this

court's decision in *Rasho*, the court concluded that the parties' agreement was a consent decree, which finally and conclusively resolved all the claims against defendants, leaving only post-judgment issues of enforcement to the district court. *Id.* at 9 (A9). The court further concluded that under section XXIX(e) of the decree, its enforcement jurisdiction ended on May 23, 2019, except with respect to the provisions identified in its permanent injunction order, where its jurisdiction extended until this court vacated its finding of a federal law violation in January 2022. *Id.* at 9-12 (A9-12). Although the district court questioned whether it had jurisdiction even to approve the amended consent decree and subsequent agreed orders to extend its jurisdiction, it concluded that its jurisdiction terminated, at the latest, by July 22, 2022, when the last agreement to extend its jurisdiction expired and there were no outstanding findings of a federal rights violation. *Id.* at 13-14 (A13-14).

Plaintiffs unsuccessfully moved to vacate the judgment under Fed. R. Civ. P. 59(e), arguing that the court erred as a matter of fact when it determined that the May 2016 consent decree expired in May 2019 because under section XXIX(e), the court's jurisdiction terminated three years from the later of its approval date or the "budget contingent approval date," the date on which the State of Illinois passed a budget, which was July 6, 2017. Doc. 3750 at 2. Plaintiffs contended that the later termination date was significant because it meant that the district court still had jurisdiction to modify the consent decree when it approved the amended decree. *Id.* at 3-5. Although the court acknowledged that factual error, it concluded that the

error had no legal significance because, as it had previously concluded, the consent decree expired and the court's jurisdiction concluded by July 22, 2022.  Doc. 3755 at 3-6 (A40-43).

After filing a renewed Fed. R. Civ. P. 59(e) motion for relief from the judgment, Doc. 3756, plaintiffs cross-appealed the judgment, Doc. 3759.  The court construed plaintiffs' motion as a Fed. R. Civ. P. 60(b) motion for relief from the judgment and denied it because plaintiffs merely "rehash[ed] arguments that the Court ha[d] previously considered and rejected."  Doc. 3764.   This court consolidated the appeals for briefing and disposition.  7th Cir. Doc. 6.

## SUMMARY OF ARGUMENT

The district court properly dismissed plaintiffs' action under Fed. R. Civ. P. 12(h)(3) because this lawsuit concluded by July 22, 2022, when the court's jurisdiction to enforce the consent decree expired. The consent decree was a final judgment on the merits of plaintiffs' claims, leaving the court to address only post-judgment enforcement matters. And by July 22, 2022, with plaintiffs' motions to enforce and extend jurisdiction under the consent judgment resolved, the decree expired by its own terms. As the district court concluded, its jurisdiction over the action therefore ended. Because the court was not enforcing an ongoing injunction or consent decree, it lacked jurisdiction over plaintiffs' fifth amended complaint.

The district court erred, however, when it denied defendants' motion to recoup the $1.9 million deferred fee award that they had paid based on the issuance of the permanent injunction order. Because this court vacated that order, rendering it null and void, plaintiffs did not have "an order pursuant to section XXIX(g)" of the consent decree that triggered any obligation to pay the deferred fee award. Nor did defendants acquiesce to plaintiff's entitlement to keep the fees by permitting their distribution during the pendency of their appeal. By the plain terms of the January 2020 agreement, the parties agreed that the deferred fee award would have to be refunded if defendants prevailed on appeal, regardless of whether the fees had been disbursed.

**ARGUMENT**

## I. This court reviews the district court's dismissal of the action *de novo*.

This court reviews the dismissal of an action under Fed. R. Civ. P. 12(h)(3), which requires the court to dismiss an action "if the court determines at any time that it lacks subject matter jurisdiction," *de novo*. *See Doe v. Holcomb*, 883 F.3d 971, 975 (7th Cir. 2018). Additionally, to the extent the court's analysis involves its interpretation of the consent decree, the court considers the decree's plain language *de novo* but reviews any ancillary findings that the district court made to resolve ambiguities in the plain language for clear error. *McCoy v. Chi. Heights Election Comm'n*, 880 F.3d 411, 414 (7th Cir. 2018). This court has also recognized, however, that where, as here, the district judge "had involvement in [the decree's] creation and oversaw the litigation for an extended period of time," his interpretation of the decree is entitled to some deference. *Id*.

## II. The district court's jurisdiction over this lawsuit terminated when its enforcement authority under the consent decree expired.

The district court correctly determined that it lost subject matter jurisdiction over this action by July 22, 2022, when its enforcement authority under the consent decree expired. Doc. 3745 at 16-17 (A16-17). As a preliminary matter, plaintiffs do not challenge the district court's conclusion that the settlement agreement was a consent decree. Doc. 3597 at 5-7 (A29-31); Doc. 3745 (A14-17). Nor could they. As this court has explained, if an agreement is "judicially enforceable" — that is, if the court may provide relief for a violation "other than restarting the litigation on the merits" — it must be "treated as a consent decree" under the PLRA. *Rasho*, 22 F.4th

at 707 n.2; *see* 18 U.S.C. § 3626(g)(1), (6); *Doe*, 798 F.3d at 562-63.  Here, the agreement contained dispute resolution procedures (section XXIX) under which the court retained jurisdiction to issue orders "but not an order of contempt, designed to achieve compliance," without restarting the litigation.  Doc. 711 at 29-30.  As this court concluded, because those supplemental procedures were available to the parties, the agreement was a consent decree.  *Rasho*, 22 F.4th at 707 n.2.

## A.     The consent decree was a final judgment of plaintiffs' claims.

A consent decree has the attributes of both a judicial decree and a contractual agreement between the parties.  *South v. Rowe*, 759 F.2d 610, 613 (7th Cir. 1985). "[I]n exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with the litigation."  *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971).  And, when the court approves a consent decree, "it is the parties' agreement that serves as the source of the court's authority to enter any judgment."  *United States v. Alshabkhoun*, 277 F.3d 930, 934 (7th Cir. 2002).

As a judicial decree, a consent decree operates as a final judgment that fully resolves the plaintiffs' claims.  *See Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (a consent decree is "an agreement . . . enforceable as a judicial decree that is subject to the rules generally applicable to other judgments and decrees"); *Jones-El v. Berge*, 374 F.3d 541, 543 (7th Cir. 2004) ("consent decree itself was a final judgment for purposes of [18 U.S.C.] § 1291"); *Carver v. Condie*, 169 F.3d 469, 472 (7th Cir. 1992) (consent decree resolved "all claims against all parties"); *see also Dougan v.*

*Singletary*, 129 F.3d 1424, 1426 (11th Cir. 1997) (explaining that "consent decrees are final judgments," even though the district court retains jurisdiction to enforce them and, in limited circumstances, may modify them). Thus, as with any judgment, a consent decree extinguishes the plaintiffs' claim, "which merges into the judgment granting relief." *Cooper v. Fed. Res. Bank of Richmond*, 467 U.S. 867, 874 (1984). In other words, the consent decree becomes an enforceable final judgment "subject to the rules generally applicable to other judgments and decrees." *Gates v. Shinn*, 98 F.3d 463, 468 (9th Cir. 1996); *see also Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 391 (1992) ("consent decree is a final judgment that may be reopened only to the extent that equity requires").

Under this precedent, the consent decree here terminated the litigation between plaintiffs and defendants, subject to the parties' agreement to confer limited jurisdiction on the district court to resolve post-judgment issues according to the consent decree's terms. The decree itself confirmed that the parties "have reached an agreement for settling this litigation" that would "resolve the claims raised by this action as set forth in Plaintiffs' Third Amended Complaint." Doc. 711-1, at 2; Doc. 3051 at 2. Because the consent decree resolved "all claims against all parties," *Carver*, 169 F.3d at 472, it concluded the litigation subject to its terms. *See, e.g., South*, 759 F.2d at 613-14; *Satsky v. Paramount Commc'ns, Inc.*, 7 F.3d 1464, 1468 (10th Cir. 1993) (consent decree that "resolve[d] all claims between the parties" that were raised in complaint was "a final judgment on the merits" of those claims). And because the consent decree was a final judgment on the merits of plaintiffs' claims,

those claims were extinguished by, and merged with, the consent decree. *Cooper*, 467 U.S. at 874.

Of course, as with all judgments, the district court retained jurisdiction to enforce the consent decree during the period set in the decree. *See Jones-El*, 374 F.3d at 543; *Alliance to End Repression v. City of Chi.*, 356 F.3d 767, 771-72 (7th Cir. 2004); *Bogard v. Wright*, 159 F.3d 1060, 1062 (7th Cir. 1984). And a dissatisfied party could seek relief from that judgment under Fed. R. Civ. P. 60. *See Rufo*, 502 U.S. at 378; *South*, 759 F.2d at 613-14. But the district court's ongoing jurisdiction was tied exclusively to the consent decree itself, such that any associated enforcement proceedings were separate, "freestanding lawsuits" addressing post-judgment matters of compliance with the decree during its limited period of enforceability. *Jones-El*, 374 F.3d at 543. Thus, the consent decree, which was never vacated or set aside, remains a final judgment on the merits that barred a new lawsuit arising from the same dispute. *See Satsky*, 7 F.3d at 1468.

## B. The consent decree limited the scope and duration of the district court's jurisdiction to remedy alleged violations.

The consent decree reflected a carefully negotiated agreement between the opposing parties. Because consent decrees memorialize the parties' bargain for resolving the litigation, courts strictly construe their terms. *See Armour*, 402 U.S. at 681-82. As the Supreme Court has recognized, the scope of a consent decree "must be discerned within its four corners." *Id.* at 682. That is, the decree must be "construed as it is written." *Id.* Consistent with that principle, parties may negotiate limitations on the scope and duration of a consent decree. *See, e.g.,*

*E.E.O.C. v. Loc. 40, Intern. Ass'n of Bridge, Structural & Ornamental Iron Workers*,
76 F.3d 76, 80-81 (2d Cir. 1996) (decree's three-year statutory termination clause
precluded district court from exercising further enforcement jurisdiction to address
asserted violations); *Sanders v. Shell Oil Co.*, 678 F.2d 614, 617-18 (5th Cir. 1982)
(enforcing five-year limit contained in decree); *cf. Balark v. City of Chi.*, 81 F.3d 658,
663 (7th Cir. 1996) (consent decree that expires under its own terms is valid while in
effect).

That is precisely what the parties agreed to here. The consent decree's plain
terms limited the scope and duration of the district court's enforcement authority.
Specifically, section XXIX(e) of the decree provided that the court's jurisdiction
terminated three years after the later of the approval date or budget contingent
approval date with respect to "any provisions of this [consent decree] for which there
is no outstanding determination that Defendants are not in substantial compliance."
*See* Doc. 711-1 at 29-30. The amended decree and subsequent agreed order extended
the decree's duration, with the parties' agreement expiring by its own terms by July
22, 2022. Doc. 3051 at 29-30.

The consent decree also addressed the circumstances under which the
litigation would return to the district court's "active docket." That would occur only
if plaintiffs sought and obtained relief on grounds that defendants failed to (a) meet
the decree's "budget contingent" terms, Doc. 3051 at 29 (section XXIX(d)); or
(b) comply with a previously entered order enforcing the consent decree, *id.* at 30
(section XXIX(i)). Indeed, the district court recognized that it had limited ongoing

jurisdiction to supervise the remedy memorialized in the consent decree when it ordered that the matter would remain on its docket "until the terms of the [consent decree] are met," at which time the case "will be dismissed with prejudice."  Doc. 710 (A18).  And that condition was satisfied when the decree expired as contemplated in section XXIX(e), which governed the court's jurisdiction.

### C.     Once the consent decree expired by its own terms, the case terminated and the district court lost jurisdiction.

Despite acknowledging that the consent decree limited the scope and duration of the district court's enforcement jurisdiction, plaintiffs raise several arguments on appeal seeking to avoid the legal effect of that conclusion.  As noted, however, the consent decree operates as a final judgment, and plaintiffs never obtained relief from that judgment under Fed. R. Civ. P. 60(b).  The consent decree thus remains a valid judgment on the merits, such that when the court's jurisdiction to enforce that decree expired, its jurisdiction over the entire case also terminated.  Plaintiffs' arguments to the contrary lack merit.

### 1.     The parties' post-judgment negotiation plan did not expand the district court's jurisdiction over this action.

Plaintiffs argue that while the district court still had jurisdiction over the case, it approved the negotiation plan and thereby acquiesced to exercising jurisdiction over the fifth amended complaint.  AT Br. 12-14.  Plaintiffs not only misconstrue the negotiation plan, which did not modify the consent decree, but they also seek to impermissibly expand the court's subject matter jurisdiction.

To begin, plaintiffs contend that the district court failed to apprehend that its enforcement authority was properly extended through July 22, 2022, such that the

court still had enforcement authority when it approved the negotiation plan in June 2022. AT Br. 12-13. But the court's authority to approve the negotiation plan does not further plaintiffs' jurisdictional argument. The district court assumed that it had authority to (a) approve the amended consent decree, which extended its enforcement authority through April 2021, and (b) enter the agreed orders to further extend its enforcement authority beyond that date, Docs. 3266, 3508 (A19-20). Still, with those assumptions, its enforcement authority still ended on July 22, 2022. *See* Doc. 3755 at 5 (A42). By that date, this court had reversed the district court's finding of a federal law violation and vacated its permanent injunction order, *Rasho*, 22 F.4th at 709-12. As a result, the district court no longer had jurisdiction over the provisions addressed in the vacated permanent injunction order. *See* Doc. 3051 at 30 ("[a]s to relief governed by the Court's permanent injunction order (Dkt. 2633), the relief shall terminate as provided in that order, unless otherwise altered by court order"); *see also* Doc. 711-1 at 29-30 (court's jurisdiction could be extended upon a finding of no substantial compliance, but only "for a period to be ordered by the Court of not more than two (2) years").

And by July 22, 2022, the district court also had made no other findings of no substantial compliance. Doc. 3597 at 8-9 (A32-33). To the contrary, the court had denied all of plaintiffs' requests for relief, including their motion to extend the court's jurisdiction. *Id.* at 7-9; *see also* Doc. 3581 (denying motion for preliminary injunction). With no operative injunction to enforce, no pending requests for a finding of no substantial compliance, and no agreement or order further extending

the court's jurisdiction in place, the consent decree expired by its own terms on July 22, 2022, at the latest.  *See* Doc. 3051 at 29-30.

And the court's approval of the parties' negotiation plan did not alter or extend the consent decree, as plaintiffs contend.  AT Br. 14.  The negotiation plan merely articulated the parameters within which the parties would attempt to "resolve ongoing disputes regarding Plaintiffs' allegations that Defendants [were] not in substantial compliance with the [amended consent decree] and/or federal law." Doc. 3580 at 1 (A21).  To that end, the parties agreed to discuss which, if any, "aspects of the [consent decree] would continue past July 22, 2022, as part of a new consent decree and/or private settlement agreement."  *Id.*  But the parties also agreed that "all aspects of the [consent decree], including the court's jurisdiction . . . w[ould] continue as scheduled," and the court would rule on plaintiffs' then-pending motion to extend the consent decree, Doc. 3484, if no agreement was reached, Doc. 3580 at 2 (A22).  The negotiation plan therefore did not alter the consent decree.

And, although the parties agreed that, absent an agreement, "this matter will be returned to the active trial docket," their agreement did not provide a basis for extending the district court's jurisdiction beyond the life of the consent decree.  As the Supreme Court has long recognized, parties cannot "confer on federal courts subject-matter jurisdiction beyond the limitations imposed by Article III." *Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 850-51 (1986); *see Farmer v. Litscher*, 303 F.3d 840, 843-44 (7th Cir. 2002).  In the same vein, the district court's approval of the negotiation plan also could not create federal

jurisdiction beyond the consent decree's expiration. *Commodity Futures Trading Comm'n*, 478 U.S. at 850-51. Instead, the district court had a continuing duty to consider its subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Importantly, the court's jurisdictional ruling and dismissal order did not leave plaintiffs without a federal forum for any new claims not encompassed within the consent decree. As the order reflects, those claims were dismissed without prejudice and thus could be asserted in a new federal lawsuit. *See* Doc. 3745 at 1 (A1). But neither the parties' agreement to, nor the court's approval of, the negotiation plan could extend the district court's jurisdiction over this action, which concluded with the expiration of the consent decree.

> **2. This case terminated upon the expiration of the district court's enforcement authority, no matter whether the district court would have federal-question jurisdiction over the claims in the fifth amended complaint.**

Plaintiffs also accuse the district court of conflating finality for purposes of appellate jurisdiction under 18 U.S.C. § 1291 with its "original," or federal-question jurisdiction under 28 U.S.C. § 1331. AT 14-16 (citing *Carver*, 169 F.3d 469; *Corey H. v. Chi. Bd. of Educ.*, 528 F. App'x 666 (7th Cir. 2013)). But plaintiffs are the ones who misunderstand these jurisdictional principles. Consistent with *Carver*, the district court correctly concluded that although the entry of the consent decree "terminat[ed] the litigation in accordance with the settlement," the court retained jurisdiction under the decree to enter enforcement orders. *See* Doc. 3745 at 9-11 (A9-

11).  In *Carver*, this court held that the district court had supplemental jurisdiction to resolve a nonparty's objection to a citation to discover assets that could be used for payment of its judgment "as part of its overall authority to enforce the [consent] judgment."  169 F. 3d at 472.  This court also noted that it had appellate jurisdiction to review the district court's order quashing the citation, as a "final judgment" of a supplemental enforcement proceeding.  *Id.*  *Carver* thus stands for the undisputed principle that the district court may exercise supplemental jurisdiction in connection with enforcing a consent decree.  But nothing in *Carver* supports plaintiffs' assertion that the district court may exercise jurisdiction over new claims after its enforcement authority over a consent decree has expired.  AT Br. 15.

Indeed, this court rejected that proposition in *Corey H.*, concluding that once the court's enforcement authority over a consent decree had expired, the litigation had concluded.  528 F. App'x at 668-69 & n.2.  In *Corey H.*, this court dismissed the plaintiffs' appeal from a motion to vacate a consent decree as moot because the decree had expired and thus "no controversy" existed between the parties.  *Id.*  As this court recognized, at that juncture, the defendant was "no longer under any burden . . . to comply with any obligations it assumed under the expired decree," and thus the entire case concluded.  *Id.*; *see also Corey H. v. Bd. of Educ.*, No. 92 C 3409, 2013 WL 5567556, *3 (N.D. Ill. Oct. 9, 2013) (ending case after expiration of consent decree).

### 3. The consent decree disposed of all of the claims asserted in this action.

Plaintiffs next contend that although the district court's jurisdiction to enforce the consent decree expired, the court did not lose "jurisdiction over the case as a whole" and they could amend their complaint after the consent decree expired. AT Br. 16. But plaintiffs ignore that the consent decree, by its terms, disposed of all claims in the action. *See* Doc. 3051 at 8 (settlement resolved "claims made in this action as set forth in plaintiffs' Third Amended Complaint").

Plaintiffs' reliance on *Camp v. Gregory*, 67 F.3d 1286 (7th Cir. 1995), does not alter the analysis. AT Br. 16. There, this court concluded that the district court did not abuse its discretion by granting a plaintiff's motion to amend her complaint under Fed. R. Civ. P 15(a), even though the court had already dismissed the action with prejudice, because the court had the discretion (but not the obligation) to treat the plaintiff's motion as a motion under Fed. R. Civ. P. 59(e) or 60(b). *Camp*, 67 F.3d at 1289-90; *cf. Paganis v. Blonstein*, 3 F.3d 1067, 1072 (7th Cir. 1993) (district court properly declined to permit amendment to complaint after it had dismissed action with prejudice). But here, plaintiffs did not move to vacate or modify the consent judgment under Fed. R. Civ. P. 60(b), nor did the court opt to grant relief from the judgment. Indeed, the court could not do so after the consent decree had expired. *See Corey H.*, 528 F. App'x at 668-69 (appeal from motion to vacate expired consent decree was moot).

Plaintiffs' reliance on *Habitat Educ. Ctr., Inc. v. Kimbell*, 250 F.R.D. 397 (E.D. Wis. 2008), is equally misplaced. There, the district court, after entering injunctions

to enjoin a federal agency from proceeding with certain projects until it had complied with its statutory obligations, concluded that it retained jurisdiction to review and determine whether the agency had satisfied its obligations under the injunctions. *Id.* at 399-400. The court thus concluded that it also had jurisdiction to allow plaintiffs to supplement their complaint to challenge the agency's compliance. *Id.* at 400-01. Here, by contrast, plaintiffs sought to amend their complaint after the consent decree had expired and the district court's jurisdiction had ended. Because the court no longer had subject matter jurisdiction, it properly closed the case.

### 4. Plaintiffs incorrectly assert that the consent decree called for the return of their claims to the active docket.

Plaintiffs also argue that the terms of the consent decree "provided the procedural path" of returning the case to the district court's active docket, AT Br. 18, but their argument is at odds with the plain terms of the decree. The decree specified two circumstances under which the court would consider returning the case to its active docket. That remedy was available if (a) defendants failed to obtain necessary appropriations for any budget contingent provision (section XXIX(d)), or (b) plaintiffs alleged, after obtaining a court order designed to achieve compliance with the decree based upon a finding of a federal law violation under section XXIX(d), that defendants were not complying with that compliance order (section XXIX(i)). Doc. 3051 at 29-30. Neither of those circumstances applied. Plaintiffs cited no failure to obtain necessary appropriations, nor can they assert that defendants have failed to comply with any compliance order issued by the district court. Upon vacatur of the permanent injunction order, there was no longer any compliance order in place under

the consent decree.  In other words, plaintiffs have failed to demonstrate that they were entitled to any relief for any alleged failure to comply with the consent decree. As a result, plaintiffs' allegations of noncompliance did not provide a basis under the decree for returning the case to the court's active docket.

### 5. Plaintiffs erroneously contend that they were entitled to a trial on the merits regarding any matters not heard at the preliminary injunction hearing.

Plaintiffs also contend that because the permanent injunction order addressed only certain areas of compliance with the consent decree, the district court "preserved [plaintiffs'] right to a trial" on any matters that were not encompassed within that proceeding.  AT Br. 18-19 (citing Doc. 2460 at 8).  But plaintiffs misunderstand the court's order.

To begin, plaintiffs had no "right to a trial" on the merits of their claims because they settled the action by entering into the consent decree.  *See* Doc. 3051 at 8.  By doing so, both parties "waive[d] their right to litigate the issues involved in the case" pursuant to the terms of the decree.  *Armour*, 402 U.S. at 681.  Nor did the consent decree create any right to a trial based on plaintiffs' allegations of no substantial compliance.  Rather, the decree's dispute resolution provisions limited the relief available for any alleged violations, permitting the parties to "seek relief from the Court to effect substantial compliance with the [decree]," and empowering the court, during the enforcement period, to enter an "order," other than a contempt order "designed to achieve compliance," Doc. 3051 at 29-30, which included a preliminary or permanent injunction order, Doc. 2460 at 7.

And in its permanent injunction order, the district court did not create or preserve any "right to a trial" on any remaining provisions of the consent decree, as plaintiffs contend. AT Br. 19. Rather, the court explained that the entry of the permanent injunction order did not invalidate the consent decree, but instead left it "intact." Doc. 2460 at 8. As the district court observed, it did not terminate the consent decree or prevent plaintiffs from seeking further relief under the terms of the decree. *See* Doc. 3597 at 12 (A36). In other words, the decree's dispute resolution procedures continued to govern any further allegations of noncompliance, until the court's jurisdiction expired. Indeed, plaintiffs filed a separate preliminary injunction motion, Doc. 3417, which the court denied, concluding that they were unlikely to succeed in establishing a federal rights violation, Doc. 3581 at 12-22. In the same vein, the litigation continued after this court's mandate issued because the district court had entered orders extending the duration of the consent decree until July 2022, not because the parties (or the district court) expected a full trial on the merits to follow. But once the district court's jurisdiction over the decree expired, the case terminated along with it. *See Corey H.*, 528 F. App'x at 668.

### 6. Plaintiffs erroneously contend that placement of the case on the active docket extended the court's jurisdiction.

The district court's docket entry directing that its case would be returned to the "active docket" on July 21, 2022, did not modify the consent decree or confer the court with jurisdiction over plaintiffs' claims, as they argue. AT Br. 18, 22, 24. Even if (as the court assumed) the court's jurisdiction extended through July 22, 2022, the court still lost jurisdiction when its enforcement authority expired because it could no

longer provide any relief on plaintiffs' claims, which were fully resolved by the consent decree. A court "does not have inherent power to enforce an order that has expired." *Local 40*, 76 F.3d at 80-81. In *Local 40*, for example, the Second Circuit concluded that once a consent decree expired pursuant to its termination provision, the parties were "released from the court's continuing jurisdiction" and its enforcement authority. *Id.* at 81. At that point, the court "no longer possessed jurisdiction over the action at all." *AngioDynamics, Inc. v. Biolitec AG*, 823 F.3d 1, 6 (1st Cir. 2016). And here, regardless of whether the case was placed on the active docket, the court still lost jurisdiction over the action when its enforcement authority expired. *See Nix v. Billington*, 448 F.3d 411, 415-16 (D.C. Cir. 2006) (court retained jurisdiction to hear enforcement claim that was already pending when the court-oversight period of court-approved settlement agreement ended).

In sum, the district court correctly determined that it lost jurisdiction over this action when its enforcement authority over the consent decree expired. At that point, the litigation terminated by operation of the decree, leaving no case or controversy between the parties.

## III. Because the consent decree was a final judgment that was not set aside under Fed. R. Civ. P. 60(b) while in force, the court could not extend its jurisdiction over the fifth amended complaint.

As discussed, the consent decree settled all claims encompassed in plaintiffs' third amended complaint and thus bars the reopening of plaintiffs' action. Plaintiffs nonetheless contend that jurisdiction exists because the district court stated that the case would be "returned to the active docket for scheduling," Doc. 3597 at 12 (A36),

suggesting that may be interpreted as an order setting aside the judgment, AT Br.
23-25. But plaintiffs did not make that argument before the district court, *see* Doc.
3741, and thus forfeited it, *see Love v. Vanihel*, 73 F.4th 439, 449 (7th Cir. 2023)
(arguments not raised in circuit court are not preserved on appeal).

Forfeiture aside, courts do not permit plaintiffs' proposed exercise of
revisionist history. *Cf. Roman Catholic Archdioceses of San Juan v. Acevedo
Feleciano*, 589 U.S. 57, 65 (2022) (courts "cannot make the record what it is not");
*Transamerica Ins. Co. v. South*, 975 F.2d 321, 325-26 (7th Cir. 1992) (courts cannot
"rewrite history" through their orders). Despite this court's clarification that the
agreement was a consent decree in January 2022, *Rasho*, 22 F.4th at 707 n.2, and the
district court's subsequent rulings to the same effect, *see* Doc. 3562 at 54-55,
plaintiffs did not seek to set aside the consent decree under Fed. R. Civ. P. 60(b).
Instead, they continued with efforts to enforce the consent decree, including by
pursuing their motion to extend the court's jurisdiction. *See* Doc. 3597 (A29-33). As
a result, when the district court's term of oversight ended, the court correctly
concluded that it lost jurisdiction over the action. Doc. 3745 at 17 (A17).

### A. With no ongoing enforcement jurisdiction, the district court lacked jurisdiction to permit the amended pleading.

Plaintiffs nonetheless argue that the district court had federal- question
jurisdiction over the claims asserted in their fifth amended complaint and therefore
should have permitted them to amended or supplement their complaint under Fed.
R. Civ. P. 15. AT Br. 23-26. They assert that courts "in analogous cases" have
permitted supplemental pleadings alleging continuing violations after the entry of a

consent decree. *Id.* at 26-33. But plaintiffs ignore a key distinction — in those cases, the district court had jurisdiction to enforce an ongoing consent decree. *See United States v. Northlake*, 942 F.2d 1164, 1168-69 (7th Cir. 1991); *United States v. Ohio*, No. 08-cv-00475, 2014 U.S. Dist. Lexis 42159, **3, 5 (S.D. Ohio Mar, 28, 2014) (district court permitted supplemental complaint relating to claims that were subject of ongoing consent decree); *Kimbell*, 250 F.R.D. at 402-03. In *Northlake*, for example, this court concluded that the district court abused its discretion in denying the plaintiff's request for supplemental relief related to a consent decree because the supplemental allegations involved conduct "already embraced by a consent decree" that the district court was still overseeing. 942 F.2d at 1168-69. Similarly, in *Ohio*, the district court granted the government leave to file a supplemental complaint raising new claims related to its ongoing supervision of a consent decree. 2014 U.S. Dist. Lexis 42159, at *5.

*Kimbell* is also inapposite. There, as discussed, the district court permitted plaintiffs to supplement their complaint to add new allegations of violations of federal law because a federal agency's 2006 environmental impact reports did not satisfy the court's prior injunction requiring the agency to refrain from undertaking its forestry projects until it had produced reports that complied with the applicable federal law. *Kimbell*, 250 F.R.D. at 399, 401-03. The court concluded that it had jurisdiction to permit the supplemental complaint because plaintiffs, through their new allegations regarding the 2006 reports sought relief consistent with a favorable judgment, or "to enforce ongoing injunctions or consent decrees." *Id*.

Here, unlike in *Kimbell*, plaintiffs did not seek to supplement their complaint, as they contend. AT Br. 27-28. Rather, they filed an amended complaint, Doc. 3702, which required them to obtain relief from the judgment under Fed. R. Civ. P. 60(b), *see Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("[o]nce final judgment has been entered in a case, the district court lacks jurisdiction to entertain a motion for leave to amend the complaint unless the plaintiff also moves for relief from the judgment.") (cleaned up). They cannot avoid that result by recasting their pleading as a supplemental complaint. *See Roman Catholic Archdioceses of San Juan*, 589 U.S. at 65 (courts "cannot make the record what it is not").

Additionally, unlike the plaintiffs in *Kimbell*, plaintiffs here settled their claims through a consent decree. Doc. 711-1 at 2. And the district court was no longer overseeing an ongoing injunction or consent decree when plaintiffs filed their amended complaint. Contrary to plaintiffs' assertion, the consent decree did not require the court to "make a determination that the terms of the [consent decree] had been met before it would dismiss the case." AT Br. 31. Rather, under section XXIX(e) of the decree, the court's jurisdiction to enforce the consent judgment (as extended) expired on a specific date, by its own terms. Not only that, but this court's decision in *Rasho* reversed the district court's findings of no substantial compliance in the areas of concern addressed in the permanent injunction order, terminating the district court's jurisdiction over those terms to the extent that jurisdiction was premised on the permanent injunction. *See* Doc. 3051 at 29-30. And to the extent the court's jurisdiction was premised on the right to enforce the ongoing consent

judgment, the court's jurisdiction expired by July 22, 2022, *id.*; Docs. 3266, 3508 (A19-20), because the court denied plaintiffs' motion to find that defendants were not in substantial compliance and to further extend the court's jurisdiction as to any provisions, Doc. 3597 at 7-9 (A31-33). In short, by July 22, 2022, the decree's "terms [were] met," and the case terminated. *See* Doc. 710 (A18). Plaintiffs' fifth amended complaint therefore could not seek "to enforce ongoing injunctions or consent decrees," 250 F.R.D. at 402, as they argue, AT Br. 26-28. By then, the case had been disposed of "as a whole," AT Br. 30, because the consent decree, which by its own terms disposed of all of plaintiffs' claims, had expired.

### B. The district court did not set aside the consent judgment under Fed. R. Civ. P. 60(b).

Because the district court's jurisdiction had already terminated, plaintiffs could not file an amended pleading without setting aside the consent judgment under Fed. R. Civ. P. 59(e) or 60(b). *See Camp*, 67 F. 3d at 1289-90. As this court explained in *Camp*, a district court may construe a Fed. R. Civ. P. 15(a) motion to amend as a motion under Fed. R. Civ. P. 15 or 60(b), but its decision to permit the amended pleading must articulate a basis to set aside the judgment. *Camp*, 67 F.3d at 1290-91.

But here, plaintiffs did not seek relief under Fed. R. Civ. P. 60(b) in the district court. Nor did the district court's statement that it "'operated as though there was no longer an agreement,'" AT Br. 36 (quoting Doc. 3681 at 3), evidence an intent to set aside the consent decree. After all, the district court confirmed in its orders that the consent decree remained intact, Doc. 3739 at 5; Doc. 3745 at 7 (A7), and acknowledged that neither party nor the court had previously "raised or addressed"

the issue of jurisdiction, Doc. 3739 at 7.  Plaintiffs' contention that the district

court's July 21, 2022 order "took the form of a 60(b) order granting relief from the

judgment," AT Br. 36, therefore is belied by the record.

### C. The district court did not violate plaintiffs' due process rights by raising its subject matter jurisdiction *sua sponte*.

Plaintiffs' due process argument should be rejected.  Because plaintiffs did not

develop their argument either before the district court, *see* Docs. 3741, 3743, 3750, or

here, AT Br. 38-29, they have forfeited it, *see Love*, 73 F.4th at 449.  Forfeiture aside,

plaintiffs fail to show that the district court deprived them of adequate process.  The

court did not, as plaintiffs contend, dismiss the case *sua sponte*.  It merely raised the

issue of its jurisdiction *sua sponte*, Doc. 3739 at 1, consistent with its "independent

obligation to determine whether subject matter jurisdiction exists, even in the

absence of a challenge from any party," *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514

(2006); Fed. R. Civ. P. 12(h)(3).  The court then considered briefs and oral argument

from the parties, giving plaintiffs an ample opportunity to present arguments or

evidence.  *Cf. Leuvano v. Wal-Mart*, 772 F.3d 1014, 1022-23 (7th Cir. 2013)

(cautioning that dismissals "without prior notice or opportunity to be heard are

hazardous").

Beyond that, plaintiffs fail to develop an argument that the asserted

deprivation of "procedural advantages and protections under the Federal Rules"

implicated their due process rights.  *See* AT Br. 38-39.  Although they suggest that

they would have moved for relief from the judgment had they known that the court

would dismiss their claims, they fail to acknowledge that they could have pursued

that strategy after this court clarified that the agreement was a consent decree. In any case, plaintiffs have not lost the opportunity to file a new complaint, as they contend, AT Br. 39, because the district court expressly dismissed the action without prejudice as to any new claims that are not encompassed within the consent decree. Doc. 3745 at 1 (A1).

## IV. The district court erred by denying defendants' motion to recover the deferred fee award.

Defendants were entitled to a refund of the $1.9 million deferred fee award that they were required to pay after the court entered the permanent injunction order. Doc. 711-1 at 32. Under the consent decree, plaintiffs were entitled to those fees only if they obtained a compliance order. *Id.* The district court erroneously concluded that the vacated permanent injunction order met that requirement. Doc. 3629 (SA1-9). Further, contrary to the court's conclusion, defendants did not subsequently agree not to recoup the deferred fee award. On the contrary, the 2020 fee agreement, along with the subsequent letter referencing it, clarified that the funds could be disbursed while defendants appeal was pending, without disturbing defendants' expectation of repayment upon a court order determining that plaintiffs were "not presently entitled to the $1.9 million." Doc. 3601-1. Further, defendants did not waive their claim to recoup the deferred fee award by not raising it in their prior appeal because any argument regarding the fee award would have been premature at that time.

## A. The unambiguous terms of the consent decree required defendants to pay the deferred fee award only if there was a valid compliance order.

By its plain terms, the consent decree required defendants to pay the deferred fee award only "if the court enter[ed] an order pursuant to section XXIX(g)." Doc. 711-1 at 32. Thus, the fee award was due upon the district court's entry of an order enforcing the decree through a finding of a federal rights violation and a finding "that the relief sought is narrowly drawn, extends no further than is necessary to correct the violation of the federal right, and is the least intrusive means for doing so." *Id.* at 29-30. The permanent injunction order, which was vacated "in its entirety," *Rasho*, 22 F.4th at 714, cannot serve as the basis of the award.

When this court vacated the permanent injunction order, it rendered the order void. *See Benjamin v. Jacobson*, 172 F.3d 144, 159 (2d Cir. 1999); *U.S. v. Martin*, 378 F.3d 353, 358 (4th Cir. 2004) ("vacate means to render an act void"). As one court explained, when an act of the court is vacated, that act is "annulled and stripped of all past significance or collateral effect." *Benjamin*, 172 F.3d at 159. Otherwise stated, "it is as if the order never existed." *Bryan v. BellSouth Cmmc'ns., Inc.*, 492 F.3d 231, 241 (4th Cir. 2007); *see also United States v. Amodeo*, 916 F.3d 967, 972 (11th Cir. 2019) (when an order is vacated, "the rights of the parties are left as though no such judgment had ever been entered."). Consequently, "reversal of a judgment nullifies not only that judgment but any order based upon it." *Pedigo v. P.A.M. Transp.*, 98 F.3d 396, 398 (8th Cir. 1996); *see also Pottgen v. Mo. State High*

*Sch. Activities Ass'n*, 103 F.3d 720, 723-24 (8th Cir. 1997) ("A judgment that has been reversed on appeal is a nullity.").

Here, this court vacated the permanent injunction order — the only order that the district court entered under section XXIX(g) — thereby stripping it of "all past significance or collateral effect," *Benjamin*, 172 F.3d at 159. As a result, the district court improperly based the $1.9 million deferred fee award on that order. Indeed, this court has recognized that when a judgment on which an award of attorney's fees to the prevailing party is based is reversed, then "the award, of course, falls with it." *Palmer v. Chicago*, 806 F.2d 1316, 1320 (7th Cir. 1986); *see Pardo v. Hosier*, 946 F.2d 1278, 1285 (7th Cir. 1991) (attorney fee award vacated after reversal of judgment in plaintiffs' favor).

## B. Defendants did not contractually forfeit their entitlement to recoup the deferred fee award.

Contrary to the district court's conclusion, defendants did not agree in the 2020 fee agreement (or after) to relinquish their entitlement to recoup the $1.9 million if they prevailed on appeal. *See* Doc. 3629 at 5-6 (SA5-6). Although the consent decree governed whether defendants had to pay the deferred fee award, the parties disagreed on the timing of the payment while defendants' appeal was pending. While plaintiffs insisted that payment was "immediately" due upon the entry of the permanent injunction, *id.* at 1, defendants argued for the deferral of any payment of fees and costs until all appeals were resolved, Doc. 3601 at 3. As a result, the parties entered into the 2020 fee agreements to address when the $1.9 million payment was due. *See*, *e.g.*, Doc. 3610 at 1, 3.

The 2020 fee agreement, like all contracts under Illinois law, must be interpreted to effectuate the intent of the parties, which is ascertained by looking first and foremost to the language of the agreement, given its plain and ordinary meaning. *See Gallagher v. Lenart*, 226 Ill.2d 208, 232-33 (2007). To understand the plain terms of the agreement in context, the agreement also must be construed "as a whole, viewing each part in light of the others." *Id.*

The plain terms of the 2020 fee agreement reflect the parties' clear agreement that defendants could recoup the deferred fee award if they prevailed on appeal. To address the timing of the disbursement, the agreement provided that Dentons would hold the payment in trust, without distributing any portion of the funds among plaintiffs' counsel, until either (a) the parties entered a written agreement that resolved their dispute about the $1.9 million payment, or (b) this court affirmed the district court's injunction, or otherwise confirmed plaintiffs' right to the payment. Doc. 3601-1.

In a separate sentence, distinct from the provision regarding disbursement, the agreement provided that the funds would be returned to defendants if they obtained a favorable order. Specifically, the fee agreement provided: "In the event of an order that determines that plaintiffs are not presently entitled to the $1.9 million, Dentons will return the $1.9 million to the State within 14 days after termination of any additional appellate review." *Id.* In other words, nothing in the 2020 fee agreement suggested that defendants intended to relinquish their contractual claim to recoup the deferred fee award. On the contrary, the agreement memorialized the

parties' expectation that if defendants prevailed on appeal, they could seek to recoup the payment.

This court's order vacating the permanent injunction entitled defendants to repayment of the fees under the 2020 fee agreement. Because the permanent injunction order was the sole order entitling plaintiffs to recover the $1.9 million fee, this court's order vacating the injunction had the effect of determining that plaintiffs were not "presently entitled to the $1.9 million." Doc. 3601-1. Return of the fees therefore was consistent with both the consent decree and the subsequent 2020 fee agreement.

And the February 2020 letter regarding the disbursement of funds did not alter those agreements, as the district court concluded. Doc. 3629 at 5 (SA5). Rather, in the letter, defendants confirmed their "agreement" that "the $1.9 million [could] be released from Dentons US LLP trust account and distributed among plaintiffs' counsel." Doc. 3601-2. The letter thus referred back to the 2020 fee agreement and confirmed that the parties had agreed on the timing of the disbursement — that they had decided between the two options listed in the 2020 fee agreement by choosing option (a), an agreement permitting disbursement. *See* Docs. 3601-1, 3601-2.

But the letter did not provide that defendants also had agreed to forego any claim to a refund of the fees if their appeal was successful, as the district court concluded. Doc. 3629 at 5 (SA5). Rather, the letter did not modify the parties' prior agreement that "Dentons would return the $1.9 million to the State" in that

circumstance.  Docs. 3601-2, 3601-1.  And defendants' agreement to the disbursement of the funds did not equate to an agreement not to seek a refund if they prevailed on appeal.  *Cf. Dale M. v. Bd. of Educ. of Bradley-Bourbonnais High Sch. Dist. No. 307*, 282 F.3d 984, 985-86 (7th Cir. 2002) (affirming order for attorney to refund attorney fee award that was awarded to client and disbursed).  Because defendants never agreed to allow plaintiffs to keep the deferred fee award regardless of whether the court issued an order that they were "not presently entitled to the $1.9 million," Doc. 3601-1, they were entitled to a refund.

> **C.**     **Defendants did not forfeit their argument to recoup the fee award by not raising it in their prior appeal.**

Further, defendants did not "choose not to attempt to raise," or waive, their challenge to the deferred fee award in their prior appeal of the permanent injunction, as the district court concluded.  Doc. 3629 at 5-6 (SA5-6).  A waiver involves an "intentional relinquishment of a known right," or a "deliberate decision not to present a ground for relief," rather than a mere "failure to timely assert a right." *Kaczmarek v. Rednour*, 627 F.3d 586, 593-94 (7th Cir 2010).  Here, defendants did not waive their claim regarding the fees.  Instead, they preserved their claim in the district court, both by opposing the fees and seeking a stay of the order to pay the fees, Doc. 2541, and by moving to recoup the fees after this court vacated the permanent injunction order underlying the award, Doc. 3601.  Defendants' actions therefore are inconsistent with a waiver.  *See Kaczmarek*, 627 F.3d at 593-94.

Further, defendants could not raise the fees in their prior appeal because at that time, the court's jurisdiction over the consent decree was still ongoing and

pursuing an appeal would have been premature.  As a general rule, an order to pay an interim fee award is not a final, appealable order.  *See Palmer*, 806 F.2d at 1317 ; *Richardson v. Penfold*, 900 F.2d 116, 117-18 (7th Cir. 1990).  Indeed, issues relating to fees are not subject to interlocutory appeal except in limited circumstances that did not apply.  *See Palmer*, 806 F.2d at 1317-20 (interlocutory appeal under pendant order doctrine requires showing that appeal is "most efficient way of proceeding"); *Richardson*, 900 F.2d at 118 ("interlocutory appeal permitted under collateral order doctrine only to avoid "irreparable harm").  Defendants therefore did not waive their claim to recoup the fees by not raising it in the prior appeal.

In sum, the condition for payment of the deferred fee award under the consent decree was not satisfied, defendants are entitled to recoup their $1.9 million payment.

## CONCLUSION

For the foregoing reasons, Defendants-Appellees/Cross-Appellants Latoya Hughes, Melvin Hinton, and William Puga, ask this court to affirm the district court's judgment dismissing this action in its entirety but to vacate its September 13, 2022 order denying its request for a refund of the $1.9 million fee award.

Respectfully submitted,

**KWAME RAOUL**
Attorney General
State of Illinois

**JANE ELINOR NOTZ**
Solicitor General

Attorneys for Defendants-Appellees

/s/ Christina T. Hansen
**CHRISTINA T. HANSEN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-6569 (office)
(872) 272-0819 (cell)
Christina.Hansen@ilag.gov

September 3, 2024

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

I hereby certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and 7th Cir. R. 32 and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Microsoft Word 365, in 12-point Century Schoolbook BT font, and complies with Fed. R. App. P. 32(a)(7)(B)(i) in that the brief contains 13, 267 words.

/s/ Christina T. Hansen
CHRISTINA T. HANSEN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5659 (office)
(872) 272-0819 (cell)
Christina.Hansen@ilag.gov

## REQUIRED SHORT APPENDIX
## OF DEFENDANTS-APPELLEES/CROSS APPELLANTS

September 13, 2022 opinion and order ........................................................................ SA1

E-FILED
Tuesday, 13 September, 2022  04:06:50 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF ILLINOIS**
**PEORIA DIVISION**

| | | |
|---|---|---|
| ASHOOR RASHO, et al., | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | No. 07-1298 |
| | ) | |
| ROGER E. WALKER, *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

**OPINION AND ORDER**

Pending before the Court is Defendants' Motion for Recovery of Fees. ECF No. 3601. The

motion is fully briefed, and the Court heard oral argument on August 24, 2022. Accordingly, this

matter is ripe for review.

**BACKGROUND**

This case is a class action brought under 42 U.S.C § 1983 alleging violations of the Eighth

Amendment of the United States Constitution, the Americans with Disabilities Act, 42 U.S.C. §

12101, et seq., and the Rehabilitation Act, 29 U.S.C. § 794. Plaintiffs challenge the adequacy of

the delivery of mental health services to mentally ill prisoners in the physical custody and control

of the Illinois Department of Corrections ("IDOC" or "Department"). This case has been ongoing

since 2007, but the Court will recount only those facts relevant to the present dispute.

At bottom, the Court awarded Plaintiffs a total of over $2.7 million in attorneys' fees after

this Court entered a preliminary and then permanent injunction finding Defendants violated the

2016 Settlement Agreement.[1] $1.9 million was awarded pursuant to the parties' Settlement

---

[1] The Court later ruled that the Settlement Agreement functioned as a consent decree and the Court's jurisdiction terminated on July 22, 2022. ECF No. 3597. However, that background is not important for this matter and the Court will continue to refer to the agreement as a Settlement Agreement, as the parties do in their briefing.

**SA1**

Agreement and the Court later ordered Defendants pay an additional $873,002.75 in costs and fees as the prevailing parties under 42 U.S.C. § 1988. The Seventh Circuit has since vacated this Court's permanent injunction, which Defendants argue entitles them to a return of both fees. *See Rasho v. Jeffreys*, 22 F.4th 703, 714 (7th Cir. 2022). As explained below, the parties' contractual agreements govern the $1.9 million attorney fee and do not require the money be returned. However, pursuant to 42 U.S.C. § 1988 and the parties' agreement, Plaintiffs must return the $873,002 attorneys' fee award to Defendants. The Court explains the history of the fees and its reasoning in more detail below.

### a. History Regarding Attorneys' Fees

In 2016, the parties entered a settlement agreement that awarded Plaintiffs attorneys' fees, half payable immediately and half immediately due if the dispute resolution process failed, and this Court entered an order enforcing the agreement. ECF No. 711-1. Plaintiffs explain that the reasoning behind this provision was to incentivize Defendants' compliance with the Settlement Agreement. ECF No. 3610 at 2. On January 3, 2017, the parties agreed to a final fee amount with $1.9 million due immediately. ECF No. 1091. The agreement reiterated that Defendants would owe an additional $1.9 million if the Court were to enter an order finding Defendants violated the Settlement Agreement and that such an order must comply with Section XXIX(g) of the Settlement Agreement which requires a "finding that the relief sought is narrowly drawn, extends no further than is necessary to correct the violation of the federal right, and is the least intrusive means for doing so." ECF No. 3601 at 2 (citing 711-1).

In May 2018, this Court entered a preliminary injunction order finding that Defendants violated the 2016 Settlement Agreement and ordering relief. The Court added that it,

> fully considered the record presented, and finds remedies set forth
> below satisfy the requirements of the PLRA and the Settlement

**SA2**

> Agreement. The Court further finds that this is a narrowly tailored
> injunction that satisfies the Seventh Circuit's requirement, including
> the requirements contained in *Westefer v. Neal*, 682 F.3d 679, 686
> (7th Cir. 2012).

ECF No. 2070 at 38. The Court later entered a permanent injunction order regarding Defendants'

violations of the Settlement Agreement. ECF No. 2460 at 49.

On December 20, 2018, the Court ordered Defendants to pay $1.9 million to class counsel,

reasoning that the funds were due because the Permanent Injunction had entered relief under the

appropriate sections of the Settlement Agreement. ECF No. 2516 at 17–18. In that order, the Court

rejected Defendants' argument that the award of fees was "premature" and found "no reason to

defer entry of the fees" since "[a]ll conditions have been met for the award of fees." ECF No. 2516

at 18.

Plaintiffs then sought additional fees and expenses as prevailing parties under 42 U.S.C. §

1988 based on the entry of the Permanent Injunction. ECF 2532.  In February 2019, the Court

awarded Plaintiffs an additional $841,137.98 in fees and $31,864.77 in expenses beyond the $1.9

million previously awarded. ECF No. 2579.

### b.  The Parties' 2018 and 2020 Fee Agreements

Plaintiffs represent that the parties were in a dispute regarding payment of the funds even

after the Court's orders on the matter. On January 9 and 10, 2020, the parties executed an

"Agreement Concerning Rasho Fee Payments." ECF No. 3601-1.[2] That agreement provided for

Defendants to issue two checks payable to Dentons US LLP (the law firm of one of Plaintiffs'

Counsel): one for the $1.9 million and the other for the $873,002.75. *Id.* The parties agreed that

Dentons would hold both payments in trust. The parties treated the funds slightly differently in

---

[2] The Parties signed the agreement in January 2020, despite the document having May 22, 2019
in the title.

**SA3**

this agreement. Dentons could only release the payments in specific circumstances. As to the to $1.9 million, the first possible circumstance for releasing the funds was a written agreement that resolved the parties dispute as to the money. The second condition was that "the Seventh Circuit affirms the district court's injunction, or otherwise confirms plaintiffs' right to payment, and the Seventh Circuit's ruling becomes final upon the termination of any additional appellate review." The agreement further stated that "[i]n the event of an order that determines that plaintiffs are not presently entitled to the $1.9 million, Dentons will return the $1.9 million to the State within 14 days after termination of any additional appellate review." ECF No. 3601-1 at 2.  As to the $873,002, the first condition that allowed Dentons to release the money if the parties entered a written agreement was nearly identical, but the second condition differed slightly. The second condition stated that Dentons could distribute the money if "the Seventh Circuit enters an order confirming plaintiffs' entitlement to the fees and costs as prevailing parties and that order becomes final upon the termination of any additional appellate review." The agreement continued that Dentons would return the payment, "[i]n the event the appeal results in a ruling that plaintiffs are not prevailing parties or otherwise not entitled to the fees and costs." ECF No. 3601-1 at 2.

Then, in February 2020, the parties "reached an agreement that resolve[d] their dispute about the $1.9 million payment under the parties' Settlement Agreement," and Defendants allowed that money to be released from Dentons' trust account and distributed to Plaintiffs' counsel. ECF No. 3601-2 at 2. The letter regarding the distribution of the $1.9 million was only a few sentences long and did not include anything about returning the money in the future. The $837,002 remained in the trust account as of the date of the August 2022 oral argument, and the parties apparently never agreed the money could be distributed.

4

**SA4**

## DISCUSSION

**a.  The parties' various contractual agreements govern the $1.9 million payment and reflect an agreement that Plaintiffs would keep the money.**

The parties entered several different agreements regarding the $1.9 million payment. While it seems the agreement from January and February 2020 are the only ones relevant to this dispute, the Court agrees that under the language of the 2016 Settlement Agreement, Plaintiffs are also entitled to the money.

The January 2020 agreement allowed Dentons to distribute the money if the parties entered a written agreement resolving their dispute. Then, in February 2020, the parties entered such an agreement with IDOC's Chief Legal Counsel writing to Plaintiffs' Counsel confirming that the parties reached an agreement and "that the $1.9 million may be released from Dentons US LLP trust account and distributed among plaintiffs' counsel." ECF No. 3601-2. There was nothing in that agreement that anticipated any future return of that money, and this should have been the end of the matter. If Defendants expected to be able to claw back this money, the letter should have made that clear. Certainly, at the time, Defendants did not reasonably expect to be able to collect $1.9 million from the non-profit Plaintiffs' counsel years after they entered this agreement.

Even if the Court agreed that the language from the January 2020 agreement is relevant, Defendants' assertion that the January 2020 agreement requires that the money be returned is wrong. As to the $1.9 million, the agreement states that "in the event of an order that determines that plaintiffs are not presently entitled to the $1.9 million, Dentons will return the $1.9 million to the state within 14 days after termination of any additional appellate review." ECF No. 3601-1 at 2. No such order has been entered. Indeed, the Seventh Circuit had nothing to say about whether Plaintiffs were presently entitled to the $1.9 million because that issue was not before them. Moreover, the language about returning the money obviously contemplated Dentons still holding

the funds in trust. The agreement only says what Dentons must do regarding the funds, and Defendants allowed Dentons to release the funds. Defendants' current position that Dentons must now return the money contradicts their words and actions up until this point. Defendants chose not to attempt to raise the issue on appeal, they entered into a written agreement to "resolve the dispute," and they allowed the funds to be dispersed. The outcome Defendants now urge defy the express terms of the agreement and is inconsistent with their past actions.

Moreover, the Court agrees with Plaintiffs that the underlying Settlement Agreement from 2016 that initially entitled Plaintiffs to this deferred fee award only required success at the district court level and did not necessarily require that Plaintiffs succeed on appeal. Under the 2016 Settlement Agreement, Plaintiffs agreed to collect only half of the fee that they believed they were entitled to collect from Defendants, and the second payment was only due if the dispute resolution processes failed, and the Court entered an order enforcing the agreement. The second half would become "immediately due" if this Court found Defendants had failed to comply with the Settlement Agreement and "enter[ed] an order pursuant to Section XXIX(g)." Section XXIX(g) requires that  any order granting relief for violations of the Settlement Agreement  "must include a finding that the relief is narrowly drawn, extends no further than is necessary to correct the violation of a federal right, and is the least intrusive means for doing so." ECF No. 711-1. This Court entered a preliminary and permanent injunction finding Defendants violated the Settlement Agreement and entered an appropriate order that met the requirements of Section XXIX(g). *See* ECF No. 2633 at 51. That Plaintiffs were ultimately not successful on appeal does not undermine their entitlement to fees. The parties could have reached a variety of different agreements as to when the deferred fee was due. Here, the parties agreed it was due "immediately due" if the Court found Defendants violated the agreement and entered an order that found that the relief was

6

**SA6**

narrowly drawn and extended no further than necessary to correct the violation of a federal right. The Court will hold the parties to their agreement and cannot read additional language into the agreement as Defendants' request.

Finally, the Court observes that in December 2018, the Court rejected Defendants' argument that the award of the deferred fees was premature, finding that "[a]ll conditions have been met for the award of fees." ECF No. 2516 at 18. That was true in 2018 and remains true today.

In short, the Court agrees that the February 2020 fee agreement and distribution entitle Plaintiffs to keep the $1.9 million fee. Further, the January 2020 fee agreement and 2016 Settlement Agreement also do not contemplate a claw back provision of the fee if an injunction order was disturbed on appeal. Defendants' Motion fails on this point.

**b. Plaintiffs do not meet the Seventh Circuit's definition of a prevailing party under 42 U.S.C. § 1988 and must return the $873,002.**

While the $1.9 million fee was granted pursuant to the parties' 2016 Settlement Agreement and ultimately distributed pursuant to subsequent agreements, the $873,002 in fees were awarded pursuant to 42 U.S.C. § 1988, which allows courts to award reasonable attorneys' fees and costs to the "prevailing party." *See* 42 U.S.C. § 1988. The January 2020 fee agreement incorporated that language and required a return of the money if the Seventh Circuit determined Plaintiffs were not the prevailing party. ECF No. 3601-1 at 2. The Court agrees with the Defendants' assessment that the Seventh Circuit reversing the district court's opinion and vacating the permanent injunction means that Plaintiffs no longer qualify as prevailing parties and must return the $873,002 fee.

A plaintiff cannot qualify as a prevailing party if the basis for her claim of success on the merits is an order that has been reversed on appeal. *See Poelker v. Doe*, 432 U.S. 519, 521 n.2 (1977) ("It follows from our decision on the constitutional merits that it was an error to award

**SA7**

attorney's fees to respondent."). The Seventh Circuit has held that "[o]btaining a favorable judgment that is reversed on appeal does not entitle a plaintiff to prevailing-party status." *Fed'n of Advert. Indus. Representatives, Inc. v. City of Chi.*, 326 F.3d 924, 933 (7th Cir. 2003). Instead, "when a judgment on which an award of attorney's fees to the prevailing party is based is reversed, the award, of course, falls with it." *Palmer v. City of Chicago*, 806 F.2d 1316, 1320 (7th Cir. 2007); *accord Pedigo*, 98 F.3d at 398 ("An order awarding attorney's fees based on a party's having prevailed in a trial court cannot survive the reversal of that party's judgment on appeal.").

Here, the Court awarded an additional $873,002.75 in fees and costs to Plaintiffs as the "prevailing party" pursuant to 42 U.S.C. § 1988 for their work that led to the entry of the Permanent Injunction. ECF 2579 at 11–15. There was the intervening January 2020 agreement regarding the fee, and it contained a provision that required Plaintiffs to return the fee if the "appeal results in a ruling that plaintiffs are not prevailing parties." ECF No. 3601‑1.  When the Seventh Circuit vacated the Permanent Injunction in its entirety Plaintiffs ceased to be the "prevailing party." *See Fed'n of Advert. Indus. Representatives*, 326 F.3d at 933; *Palmer*, 806 F.2d at 1320. Accordingly, under both 42 U.S.C. § 1988 and the parties' January 2020 agreement, Plaintiffs must return the money.

Notably, the $873,002.75 remains in an escrow account and has not been distributed. This difference in treatment further highlights the parties understanding that the dispute regarding the $1.9 million had been resolved while the dispute resolving this money remained ongoing.

## CONCLUSION

For the reasons stated above, Defendants' Motion for Recovery of Fees [3601] is GRANTED in part and DENIED in part. Plaintiffs are ORDERED to return the $873,002.75 to Defendants within the next 14 days pursuant to the terms of their agreement. Plaintiffs may retain

**SA8**

the $1.9 million dollar fee. The Court also considered Plaintiffs' Surreply and their Motion for

Leave to File Surreply [3619] is GRANTED for good cause shown. The Clerk is DIRECTED to

docket ECF No. 3619-1 as Plaintiffs' surreply.

ENTERED this 13th day of September, 2022.

/s/ Michael M. Mihm
Michael M. Mihm
United States District Judge

**SA9**

## CERTIFICATE THAT ALL REQUIRED
## MATERIALS ARE INCLUDED IN THE APPENDIX

I hereby certify under Circuit Rule 30(d) that all of the materials required by

Circuit Rule 30(a) and 30(b) are included in the preceding appendix, which contains

the September 13, 2022 opinion and order.

/s/ Christina T. Hansen
CHRISTINA T. HANSEN
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-5659 (office)
(872) 272-0819 (cell)
Christina.Hansen@ilag.gov

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on September 3, 2024, I electronically filed the foregoing

**Brief and Appendix of Defendants-Appellees/Cross Appellants** with the Clerk

of the Court for the United States Court of Appeals for the Seventh Circuit by using

the CM/ECF system.

I further certify that the other participant in this case, named below, are

CM/ECF users and thus will be served by the CM/ECF system:

Harold C. Hirshman
harold.hirshman@dentons.com

Diane O'Connell
diane.oconnell@dentons.com

Alan Mills
alan@uplcchicago.org

Nicole Schult
nicole@uplcchicago.org

Amanda Antholt
amanda@euipforequality.org

**CHRISTINA T. HANSEN**
Assistant Attorney General
115 South LaSalle Street
Chicago, Illinois 60603
(312) 814-6569 (office)
(872) 272-0819 (cell)
Christina.Hansen@ilag.gov